<u>Declaration of Monroe H. Freedman</u>
<u>As an Expert Witness on Lawyers' Ethics</u>

Monroe H. Freedman states, on March 15, 2012, under penalty of perjury, that the following Declaration is true and correct.

1. My name is Monroe H. Freedman. I am a Professor of Law and the former Dean, at Hofstra University Law School, Hempstead NY 11550.

2. Sarah Ottinger, Esquire, has retained me on behalf of herself and her co-counsel, Rebecca Hudsmith, the Federal Public Defender for the Middle and Western Districts of Louisiana, to serve as an expert witness in *United States v. Len Davis*. My retainer includes the express understanding that I will not serve as an advocate on behalf of their client, but that I will offer my opinion, as a qualified expert, regarding issues of lawyers' ethics as they relate to the case.

3. My qualifications as an expert witness on lawyers' ethics are set forth more fully in Exhibit A to this affidavit. In addition, Exhibit B is a standard resume. My publications on lawyers' and judges' ethics are listed in Exhibit A, except for a list of my columns in the <u>Legal Times</u> from August 23, 1993 to April 1, 1996, which are

listed in Exhibit C.  In brief:

(a) Honors that I have received include the Michael Franck Award, which is the highest honor given by the American Bar Association for Professional Responsibility.  It was given in recognition of "outstanding contributions to the field of professional responsibility" and "a lifetime of original and influential scholarship" on lawyers' ethics.

(b) I have qualified as an expert witness on lawyers' and judges' ethics in numerous state and federal courts and before the Judiciary Committees of the United States Congress.  I have also served as a consultant and expert witness on lawyers' ethics for the United States Department of Justice.

(c) I have concentrated on lawyers' ethics for forty-five years.  I currently teach lawyers' ethics each semester at Hofstra Law School and as a Visiting Professor at Georgetown University Law Center.  Also, for forty years I lectured on lawyers' ethics annually at Harvard Law School.

(d) My first ethics book, LAWYERS' ETHICS IN AN ADVERSARY SYSTEM (1975), received the American Bar Association's Gavel Award Certificate of Merit.  About three dozen favorable reviews of the book have appeared.  The *Harvard Civil Rights/ Civil Liberties Law Review* called it one of the few "monumental contributions to legal education in the past generation."

(e) My current book is UNDERSTANDING LAWYERS' ETHICS (4th ed., Matthew Bender, 2010) (with Professor Abbe Smith).  *The Professional Lawyer*, published by the ABA Center for Professional Responsibility, called the first edition "thoughtful and eloquent," and "rich with practical examples."

(f) My testimony, books, and/or articles have been relied upon by numerous courts, including the Supreme Court of the

United States.

(g) An article in *The Journal of the Legal Profession* concludes:

> [Monroe Freedman's] thinking, writing and
> lectures ... have been the primary creative force in
> legal ethics today, both in the practice of law and
> in legal education.

### Facts

4. In writing this Report, I have relied on the facts, set forth in paragraphs 5 and 6 below, which were provided to me by Sarah Ottinger, Esquire, and which I am assuming are true and correct.

5. Ms. Ottinger and Ms. Hudsmith are representing Len Davis in the current post-conviction proceeding. Their legal research has convinced them that Mr. Davis has meritorious claims for habeas corpus relief from his capital conviction and sentence of death.

6. In addition, based on their independent fact investigation, Ms. Ottinger and Ms. Hudsmith have concluded that Mr. Davis, due to mental illness and other factors, is not competent to represent himself at the present time.

### Opinion

7. In brief, my opinion is that Ms. Ottinger and Ms. Hudsmith

are ethically required to file a 2255 motion and to seek to litigate what they conscientiously believe to be an erroneous grant of self-representation, and also to present to the Court the merits of Mr. Davis's habeas corpus claims, even though the court has ordered them, at the request of the prosecution, not to file pleadings without their client's consent.

8. The Supreme Court has held that whether a defendant is competent to represent himself requires a determination that he have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding." Godinez v. Moran, 509 U.S. 389, 398, 400 (1993) (citing cases). Since counsel for Mr. Davis have not been able to communicate with Mr. Davis at all since their appointment, despite their diligent efforts, and because their fact investigation has convinced them that he is, indeed, incapable of consulting with them with a reasonable degree of rational understanding, and also that he is incapable of voluntarily and knowingly rejecting their services, counsel would be derelict in their ethical duty to the Court and to their client if they failed to inform the Court of these crucial facts in an appropriate motion. The fact that

counsel were appointed as standby counsel, with the understanding at the time that Mr. Davis was competent to stand trial and also that he would remain competent throughout these proceedings, does not affect counsels' duty to the Court and to their client to make the Court aware of Mr. Davis's present incompetence.

9. In addition, counsel for Mr. Davis are ethically required to raise "any and all conceivable issues" that might be in their client's interest. See Freedman, The Professional Responsibility to Raise Frivolous Issues in Death Penalty Cases, 31 Hofstra L. Rev. 1167, 1177-1178 (2003), quoting ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases, Guideline 10.8 (rev. ed. 2003).[1]

10. The Supreme Court has relied on the ABA Guidelines to define "prevailing professional standards" in considering whether a defendant has received competent representation under the Sixth Amendment. See, e.g., *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 2535 (2003); see also *Williams v. Taylor*, 529 U.S. 362, 369

---

[1]The Guidelines are set forth in 31 Hofstra L. Rev. 913 (2003). The word "should" is used as a mandatory term. Guideline 1.1(B)(1).

(2000), relying on the ABA Standards for Criminal Justice, Commentary to Standard 4-4.1, (2d ed. 1980). Since counsel for Mr. Davis have not been able to communicate with Mr. Davis at all despite their diligent efforts, and because their fact investigation has convinced them that he is, indeed, incapable of consulting with them with a reasonable degree of rational understanding, and also that he is incapable of voluntarily and knowingly rejecting their services, counsel would be derelict in their ethical duty to the Court and to their client if they failed to inform the Court of these crucial facts in an appropriate motion. Because the provisions of the current ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases are appropriate for the Court's consideration in Len Davis's case, they are quoted and discussed in paragraphs 11-14 below.

11. "Counsel at all stages of the case should engage in a continuing interactive dialogue with the client concerning all matters that might reasonably be expected to have a material impact on the case, such as: 1. the progress of and prospects for the factual investigation, and what assistance the client might provide to it; ... 4.

6

presentation of the defense case...." Guideline 10.5(C). This Guideline is of particular importance in Len Davis's case because counsel have not been able to engage in any dialogue with Mr. Davis whatsoever since their appointment. Moreover, on an earlier occasion, Mr. Davis represented himself with a different hybrid counsel for part of a hearing, and he then left the courtroom, leaving hybrid counsel to conduct the remainder of the hearing. Counsel in that hearing should have been, but were not, prepared to do so. Ms. Ottinger and Ms. Hudsmith are therefore required to comply with Guideline 10.5(C) regardless of their standby status.

12. Specifically with regard to "Counsel's Duties Respecting Uncooperative Clients," the Commentary to Guideline 10.5 requires counsel "to monitor the client's personal condition" and "to make a reasoned decision ... whether to assert the position that the client is not competent to waive further proceedings." This obligation applies to "all stages of the case," expressly including counsel's duties in the post-conviction stage.

13. Guidelines 10.7(A)(1) and (2) obligate counsel to conduct a thorough and independent investigation relating to both guilt and

penalty "regardless of any ... statement by the client that the evidence ... is not to be collected or presented." Moreover, Guideline 10.7(B)(2) provides that "Counsel at every stage have an obligation to satisfy themselves independently that the official record of the proceedings is complete and to supplement it as appropriate." Counsel for Mr. Davis are therefore ethically required to file appropriate motions with the Court regarding their professional assessment of Mr. Davis's incompetence and setting forth all conceivable issues that might be raised on his behalf.

14.  Guideline 10.15.1 requires post-conviction counsel to "(C) ... seek to litigate all issues ... that are arguably meritorious under the standards applicable to high quality capital defense representation, including challenges to any overly restrictive procedural rules. Counsel should make every professionally appropriate effort to present issues in a manner that will preserve them for subsequent review." In addition, counsel are required by Guideline 10.15.1(E)(2) to "continually monitor the client's mental ... condition for effects on the client's legal position." Despite any procedural rulings to the contrary, therefore, counsel for Mr. Davis are ethically required to file

8

appropriate motions with the Court regarding their professional assessment of Mr. Davis's incompetence and setting forth all conceivable issues that might be raised on his behalf.

Conclusion

15.  Since counsel for Mr. Davis have not been able to communicate with Mr. Davis at all since their appointment, despite their diligent efforts to do so, and because their fact investigation has convinced them that he is, indeed, incapable of consulting with them with a reasonable degree of rational understanding, and also that he is incapable of voluntarily and knowingly rejecting their services, counsel would be derelict in their ethical duty to the Court and to their client if they failed to inform the Court of these crucial facts in an appropriate motion.  Even though the court has ordered them not to file pleadings without their client's consent, therefore, Sarah Ottinger, Esquire, and Rebecca Hudsmith, Esquire, are ethically required to file a 2255 motion and to seek to litigate what they conscientiously believe to be improper self-representation by Mr. Davis.  Moreover, it is critical that Ms. Ottinger and Ms. Hudsmith take this action to present Mr. Davis's habeas corpus claims to the

9

Court before a statute of limitations runs on the presentation of these

claims.

Respectfully submitted,

Monroe H. Freedman
Professor of Law
Hofstra University

320 West 38th Street
Suite 2523
New York NY 10018
212-564-8111

**MONROE H. FREEDMAN**

320 West 38th Street, #2523
New York, N.Y., 10018
212-564-8111

See also listings in WHO'S WHO IN AMERICA
WHO'S WHO IN AMERICAN LAW
WHO'S WHO IN THE WORLD

**EDUCATION**

A.B., 1951, Harvard College (cum laude; honors thesis, magna cum laude)
LL.B., 1954, Harvard Law School
LL.M., 1956, Harvard Law School (Faculty Fellowship)

**FACULTY POSITIONS**

Hofstra Law School, Dean, 1973-1977; Professor of Law, 1973-present
Hofstra Law School, Lichtenstein Distinguished Professor of Legal Ethics,
        1989-2003
Georgetown Law Center, Visiting Professor of Law, 2007-present
George Washington Law Center, Professor of Law, 1958-1973
Cleveland-Marshall Law School, Baker-Hostetler Professor of Law, 1992
Harvard Law School, Faculty Assistant and Faculty Fellow, 1954-1956
Harvard Law School, Lecturer on Legal Ethics and Trial Instructor, Trial
        Advocacy Workshop, 1978-2010

**GOVERNMENT POSITIONS**

Executive Director, United States Holocaust Memorial Council, 1980-1982
            (Presidential appointment, under the chairmanship of The
        Honorable Elie Wiesel)
Consultant, United States Commission on Civil Rights, 1960-1964
Legislative Consultant, Senator John L. McClellan, 1959 (drafted major part of
        Landrum-Griffin Act)

[Continued]

**LAW PRACTICE AND PROFESSIONAL ACTIVITIES (SELECTED)**

Qualified as an expert witness in state and federal court proceedings and before Judiciary Committees of United States Senate and House of Representatives
Expert on legal ethics for the United States Department of Justice, 1978
Senior Fact-Finder, Rochester Institute of Technology (to investigate and report on CIA involvement at RIT) (1991)
Reporter, American Lawyer's Code of Conduct, 1979-1981
Associate, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, 1956-1958
Director, Stern Community Law Firm, Washington, D.C., 1970-1971
Director, Criminal Trial Institute, D.C., 1965-1966
Special Litigation Counsel, ACLU, 1971-1973
Consultant (litigation), Neighborhood Legal Services Program, 1970
Consultant, Association of the Bar of the City of New York, Special Committee on Courtroom Conduct, 1972
Arbitrator, American Arbitration Association, 1964-present (Service Award, 1986)
Associate Director, Institute for the Study of Legal Ethics, 1995-present
Columnist ("Cases and Controversies"), American Lawyer newspapers, 1990-1996 (over 60 columns published)
Martindale Hubbell rating: a v
Television:  CBS 60 Minutes, CNN Moneyline, C-Span, CNN Late Edition, CNN Burden of Proof, CBS News/Dan Rather, Donahue, Court TV, The O'Reilly Factor, Hannity & Colmes, Fox News Live, Powerplay

Bar Admissions (Selected)

> Massachusetts, 1954
> Pennsylvania, 1957
> District of Columbia, 1960
> New York, 1978
> United States Court of Appeals for the
>    District of Columbia Circuit, 1960
> Second Circuit, 1968
> Ninth Circuit, 1982
> Eleventh Circuit, 1986
> Federal Circuit, 1987
> Supreme Court of the United States, 1960                    [Continued]

**OFFICES IN PROFESSIONAL AND CIVIC ASSOCIATIONS (SELECTED)**

Governing Board, District of Columbia of Bar, 1972-1973 (resigned upon moving to New York)

Chairman, Legal Ethics Committee, D.C. Bar, 1974-1976; member, 1974-1980

Chairman, Committee on Professional Responsibility, Society of American
        Law Teachers, 1974-1980

Chairman, Committee on Professional Disciplinary Standards and Procedures,
        Federal Bar Association, 1969-1970

Vice Chairman, Ethical Considerations Committee, ABA Criminal Justice
        Section, 1987-1990

Co-Chair, Ethics Advisory Committee, National Association of Criminal
        Defense Lawyers, 1991-1993

National Board, American Civil Liberties Union, 1971-1980

National Advisory Council, American Civil Liberties Union, 1980-present

Committee on Professional Responsibility, Association of the Bar of the City
        of New York, 1986-1990

Committee on Professional and Judicial Ethics, Association of the Bar of the
        City of New York, 1991-1992

Ethics Committee, Criminal Justice Section, New York State Bar Association,
        1990-1992

Committee on Legal Education and Admission to the Bar, New York State Bar
        Association, 1987-1989

Committee on Model Rules of Professional Conduct, D.C. Bar, 1983-1986

Executive Committee and Governing Board, Society of American Law
        Teachers, 1976-1979

Associate Director, Institute for the Study of Legal Ethics, 1995-present

Ethics Advisory Committee, United States District Court for the Eastern District
        of New York, 1994-1996

Ethics Advisor to the Chair, ABA Criminal Justice Section, 1993-1995

Advisory Council, The Appleseed Foundation, 1996-present

Panel of Acadmic Contributors, Black's Law Dictionary, 2002-present

Members Consultative Group, ALI, Restatement of the Law Governing Lawyers,
        1989-1999

American Law Institute, (Elected) (Life Member)

[Continued]

## HONORS, GRANTS, AND LECTURESHIPS (SELECTED)

ABA Michael Franck Award for Professional Responsibility (1998), for
        "outstanding contributions to the field of professional
    responsibility" and "a lifetime of original and influential scholarship in the
    field of  lawyers' ethics."

Howard Lichtenstein Distinguished Professor of Legal Ethics, Hofstra
University (1989-2003)
Martin Luther King Humanitarian Award (1986) (for "decades of work to
advance human dignity and social justice")
Lehman-Laguardia Award for Civic Achievement (1996)
Baker-Hostetler Chair in Law, Cleveland-Marshall Law School (1992)
Annual Award, Black Law Students Association (1987)
Award of Merit, District of Columbia Bar (1979) (for "exceptional
performance as a member of the Legal Ethics Committee")
First Annual Wickwire Lecturer on Legal Ethics and Professional
Responsibility, Dalhousie Law School, Canada (1992)
President's Commendation Award, National Association of Criminal Defense
Lawyers (1992)
Pope John XXIII Lecture, Catholic University Law School (1978)
Dedication of Symposium Issue of Hofstra Law Review, vol. 6, no. 3, part II
(1978)
Dedication of Crystal, Professional Responsibility (2d ed., 2000) (Aspen Law &
Business): "To Monroe Freedman, who has so often led the way."
Certificate of Merit, American Bar Association (1976) (for "distinguished
contribution to public understanding of the American legal system")
Certificate of Special Acknowledgment, Wisconsin Department of Justice (1988)
Ford Foundation grant to establish and direct the Criminal Trial Institute,
Washington, D.C. (1965-1966)
Stern Family Fund grant to establish and direct the Stern Community Law Firm, a
public interest law firm, Washington, D.C. (1970-1971)
Ford Foundation Research Fellowship in Legal Ethics (1973)
Life Fellow, American Bar Foundation
Honorary Fellow, American Board of Criminal Lawyers (2003–)
Faculty Fellowship, Harvard Law School (1954-1956)

[Continued]

4

**HONORS (Continued)**

New York State Bar Association Sanford D. Levy Award "in recognition of your extraordinary
    contribution to the field of professional ethics through a body of work that spans four
    decades" (2005)
New York State Bar Association Award for Dedication to Legal Scholarship and Public Service
    (1997)
New York State Bar Association Award for Outstanding Contributions to Criminal Law
    Education (2006)
Distinguished Faculty Award, Hofstra University (2007)

**PUBLICATIONS**

**Books**

LAWYERS' ETHICS IN AN ADVERSARY SYSTEM (1975) (ABA Gavel Award Certificate of Merit as
    an "outstanding" contribution to the field, 1976)
UNDERSTANDING LAWYERS' ETHICS (1st ed., 1990)
UNDERSTANDING LAWYERS' ETHICS (4th ed., 2010) (with Abbe Smith)
CONTRACTS (West Pub. Co., 1973)
TEACHER'S MANUAL, CONTRACTS (265 pp.) (West, 1978) (with Professor  Alan Resnick)
CONTRACTS: AN INTRODUCTION TO LAW AND LAWYERING (photocopied)
GROUP DEFAMATION AND FREEDOM OF SPEECH (Greenwood, 1995) (ed., with      Professor Eric
Freedman)

**Articles Published In (Selected)**

ABA Journal                          NYU Law Review
Georgetown Law Journal               Ohio State Law Review
George Washington Law Review         Pennsylvania Law Review
Hofstra Law Review                   Stanford Law Review
Journal of Legal Education           Texas Law Review
Journal of the Legal Profession      Yale Law Journal
Michigan Law Review

**PEER EVALUATIONS**

Lawrence Fox, Email to the ABA Board of Governors (2008)

    Monroe Freedman [is] the conscience of our profession.

                                                  [Continuered]
David Luban, THE GOOD LAWYER 10 (1984):

    [O]ne cannot emphasize too strongly [Freedman's] influence on discussions of
    legal ethics.

Ralph Temple, 13 Jour. of the Legal Profession 233 (1988):

> [Monroe Freedman's] thinking, writing and lectures ... have been the primary creative force in legal ethics today, both in the practice of law and in legal education.

William Simon, 27 Hofstra L. Rev. 1 (1998):

> Suppose you had to pick the two most influential events in the recent emergence of ethics as a subject of serious reflection by the bar.  Most likely, you would name the Watergate affair of 1974 and the appearance a few years earlier of an article by Monroe Freedman....  Of the two events, Watergate is the most famous, but ... the least important.

Steven Lubet, 34 Hofstra L. Rev. 673 (2006):

> Monroe Freedman ... is one of the few people, maybe the only person, who has actually managed to change the entire discourse in a field of legal studies.

Alan Dershowitz, 34 Hofstra L. Rev. 748 (2006):

> I regard [Monroe Freedman] as the Holmes and Brandeis of Legal Ethics.

Frank H. Armani (lawyer in the Buried Bodies Case), The Professional Lawyer, 2007 Symposium Issue, 19, 25:

> [M]y guiding light and only ray of hope was the writings of Monroe Freedman. He was the only one that made any sense....

Ronald Rotunda, 34 Hofstra L. Rev. 1337 (2006):

If we had to pick the one person who first created modern legal ethics as a serious academic specialty, it would be Monroe Freedman.

## QUALIFICATIONS OF MONROE H. FREEDMAN
### AS AN EXPERT WITNESS ON LAWYERS' AND JUDGES' ETHICS

A.      My name is Monroe H. Freedman.  I am a Professor of Law, and the former Dean, of Hofstra University School of Law, Hempstead, New York, 11550.

B.      My qualifications as an expert witness on lawyers' ethics are set forth more fully in paragraphs 3-34 below.  In brief:

1.      I have qualified as an expert witness on lawyers' and - judges' ethics in state and federal courts and before the Judiciary Committees of the United States Congress, and have served as a consultant and expert witness on lawyers' ethics for the United States Department of Justice.

2.      Honors that I have received include the American Bar Association's Michael Franck Award for Professional Responsibility.  This is the highest award conferred by the ABA for professional responsibility, and  was given for "outstanding contributions to the field of professional responsibility" and "a lifetime of original and influential scholarship in the field of lawyers' ethics."

3.      For over a third of a century, I have taught and consulted on lawyers' and judges' professional responsibilities.  I currently teach lawyers' ethics at Hofstra Law School and, since 1978, have lectured annually on lawyers' ethics at Harvard Law School.  I have also been a Visiting Professor of Law at Georgetown Law Center since 2008.

4.      My earlier book, LAWYERS' ETHICS IN AN ADVERSARY SYSTEM (1975), received the American Bar Association's Gavel Award Certificate of Merit.  The *Harvard Civil Rights/ Civil Liberties Law Review* called it one of the few "monumental contributions to legal education in the past generation."
5.      My current book is UNDERSTANDING LAWYERS' ETHICS (4th ed., 2010) (with Abbe Smith).  *The Professional Lawyer*, published by the ABA's Center for Professional Responsibility, called the 1990 edition "thoughtful and eloquent," "rich with practical examples," and "idealistic in the best sense of the word."

6.      My testimony, books, and/or articles have been relied upon by numerous courts, including the United States Supreme Court.

7.      An article in *The Journal of the Legal Profession* concludes:

> [Monroe Freedman's] thinking, writing and lectures ... have been the primary creative force in legal ethics today, both in the practice of law and in legal education.

Additional peer comments are in paragraph 34, below.


### QUALIFICATIONS AS AN EXPERT WITNESS

C.      My name is Monroe H. Freedman.  I am a Professor of Law, and the former Dean, at Hofstra University School of Law, Hempstead, New York, 11550.

D.      I was Dean of the Hofstra University Law School from 1973-1977. From 1989 to 2003, I was the Lichtenstein Distinguished Professor of Legal Ethics at Hofstra Law School.  I resigned the Lichtenstein Chair in 2003 so that my colleague in the ethics field could be appointed to it.

E.      I have qualified as an expert witness on lawyers' ethics in federal and state proceedings throughout the country; before a Judicial Investigative Committee of the Eighth Circuit Judicial Council; before a Disciplinary Hearing Board of the United States Air Force; and before the Judiciary Committees of the United States Senate and House of Representatives.

F.      I have served as a consultant and expert witness on lawyers' ethics for the United States Department of Justice.

G.      I was the first Chairman of the Legal Ethics Committee of the District of Columbia Bar.  By unanimous vote of the members of the Committee, I served as Chairman for two terms.

H.      I have also been a member of the Committee on Legal Education and Admission to the Bar of the New York State Bar Association; a member of the Committee on Professional Responsibility of the Criminal Justice Section of the New York State Bar Association; Vice Chairman of the Ethical Considerations Committee of the ABA Section on Criminal Justice; Chairman of the Committee on Professional Responsibility of the Society of American Law Teachers (four terms); Chairman of the Committee on Professional Disciplinary Standards and

Procedures of the Federal Bar Association; Co-Chairman of the Ethics Advisory Committee of the National Association of Criminal Defense Lawyers; Ethics Adviser to the Chair of the ABA Section on Criminal Justice; a member of the Committee on Professional Responsibility of the Association of the Bar of the City of New York; a member of the Committee on Professional and Judicial Ethics of the Association of the Bar of the City of New York; and a member of the Board of Governors of the District of Columbia Bar.

I.      My first ethics book, LAWYERS' ETHICS IN AN ADVERSARY SYSTEM (1975), received the American Bar Association's Gavel Award Certificate of Merit.  The ABA Certificate refers to the book as "outstanding" in its examination of "the most difficult ethical problems a lawyer faces."   About three dozen favorable reviews of the book appeared, including those in the *ABA Journal* ("scholarly ... powerful"), *ABA Litigation* ("thorough and scholarly"), and the *George Washington Law Review* ("undoubtedly, the best book published in the field of legal ethics").  In the *Harvard Civil Rights/Civil Liberties Law Review*, Professor Norman Dorsen called the book one of the few "monumental contributions to legal education in the past generation."

J.      My current book is UNDERSTANDING LAWYERS' ETHICS (4th ed., 2010) (with Abbe Smith).  It has been required reading at law schools including Harvard Law School, the University of California at Berkeley,  and the Georgetown Law Center; is assigned and/or recommended at other law schools; has been used in training programs for the bar in Canada; and is being translated into Chinese.  *The Professional Lawyer*, published by the ABA Center for Professional Responsibility, calls the book "thoughtful and eloquent" and "idealistic in the best sense of the word, pragmatic, but not cynical, and rich with practical examples."  The *Massachusetts Law Review* adds that the book is "a 'must' for every desk, bench, and briefcase."

K.      Selections from my writings on lawyers' ethics are part of the assigned reading at most law schools in the United States and in law schools in Canada.

L.      My testimony, books and/or articles have been cited by numerous courts, including the Supreme Court of the United States, the New York Court of Appeals, the Supreme Courts of Alaska, Arizona, Colorado, Illinois, Maryland, and New Jersey, the Court of Appeals of New Mexico, the Court of Criminal Appeals of Texas, the District of Columbia Court of Appeals, the United States

District Court for the Southern District of New York, and the United States Courts of Appeals for the First, Eighth, and Ninth Circuits.

M.          My article on <u>The Professional Responsibility of the Criminal Defense Lawyer:  The Three Hardest Questions</u> has been excerpted and reprinted over four dozen times.

N.      The following is a partial list of my articles on lawyers' professional responsibilities:

<u>The Professional Responsibility of the Criminal Defense Lawyer:  The Three Hardest Questions</u>, 64 Mich. L. Rev. 1469 (1966)

<u>Reprint or excerpt permission requested</u>:

Hall & Kamisar, Modern Criminal Procedure (1966)
Hazard & Koniak, The Law and Ethics of Lawyering (1989)
Morgan & Rotunda, Professional Responsibility (all editions)
Schwartz & Wydick, Problems in Legal Ethics (1988)
Aronson, Devine & Fisch, Problems, Cases and Materials in Professional Responsibility (1985)
Kamisar, LaFave & Israel, Criminal Procedure (1980)
Countryman, Finman & Schneyer, The Law in Modern Society (1976)
Bishin & Stone, Law, Language, and Ethics (1972)
Kadish & Paulsen, Criminal Law and its Processes (1975)
Kaufman, Problems in Professional Responsibility (1976)
1 ABA Litigation 26 (Winter, 1975)
National Conference on Teaching Professional Responsibility (1977)
Kaplan, Criminal Justice (1978)
Tanford, The Trial Process (1983)
Lempert & Saltzburg, A Modern Approach to Evidence (1984)
Arthur & Shaw, Readings in Philosophy of Law (1984)
Berch, Introduction to Legal Method (1985)
Allen & Kuhns, Constitutional Criminal Procedure (1985)
Summers <u>et al</u>., Law: Its Nature, Functions, and Limits (3d ed.,1986)
Elliston & Davis, Ethics and the Legal Profession (1986)
Delisle & Stuart, Learning Canadian Criminal Procedure (1986)
Katsh, Taking Sides (1986)
Schroder, Ethics and the Practice of Law (1988)
Callahan, Ethical Issues in Professional Life (1988)

Sharpe, Canadian Civil Procedure: Cases and Materials (3d ed.,1988)

Shaw, Moral Issues in Business (1989)

Fairbanks, Fact, Value, Policy: Critical Thinking in Argument (1993)

Tuedio & Trujillo, Professional Ethics in a Free-Market System (1990)

The Legal Profession and Professional Responsibility (University of Pennsylvania Law School, Center on Professionalism, 1990)

D. Rhode, Professional Responsibility: Ethics by the Pervasive Method (1994)

Luban & Rhode, Legal Ethics (1995)

Zitrin & Langford, Legal Ethics in the Practice of Law (1995)

N. Crystal, Professional Responsibility in the Practice of Law (1995)

Wettick, Course Materials on Professional Responsibility (1997)

Swift, The Lawyer's Role in the American Legal System  (1997)

Acker & Brody, Criminal Procedure: A Contemporary Perspective (1998)

Avery & Konefsky, Introduction to Law and Perspectives (1998)

Hazard, Koniak, & Cramton, The Law and Ethics of Lawyering (3d ed., 1999)

May, Snow & Bolte, Legal Philosophy: Multiple Perspectives (2000)

Hatch, Arguing in Communities: Reading and Writing Arguments in Context (2002)

Kaufman & Wilkins, Problems in Professional Responsibility (4th ed., 2002)

Koniak & Cohen
    Moliterno, Cases and Materials on the Law Governing Lawyers (2d ed., 2003)

Holdstein, Challenging Perspectives (2005)

Coquillette, Real Ethics for Real Lawyers (2005)

Youngstown State Univ., Professional Ethics (2006)

Performances from "Oscar" Winning Litigators: Ethical Conundrums in Criminal Cases (N.Y. City Bar, 2007)

Moralnosc a Profesjonalizm (Morality and Professionalism), ed. Wlodzimierz Galewicz (Universitas Publishing House, Cracow, Poland, 2008)


    Book Review: Carlin, Lawyers' Ethics: A Study of the New    York  City Bar, 16 Amer. U.L. Rev. 177 (1966)

Professional Responsibility of the Prosecuting Attorney, 55 Geo. L. Jour. 1030 (1967)

> Reprinted or excerpted:
>
> 3 Crim. L. Bull. 544 (1967)
> Kaplan, Criminal Justice (1978)
> Hall, Kamisar LaFave & Israel, Modern Criminal Procedure

Professional Responsibility of the Civil Practitioner: Teaching Ethics in the Contracts Course, 21 Jour. Legal Ed. 569 (1969)

> Reprinted or excerpted:
>
> 41 U. Colo. L. Rev. 303 (1969)
> Education in the Professional Responsibilities of the Lawyer (ed., Weckstein) (1969)

Where the Bodies Are Buried:  The Adversary System and the Obligation of Confidentiality, 10 Crim. L. Bull. 979 (1974)

> Reprinted:
>
> ABA, Adversarial Justice:  The American Approach to Adjudication (1988)
> Shaw, Moral Issues in Business (1989)
> Windt & Francis, Ethical Issues in the Professions (1989)
> Shaw, Taking Sides: Clashing Views on Controversial Legal  Issues (1988)
> J. Arthur & W.H. Shaw, Readings in Philosophy of Law   (1984)
> Berman & Geiner, The Nature and Functions of Law (4th ed., 1980)

A Civil Libertarian Looks at Securities Regulation, 35 Ohio St. L. Jour. 280 (1974)

> Reprinted or excerpted:
>
> Schwartz, Lawyers and the Legal Profession (1979)

Judge Frankel's Search for Truth, 123 U. Pa. L. Rev.1060 (1975)

  Reprinted or excerpted:

  National Conference on Teaching Professional Responsibility (1977)
  Morgan & Rotunda, Professional Responsibility (all editions)
  Schroeder, Ethics and the Practice of Law (1988)
  Luban & Rhode, Legal Ethics (1995)
  Levine, Doernberg, & Nelken, A Civil Procedure Anthology (1998)
  P.G. Haskell, Why Lawyers Behave As They Do (1997)

Solicitation of Clients:  For the Poor, Not the Privileged,  Juris Doctor (Apr.,
  1971)

Advertising and Solicitation by Lawyers: A Proposed Redraft of Canon 2 of
the Code of Professional Responsibility, 4 Hofstra L. Rev. 183 (1976)

Advertising and Solicitation: The Professional Obligation to Chase
Ambulances, LAWYERS' ETHICS IN AN ADVERSARY SYSTEM (1975)

  Reprinted:

  Nader & Green,Verdicts on Lawyers (1976)
  Callahan, Ethical Issues in Professional Life (1988)
  Solomon, Martin, & Vaught, Ethics for Professionals (2009)
Counseling the Client: Refreshing Recollection or Prompting   Perjury?
ABA Litigation 35 (Spring, 1976)

  Reprinted or excerpted:

  ABA, The Litigation Manual (all editions)
  Tanford, The Trial Process (1983)
  Twerski & Henderson, Products Liability:  Problems and Process
      (Teacher's Guide) (3d ed., 1997)
  Berke, Professional Responsibility of Criminal Law (1999)

Are There Public Interest Limits on Lawyers' Advocacy?   11 Social
Responsibility 31 (1976)

Reprinted:

2 Jour. Legal Prof. 47 (1977)

Prior Restraints on Freedom of Expression by Defendants and Defense Attorneys, 29 Stan. L. Rev. 608 (1977) (with Janet Starwood)

Revised and reprinted:

Criminal Defense Techniques (Matthew Bender) (with S. Kahan)

For a New Rule [on the former government lawyer's conflict of interest], 63 ABA Jour. 724 (1977)

Reprinted or excerpted:

Morgan & Rotunda, Professional Responsibility (1984)

The Loss of Idealism -- By Whom, And When? 53 N.Y.U. L. Rev. 658 (1978)

Personal Responsibility in a Professional System, 27 Cath. U.L. Rev. 191 (1978) (Pope John XXIII Lecture)

Reprinted or excerpted:

7 ABA Human Rights 28 (1978)
Roscoe Pound/ATLA Found., Ethics and Advocacy (1978)
Wolfman & Holden, Ethical Problems in Federal Tax Procedure
        (1981)
Pirsig & Kirwin, Professional Responsibility (1984)
Luban, The Ethics of Lawyers (1994)
Cochran & Collett, Cases and Materials on the Rules of the Legal
        Profession (1996)

Removal and Discipline of Federal Judges, 31 Mercer L. Rev. 681 (1980)

The Securities and Exchange Commission Enforcement Program, 38 Wash. & Lee L. Rev. 781 (1981) (with S. Sporkin)

The Kutak Model Rules vs. The American Lawyer's Code of Conduct, 26 Vill. L. Rev. 100 (1981)

Lawyer-Client Confidences and the Constitution, 90 Yale L. Jour. 1486 (1981)

    Reprinted or excerpted:

    Dorsen & Gillers, Regulation of Lawyers: Problems of Law and Ethics (1985)

Are the Model Rules Unconstitutional? 35 U. Miami L. Rev. 174 (1981)

Lawyer-Client Confidences -- The Model Rules' Radical Assault on Tradition, 68 ABA Jour. 428 (1982)

    Reprinted:

    26 Boston Bar Jour. 10 (April, 1982)

Arguing the Law in an Adversary System, 16 Ga. L. Rev. 821   (1982)

The Model Rules:  Improved but Unworthy of Adoption, 69 ABA Jour. 866 (1983)

    Reprinted:

    54 Okla. Bar Jour. 1681 (1983)

Confidentiality in the Lawyer-Client Relationship, The Neb. Humanist (Fall, 1984)

Lawyer-Client Confidences Under the Model Rules:  Ethical Rules Without Ethical Reason, 3 Crim. Justice Ethics 3 (Summer/Fall, 1984)

The Guilty Plea Problem, X Social Resp. 32, 37 (1984)

Undercover Operations Against Lawyers and Judges, 9 Jour. Legal Prof. 73 (1980)

Does Incrimination by Counsel Deny Effective Assistance?  ABA Barrister 13 (Fall, 1985)

Reprinted:

Nat'l L. Jour. 13 (11/4/85)

The Professional Responsibility of the Law Professor: Three Neglected Questions, 39 Vand. L. Rev. 275 (1986)

Reprinted or excerpted:

Student Law News 8 (11/87)
36 Law Rev. Dig. 26 (1986)
86 L.A. Daily Jour. Rpt. 16 (8/22/86)

The Ethics of Advocacy in the Advocacy of Ethics, 1 New L. Book Rev. 1 (1986)

The Aftermath of Nix v. Whiteside:  Slamming the Lid on Pandora's Box, 23 Crim. L. Bull. 25 (1987)

Reprinted or adapted:

__ Social Resp. (1986)
1 Hofstra L. Mag. 8 (1987)
Schwartz & Wydick, Problems in Legal Ethics (1988)

Advances in Prosecutors' Ethics, 1 ABA Crim. Just. __ (Winter, 1987)

Reprinted:

14 CACJ Forum 9 (July/Aug., 1987)

Legal Ethics and the Suffering Client, 36 Cath. U.L. Rev. 331 (1987)

Reprinted:

Paris & Taslitz, Introductory Constitutional Criminal Procedure: A Lawyering Perspctive (Foundation Press, 1997)

Two Fables for Lawyers, ABA Jour. 57 (May, 1, 1988)

Client Confidences and Client Perjury:  Some Unanswered Questions, 136 U. Pa. L. Rev. 1939 (1988)

Reprinted:

1 Crim Prac. L. Rev. ___ (1989)
J.G. Carr, Criminal Law Review--1990
Hazard & Koniak, The Law and Ethics of Lawyering (1990)

The Lawyer As Hired Gun, II Memphis Bar Forum 6 (1988)

Reprinted:

4 Wash. Lawyer 22 (Mar./Apr., 1990)
Ariz. Atty. 11 (Aug./Sept., 1990)
N.Y. State Bar Jour. 48 (Nov., 1990)
396 Laches 32 (Oakland Cty. Bar Assn., Mich. 1997)

The Need for a Rule 11 for Judges, 128 F.R.D. 437 (1990) (Delivered at the plenary session of the 1989 Federal Circuit Judicial Conference, Wash., D.C.)

Ethical Ends and Ethical Means, 41 Jour. Legal Education 55 (1991)

Excerpted:
J. Levy & J.E. Moliterno, Ethics of the Lawyer's Work    (1993)
J.E. Moliterno, Ethics of the Lawyer's Work (2003)

Law in the 21st Century, 60 Fordham L. Rev. 503 (1992)

Disqualification of Judges, 58 Brooklyn L. Rev. 1063, 1078 (1993)

Atticus Finch -- Right and Wrong, 45 Ala. L. Rev. 473 (1994)

Reprinted:

EBSCO (pub.), Critical Insights (2008)

Excerpted:

David R. Papke, et al., <u>Law and Popular Culture</u> (2007)

Quoted:

Malcolm Gladwell, <u>The Courthouse Ring: Atticus Finch and the limits of Southern liberalism</u> (Aug. 10, 2009)

<u>Kaye Scholer -- Overzealous or Overblown</u>? 35 S. Tex. L. Rev. 601 (1994)

<u>John T. Noonan, Jr.:  Exemplar of Ethical Conduct</u>, 11 Jour. of Law & Religion 1001 (1995)

<u>But Only If You Know</u>, Chapter 10 in R.J. Uphoff (ed.), Ethical Problems Facing the Criminal Defense Lawyer – Practical Answers to Tough Questions (ABA, 1995)

> <u>Reviewed</u>, ABA <u>Criminal Justice</u>: "There exists no better choice of authority [than Monroe Freedman] to help you answer the ethical dilemma(s) surrounding client perjury, and he delivers in this book."

> <u>Translation into Japanese</u> being prepared by the Japan Federation of Bar Associations for publication in Japan

<u>The Lawyer's Moral Obligation of Justification</u>, 74 Tex. L. Rev. 111 (1995)

<u>Legal Ethics from a Jewish Perspective</u>, 27 Tex. Tech. L. Rev. 1131 (1996)

> Reprinted:

> Baker & Floyd (eds.), Believing and Practicing: Meditations on Faith and the Law (1998)

<u>The Life-Saving Exception to Confidentiality: Restating the Law Without the *Was*, the *Will Be*, or the *Ought to Be*</u>, 29 Loyola (L.A.) L. Rev. 1631 (1996)

<u>The Trouble with Postmodern Zeal</u>, 38 Wm. & Mary L. Rev. 63 (1996)

The Threat to Judicial Independence by Criticism of Judges -- A Proposed Solution to the Real Problem, 25 Hofstra L. Rev. 729 (1997)

Religion Is Not Totally Irrelevant to Legal Ethics, 66 Fordham L. Rev. 1299 (1998)

The Ethical Danger of "Civility" and "Professionalism," 6 Crim. Justice Jour. 17 (1998)
        Reprinted:

        396 Laches 22 (1999)

Caveat Lector: Conflicts of Interest of ALI Members in Drafting the Restatements, 26 Hofstra L. Rev. 641 (1998)

Our Constitutionalized Adversary System, 1 Chapman L. Rev. 57 (1998)

Ethics, Truth, and Justice in Criminal Litigation, 68 Fordham L. Rev. 1371 (2000)

How Lawyers Act in the Interests of Justice, 70 Ford. L. Rev. 1717 (2002)

Professional Discipline of Prosecutors, 30 Hofstra L. Rev. 121 (2002)

The Professional Obligation to Raise Frivolous Issues in Death Penalty Cases, 31 Hofstra L. Rev. 1167 (2003)

        Excerpted:

                D.J. Meador, T.E. Baker, & J.E. Steinman,
        Appellate Courts – Structure, Function, Processes,                and
Personnel

Duck-Blind Justice: Justice Scalia's Memorandum in the *Cheney* Case, 18 Georgetown Jour. Legal Ed. 229 (2004)

An Ethical Manifesto for Public Defenders, 39 Valparaiso L. Rev. 911 (2005)

In Praise of Overzealous Representation – Lying to Judges, Deceiving Third Parties, and Other Ethical Conduct, 34 Hofstra L. Rev. 771 (2006)

Henry Lord Brougham – Written by Himself, 19 Georgetown Jour. Legal Eths. 1213 (2006)

Henry Lord Brougham and Zeal, 34 Hofstra L. Rev. 1319 (2006)

Erroneous Disclosure of Damaging Information, 14 Geo. Mason L. Rev. 179 (2006)

Judicial Impartiality in the Supreme Court – The Troubling Case of Justice Stephen Breyer, 30 Okla. City Univ. L. Rev. 513 [2007]

The Buried Bodies Case: Alive and Well after Thirty Years, ABA, The Professional Lawyer, 2007 Symposium Issue

Henry Lord Brougham – Advocating at the Edge for Human Rights, 36 Hofstra L. Rev. 311 (2007)

    Reprinted:

        Oregon Law Institute, Continuing Legal Education (2008)

Ethical Issues in Handling Veterans' Claims, 22 Vet. App. Reporter cxxvii (2008)

Getting Honest About Client Perjury, 21 Georgetown Jour. Legal Ethics 133 (2008)

    Reprinted:
        14 Verdict 21 (October, 2008)
        Institute of Chartered Financial Analysts of India,
            Prosecutorial Misconduct (ed., Dr. G. Radha
            Kalyani) (2009)

What Ever Happened to the Search for Truth?, 60 Mercer L. Rev. 851 (2009)

Misunderstanding Lawyers' Ethics, 108 Mich. L. Rev. 925 (2010) (with Abbe Smith)

The Cooperating Witness Who Lies – A Challenge to Defense Lawyers, Prosecutors, and Judges, 2 Ohio State Jour. Crim. L. 739 (2010)

The Influence of the American Lawyers' Code of Conduct on ABA Rules and Standards, 38 Hofstra L. Rev. 927 (2010)

O.    . From 1990-1996, I wrote a monthly column, *Cases and Controversies*, in the Legal Times and several other newspapers throughout the country. Commenting in the Georgetown Journal of Legal Ethics, Professor Thomas Morgan called the columns "tough, imaginative essays."  Columns have been reprinted or excerpted in Gellhorn, Byse, Strauss, Rakoff & Schotland, Cases and Materials on Administrative Law (9th ed., 1995); The Lawyer As Professional (Eds., Floyd & Newton, 1991); D. Rhode, Legal Ethics by the Pervasive Method (1993); T.D. Morgan & R. Rotunda, Problems and Materials on Professional Responsibility (6th ed., 1995; 7th ed., 2000) (two columns); N. Crystal, Professional Responsibility in the Practice of Law (1995); Cochran & Collett, Cases and Materials on the Rules of the Legal Profession (1996) (two columns); C.D. Johnson, Understanding to Kill a Mockingbird (1994); Zitrin & Langford, Legal Ethics in the Practice of Law (2d ed., 2001); and Rhode & Luban, Legal Ethics (3d ed., 2001) (two columns); and Professor Stephen Gillers has asked permission to reprint a column in Regulation of Lawyers: Problems of Law and Ethics.  In addition, two of the columns have been the subject of the *At the Bar* column in the New York Times, another has been reprinted in the Congressional Record, one was appended to a Pennsylvania Bar Ethics Opinion, and others have been quoted or cited in law reviews, including the Yale Law Journal.  Yale Professor Harold Bloom has reprinted one of my columns (on Atticus Finch) in his 2003 book on Harper Lee's To Kill a Mockingbird.

P.    For forty-five years, I lectured annually on lawyers' professional responsibilities at Harvard Law School, where I also served as an instructor on litigation skills.

Q.    I have taught a course and/or a seminar on lawyers' professional responsibilities for over 40 years, and am invited to speak several times each year on lawyers' and judges' ethics at bar association meetings, judicial conferences, and law schools throughout the United States and abroad.  Judicial conferences include:  the Federal Circuit Judicial Conference; the New York State Judicial Conference; the District of Columbia Judicial Conference; the Council of State Intermediate Appellate Court Chief Justices; the Annual Conference of Judges in

Tennessee; the Judicial Conference of the U.S. Court of Appeals for Veterans' Affairs, and the Annual Conference of Judges in Florida. I have also given the keynote address at several conferences, including an annual meeting of the National Organization of Bar Counsel, and have spoken innumerable times at American Bar Association conferences.

R.       The Wisconsin Department of Justice retained me to give a three and one-half hour lecture to 160 state prosecutors, including the Attorney General of Wisconsin, on prosecutors' ethical responsibilities. Also, the Office of the United States Attorney for the Southern District of Florida and the Office of the State Attorney for Dade County retained me to chair a two-hour ethics seminar for federal and state prosecutors.

S.       The Administrative Office of the Illinois Courts retained me to address (in two sessions) all 1,000 Illinois state judges, on judicial ethics.

T.       I have been a Consultant on professional responsibility to the Special Committee on Courtroom Conduct of the Association of the Bar of the City of New York; Consultant on professional responsibility to the United States Legal Services Corporation; and was awarded a Ford Foundation Travel-Study Grant to study lawyers' professional responsibilities in the United States, Canada, Scotland, and England.

U.       Although I had then been living in New York for ten years, I was appointed in 1983-1986 to serve on the District of Columbia Bar's Special Committee (the Jordan Committee) to make recommendations regarding adoption of the ABA's proposed Model Rules of Professional Conduct. I was also a member of the Committee's Subcommittee on Special Rules for Prosecutors. In 1997, I was invited to address the Supreme Judicial Court of Massachusetts on the state's proposed new rules on confidentiality.

V.       As Reporter to the Roscoe Pound Foundation, I was the principal draftsman of the American Lawyer's Code of Conduct. Parts of this code have been the basis for rules adopted in other codes, including the Rules of Professional Conduct in New York; the Rules of Professional Conduct in Washington, D.C., the ABA Standards Relating to the Prosecution Function, the ABA's Model Rules of Professional Conduct, and the ALI's Restatement of the Law Governing Lawyers.

W.       I held the Baker-Hostetler Chair in Law at Cleveland-Marshall Law School during the spring semester of 1992, teaching a course and giving lectures on lawyers' and judges' ethics.

X.      I delivered the Inaugural Annual Wickwire Lecture in Legal Ethics and Professional Responsibility at Dalhousie University, Nova Scotia, Canada, in 1992, and numerous bar lectures and keynote addresses throughout the United States.

Y.      I was the Director of the Criminal Trial Institute in Washington, D.C., in 1965-1966.  In the Institute we used and developed techniques for training trial advocates that have since become standard in the National Institute for Trail Advocacy and similar programs.  The Institute was the first such program to include lawyers' ethics as part of the training program.

Z.      I have conducted trial and appellate litigation in several state and federal courts and before administrative agencies.

AA.     I have been admitted to the bars of New York, the District of Columbia, Massachusetts, Pennsylvania, the Interstate Commerce Commission, the United States District Court for the District of Columbia, the United States District Court for the Southern District of New York, the United States District Court for the Eastern District of New York, the United States Court of Appeals for the District of Columbia Circuit, the United States Court of Appeals for the Second Circuit, the United States Court of Appeals for the Ninth Circuit, the United States Court of Appeals for the Eleventh Circuit, the United States Court of Appeals for the Federal Circuit, and the Supreme Court of the United States.

BB.     I have been elected to membership in the American Law Institute, and served on its Consultative Group on the Law Governing Lawyers.

CC.     I served as an elected a Fellow of the American Bar Foundation.  A Fellow is one whose "public and private career has demonstrated outstanding dedication to the welfare of the community [and] the traditions of the profession."
DD.         I have been elected an Honorary Fellow of the American Board of Criminal Lawyers.

EE.     I have received the 2005 Sanford D. Levy Award from the New York State Bar Association "in recognition of your extraordinary contribution to the field of professional ethics through a body of work that spans four decades"; a New York State Bar Association Award for Dedication to Legal Scholarship and Public Service (1997); a New York State Bar Association Award for Outstanding Contributions to Criminal Law Education (2006); an Award of Merit from the

District of Columbia Bar; a President's Commendation Award from the National Association of Criminal Defense Lawyers; the Martin Luther King Humanitarian Award (1986); the Lehman-LaGuardia Award for Civic Achievement (1996); and the ABA's Michael Franck Award for Professional Responsibility (1998), which cited "outstanding contributions to the field of professional responsibility" and "a lifetime of original and influential scholarship in the field of lawyers' ethics."

FF. I received an A.B., 1951, LL.B., 1954, and LL.M., 1956, at Harvard University.

GG. I have been listed for many years in Who's Who in American Law, Who's Who in America, and Who's Who in the World.

HH. Peer comments on my work in lawyers' and judges' ethics include the following:

Lawrence Fox, in an email to the ABA House of Delegates (2008):

Monroe Freedman [is] the conscience of our profession.

Ralph Temple, 13 Jour. of the Legal Profession 233 (1988):

[Monroe Freedman's] thinking, writing and lectures ... have been the primary creative force in legal ethics today, both in the practice of law and in legal education.

David Luban, THE GOOD LAWYER 10 (1984):

[O]ne cannot emphasize too strongly [Freedman's] influence on discussions of legal ethics.

William Simon, 27 Hofstra L. Rev. 1 (1998):

Suppose you had to pick the two most influential events in the recent emergence of ethics as a subject of serious reflection by the bar. Most likely, you would name the Watergate affair of 1974 and the appearance a few years earlier of an article by Monroe Freedman.... Of the two events, Watergate is the most famous, but ... the least important.

Steven Lubet, 34 Hofstra L. Rev. 673 (2006):

> Monroe Freedman ... is one of the few people, maybe the only person, who has actually managed to change the entire discourse in a field of legal studies.

Alan Dershowitz, 34 Hofstra L. Rev. 748 (2006):

> I regard [Monroe Freedman] as the Holmes and Brandeis of Legal Ethics.

Frank H. Armani (lawyer in the Buried Bodies Case), The Professional Lawyer, 2007 Symposium Issue, 19, 25:

> [M]y guiding light and only ray of hope was the writings of Monroe Freedman.  He was the only one that made any sense....

Ronald Rotunda, 34 Hofstra L. Rev. 1337 (2006):

If we had to pick the one person who first created modern legal ethics as a serious academic specialty, it would be Monroe Freedman.