IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CASE NO. 2:94-cr-00381 |
| | * | |
| v. | * | |
| | * | SECTION "C" |
| LEN DAVIS | * | |
| | * | THIS IS A CAPITAL CASE |

**MEMORANDUM IN SUPPORT OF**

**MOTION TO VACATE GRANT OF *FARETTA* RELIEF**

Because—unlike in trial and sentencing proceedings—Len Davis has *no constitutional right to represent himself in § 2255 litigation*, because the courts distinguish between trial level and post-trial self-representation, and because the interests of justice counsel against *pro se* representation in capital post-conviction proceedings, this Court is hereby moved to vacate its May 16, 2011 order (Doc. No. 2231) allowing Mr. Davis to represent himself in his capital § 2255 proceedings.

## I.    PROCEDURAL HISTORY

In 1996, Mr. Davis was convicted of civil rights violations resulting in death in violation of 18 U.S.C. §§ 241 and 242 and was sentenced to death. Mr. Davis sought permission from the district court to proceed with "hybrid" representation on direct appeal – that is, that he be allowed to both represent himself, as well as receive the assistance of appointed counsel. This Court exercised its discretion to deny Mr. Davis's request, and he was represented by counsel on appeal.  *See* 11/6/96 Tr. 3-4.  On direct appeal, the conviction was upheld, but the death sentence

was reversed and remanded for a new sentencing hearing. *See United States v. Causey*, 185 F.3d 407 (5th Cir. 1999).

Upon remand, in November 1999, Mr. Davis invoked his constitutional right under *Faretta v. California*, 422 U.S. 806 (1975) to represent himself at his capital sentencing proceeding. The district court held that the *Faretta* right to self-representation did not extend to criminal sentencing, and that even if it did, the *Faretta* interest was not outweighed by the Eighth Amendment requirement that the death penalty not be imposed arbitrarily and capriciously. Mr. Davis filed an interlocutory appeal seeking a writ of mandamus. A divided panel of the Fifth Circuit Court of Appeals issued the writ, holding that *Faretta* does extend to the punishment phase of a trial as it is part and parcel of the *trial*, and the Sixth Amendment right to self-representation *at trial* applies, and that the Eighth Amendment prohibition against arbitrary and capricious imposition of the death penalty would not be undermined by allowing Mr. Davis to mount the defense of his choice. *See United States v. Davis*, 2001 WL 34712238 (5th Cir. July 17, 2001). The case was then remanded to the district court.

On August 30, 2001, the district court issued an order appointing an independent counsel at the penalty phase proceeding who was authorized to present mitigation evidence. On October 9, 2001, Mr. Davis petitioned the Court of Appeals for a second writ of mandamus. Once again, a divided panel issued the writ, holding that the appointment of special counsel interfered with Mr. Davis's Sixth Amendment right to represent himself at trial, and that there was an absence of statutory or case law authority for the appointment of special counsel. *See United States v. Davis*, 285 F.3d 378 (5th Cir. March 11, 2002). The case was then remanded to the district court for the sentencing proceeding.

Upon remand, Mr. Davis was sentenced to death. On June 16, 2010, his conviction and death sentence were affirmed on direct appeal. *See United States v. Davis*, 609 F.3d 663 (5th Cir. 2010). On March 21, 2011, the United States Supreme Court denied Mr. Davis's petition for *certiorari*, s*ee Davis v. United States*, 2011 U.S. LEXIS 2350 (Mar. 21, 2011), thus commencing Mr. Davis's one-year statutory period for filing his § 2255 motion.

On March 2, 2011, the district court ordered that undersigned counsel be appointed to represent Mr. Davis in his capital § 2255 proceedings. (Doc. No. 2190). On March 7, 2011, Mr. Davis filed a handwritten "Notification to the Court" invoking his "direct right to 'self-representation'" and stating that "defendant will be proceeding 'pro se' on any further appeals." (Doc. No. 2196). On March 17, 2011, the district court entered an order terminating its prior order appointing counsel and permitting Mr. Davis to represent himself. (Doc. No. 2197).

The district court thereafter scheduled a *Faretta* Hearing, which was conducted on May 16, 2011. (Doc. Nos. 2226, 2227 & 2231). Mr. Davis was uncounseled at that hearing. At the conclusion of the hearing, the district court determined that Mr. Davis was entitled to proceed *pro se*, but also ordered that the undersigned be appointed as standby counsel. However, the order noted that, following a request made by Mr. Davis, standby counsel were not permitted to file any pleadings without Mr. Davis's consent. (Doc. No. 2231).

During the year that his § 2255 statute of limitations has been running, standby counsel has uncovered numerous issues concerning Mr. Davis's conviction and sentence that constitute the basis for cognizable and meritorious § 2255 claims deserving of additional investigation and legal process. As is explained below, the undersigned file this motion in order to preserve Mr. Davis's right to have his convictions and sentence reviewed as part of the § 2255 proceedings to which he is entitled and to ensure the fair administration of justice in his capital case.

3

II.    **THIS COURT'S GRANT OF *FARETTA* RELIEF SHOULD BE VACATED BECAUSE *FARETTA* DOES NOT EXTEND TO § 2255 PROCEEDINGS.**

On May 16, 2011, this Court held a *Faretta* hearing to determine whether Mr. Davis could proceed *pro se* in his capital § 2255 proceeding as he had requested. However, *Faretta* does not extend to § 2255 proceedings. As the Supreme Court stated in *Martinez v. Court of Appeal*, 528 U.S. 152 (2000), the *Faretta* right of self-representation does not extend to any post-trial proceedings. Mr. Davis's invocation of his right of self-representation in his March 7, 2011 "Notification to the Court" was thus invalid, as Mr. Davis possesses no such right. Accordingly, this Court's grant of *Faretta* relief should be vacated because it rested on a constitutional right which does not exist and to which Mr. Davis is, and was, not entitled, and for other reasons set out below.

A.    **There Is No Sixth Amendment Right of Self-Representation in § 2255 Proceedings.**

In *Martinez*, the Supreme Court confronted the question of whether a defendant has a Sixth Amendment right of self-representation for purposes of a direct appeal from a criminal conviction. The Court held that *Faretta* "was confined to the right to defend oneself at trial" and held that a defendant does not have a right of self-representation on appeal. *Martinez*, 528 U.S. at 154. As the Court noted, "the status of the accused defendant, who retains a presumption of innocence throughout the trial process, changes dramatically when a jury returns a guilty verdict." *Id*. at 162.  Moreover, "the autonomy interests that survive a felony conviction are less compelling than those motivating the decision in *Faretta*.  Yet the overriding state interest in the fair and efficient administration of justice remains as strong as at the trial level."  *Id*. at 163. Furthermore, the Court noted that since the Sixth Amendment does not apply to appellate

proceedings, "the Amendment itself does not provide any basis for finding a right to self-representation on appeal." *Id.* at 160.

The *Martinez* holding clearly establishes that there is no *Faretta* right of self-representation in any post-trial proceeding, and its rationale necessarily encompasses § 2255 proceedings. Just as with an appellate proceeding, a capital § 2255 litigant no longer retains the presumption of innocence,[1] so "the autonomy interests that survive a felony conviction are less compelling than those motivating the decision in *Faretta*." *Id.* at 163. However, the overriding public interest in "the fair and efficient administration of justice" remains as strong at the post-conviction level as at the trial level. This is particularly so in § 2255 proceedings, as § 2255 is the *sole* post-conviction remedy available to federal prisoners as of right, and the *only* opportunity a federal prisoner will have to develop extra-record evidence in support of a challenge to his conviction and sentence. The public interest in the fair and efficient administration of justice is all the greater in the context of a *capital* habeas proceeding, as the defendant's life literally hangs in the balance; the stakes could not be any higher. *See Murray v. Giarrantano*, 492 U.S. 1, 14 (1989) ("It cannot be denied that collateral relief proceedings are a central part of the review process for prisoners sentenced to death. … [A] substantial proportion of these prisoners succeed in having their death sentences vacated in habeas corpus proceedings.") (Kennedy, J., concurring); *see also United States v. Hammer*, 404 F. Supp. 2d 676 (M.D. Pa. 2005) (capital § 2255 movant entitled to retrial of penalty phase due to

---

[1] While there is no longer a presumption of innocence at the penalty phase of a capital trial, the defendant retains a constitutional right to counsel and the sentencing proceeding is considered an integral part of the trial proceeding, thus the *Faretta* right extends to the conclusion of the sentencing proceedings. By contrast, there is no post-conviction right to counsel, and *Martinez* makes clear that there is no corresponding *Faretta* right in post-conviction proceedings.

government's failure to disclose relevant and material *Brady* information); *United States v. Johnson*, No. 02-C-6998, 2010 U.S. Dist. LEXIS 133727 (N.D. Ill. Dec. 13, 2010) (capital § 2255 movant entitled to retrial of penalty phase due to trial counsel's failure to investigate the law and facts necessary to subject government's case on future dangerousness to meaningful adversarial testing and for allowing the government's expert's testimony on this matter to go unrebutted); *United States v. Sampson*, 2011 WL 5022335 (D. Mass. October 20, 2011) (in capital § 2255, granting sentencing relief on claim of juror misconduct after conducting evidentiary hearing and questioning trial jurors; over the course of three hearings, district judge determined that juror failed to disclose information during voir dire that was comparable in significant ways to evidence presented at trial and which called her ability to decided the case solely on the evidence into question, and that the concealed information, if it had been disclosed during voir dire, would have resulted in her excusal for cause).

Moreover, since the Sixth Amendment does not apply to post-conviction proceedings— *see*, *e.g.*, *Coleman v. Thompson*, 501 U.S. 722, 752 (1991); *Giarrantano*, *supra*, 492 U.S. at 10— there cannot be any basis for finding a Sixth Amendment right of self-representation in post-conviction proceedings. That is, since *Faretta*'s right of self-representation is grounded in the Sixth Amendment, it cannot extend to § 2255 proceedings anymore than it can to appellate proceedings.

The Fifth Circuit is in accord with this view. Its prior decisions granting Mr. Davis *Faretta* relief to represent himself at his trial rested on two issues which are not implicated here: (1) whether *Faretta* extends to criminal sentencing proceedings; and (2) whether a district court

has the authority to appoint special counsel to a *pro se* defendant at his criminal sentencing proceeding. With respect to the first issue, the Circuit Court acknowledged that, per *Martinez*, "the ending point for the Sixth Amendment right of self-representation in criminal proceedings" is the conclusion of the bifurcated trial proceedings, and the commencement of the appellate proceedings. *See United States v. Davis*, 2001 WL 34712238, *2 (5th Cir. July 17, 2001). Thus, *Faretta* does not extend to post-trial proceedings.

With respect to the second issue, there is clear statutory authority for the appointment of counsel in a capital § 2255 proceeding—18 U.S.C. § 3599(a)(2) & (e). Indeed, appointment of counsel is *mandatory* under the statute. *See* 18 U.S.C. § 3599(a)(2) ("In any post conviction proceeding under section 2254 or 2255 of title 28, United States Code, seeking to vacate or set aside a death sentence, and defendant who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services *shall be entitled to the appointment of one or more attorneys* and the furnishing of other services in accordance with subsections (b) through (f)") (emphasis added); § 3599(e) ("Unless replaced by similarly qualified counsel upon the attorney's own motion or upon motion of the defendant, each attorney so appointed shall represent the defendant throughout every subsequent stage of available judicial proceedings, including . . . all available post conviction process . . ."); *see also McFarland v. Scott,* 512 U.S. 849, 854 ("On its face, this statute [21 U.S.C. § 848(q)(4)(B), recodified at 18 U.S.C. §3599(a)(2)] grants indigent capital defendants *a mandatory right to qualified legal counsel* and related services 'in any [federal] post conviction proceeding.'") (emphasis added). Thus, there is no question that this Court's original March 2, 2011 order appointing counsel to Mr. Davis was not only statutorily authorized, but mandated by law.

### B. The District Court's Prior Grant of *Faretta* Relief Must Be Vacated.

Mr. Davis's invocation of his *Faretta* right to self-representation in his March 7, 2011 "Notification to the Court" was both mistaken and legally invalid. Mr. Davis has never had a constitutional right to represent himself in his § 2255 proceedings, and therefore he invoked a right to which he was not entitled. Accordingly, the district court's grant of Mr. Davis's request for *Faretta* relief should be vacated because it rested on a right that does not exist and to which Mr. Davis was not entitled. As is explained in more detail below, a vacatur of the district court's prior order is especially warranted here because the fair administration of justice in a capital § 2255 proceeding requires representation by counsel. Thus, it is respectfully submitted that this Court exercise its discretion per 18 U.S.C. § 3599 to re-appoint the undersigned to represent Mr. Davis in his capital § 2255 proceedings.

### III.    THE FAIR ADMINISTRATION OF JUSTICE IN A CAPITAL § 2255 PROCEEDING REQUIRES REPRESENTATION BY COUNSEL.

#### A.    Congress and the Supreme Court Presumed That Counsel Is Necessary For The Fair Administration Of Justice In Capital § 2255 Proceedings.

Unlike non-capital § 2255 proceedings, the appointment of counsel for indigent defendants is mandatory in capital § 2255 proceedings. *See* 18 U.S.C. § 3599(a)(2) & (e); *McFarland*, *supra*, 512 U.S. at 857 n.3 ("§ 848(q)(4)(B) [recodified at 18 U.S.C. § 3599] bestows upon capital defendants a *mandatory right to counsel*, including a right to preapplication legal assistance, that is unknown to other criminal defendants.") (emphasis added). This statutory requirement reflects Congress's view that such proceedings are sufficiently complex that qualified capital counsel must be appointed in order to guarantee that the interests of justice are satisfied and that indigent defendants will receive fair and just review of their post-conviction claims. As the Supreme Court recognized in *McFarland v. Scott*:

> Congress' provision of a right to counsel under § 848(q)(4)(B) [recodified at 18 U.S.C. § 3599(a)(2)] reflects a determination that quality legal representation is necessary in capital habeas corpus proceedings in light of "the seriousness of the possible penalty and . . . the unique and complex nature of the litigation." § 848(q)(7). An attorney's assistance prior to the filing of a capital defendant's habeas corpus petition is crucial, because the complexity of our jurisprudence in this area [] makes it unlikely that capital defendants will be able to file successful petitions for collateral relief without the assistance of persons learned in the law.

*McFarland*, 512 U.S. at 855 (internal quotation marks and citations omitted); *see also Martel v. Clair*, 565 U.S. ___(Mar. 5, 2012), slip op. at 8-9 (provision of counsel and other measures "'reflec[t] a determination that quality legal representation is necessary' in all capital capital proceedings ot foster 'fundamental fairness in the imposition of the death penalty'") (quoting *McFarland*, 512 U.S. at 855, 859.

Indeed, as the Court acknowledged, capital habeas jurisprudence is a particularly complex area of the law, and failure to comply with its strict, complicated procedural rules can lead to summary dismissal of claims; Congress was necessarily aware of this legal backdrop when it enacted the mandatory appointment provisions of the statute, and therefore sought to create a system in which indigent defendants would necessarily receive the benefit of qualified counsel to avoid the potentially lethal consequence of being unfamiliar with the relevant jurisprudential terrain and to ensure that a capital defendant's habeas claim would receive judicial review in the federal courts:

> Habeas corpus petitions must meet heightened pleading requirements, see 28 U.S.C. § 2254 Rule 2(c), and comply with this Court's doctrines of procedural default and waiver, *see Coleman v. Thompson*, 501 U.S. 722, 115 L. Ed. 2d 640, 111 S. Ct. 2546 (1991). Federal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face, see 28 U.S.C. § 2254 Rule 4, and to deny a stay of execution where a habeas petition fails to raise a substantial federal claim, *see Barefoot v. Estelle, 463 U.S. 880, 894*, 77 L. Ed. 2d 1090, 103 S. Ct. 3383 (1983). Moreover, should a defendant's pro se petition be summarily dismissed, any petition subsequently filed by counsel could be subject to dismissal as an abuse of the writ. *See McCleskey v. Zant*, 499 U.S. 467, 494,

113 L. Ed. 2d 517, 111 S. Ct. 1454 (1991). Requiring an indigent capital petitioner to proceed without counsel in order to obtain counsel thus would expose him to the substantial risk that his habeas claims never would be heard on the merits. Congress legislated against this legal backdrop in adopting § 848(q)(4)(B), and we safely assume that it did not intend for the express requirement of counsel to be defeated in this manner.

*Id.* at 856.[2] *See also id.* at 859 ("By providing indigent capital defendants with a mandatory right to qualified legal counsel in these proceedings, Congress has recognized that federal habeas corpus has a particularly important role to play in promoting fundamental fairness in the imposition of the death penalty.")

**B.  The Fair Administration Of Justice In A Capital § 2255 Case Requires More Than An Incarcerated Inmate Can Accomplish.**

As the Supreme Court has long recognized, the preparation of a habeas petition is an extraordinarily difficult matter that necessitates the assistance of qualified legal counsel. *See Giarrantano*, 492 U.S. at 14 ("The complexity of our jurisprudence in this area, moreover, makes it unlikely that capital defendants will be able to file successful petitions for collateral relief without the assistance of persons learned in the law.") (Kennedy, J., concurring). The work involved in preparing a capital § 2255 motion is particularly demanding, and the necessary investigative and legal tasks that must be performed in order to competently litigate such a motion far exceed what an incarcerated inmate can accomplish from within the walls of a maximum security federal prison cell.

**1.  Section 2255 places unique demands on the preparation and litigation of habeas motions.**

---

[2] Although the Court refers to the Rules Governing § 2254 Proceedings in this passage, the relevant Rule 2(c) pleading requirements it cites are identical to the § 2255 proceedings outlined in Rule 2(b) of the Rules Governing Section 2255 Proceedings In The United States District Courts.

Section 2255 places a strict one-year limitations period for filing the § 2255 motion. *See* 28 U.S.C. § 2255(f).  All viable and cognizable § 2255 claims must be developed and pled in the initial § 2255 motion, or those claims run the risk of being defaulted forever. In other words, failure to raise and plead all available claims before the one-year limitations period runs means that those claims, no matter how meritorious, will never be heard on the merits.

This one-year limitations period creates significant challenges for the development and preparation of a § 2255 motion.  Capital § 2255s are not, as uninformed practitioners have sometimes suggested, merely a more complex version of a direct appeal. In direct appeal cases, the universe of facts upon which a litigant can rely in order to raise a claim for relief is restricted to the trial record. Appellate counsel need not – and, indeed, in most instances, cannot – go beyond the transcript itself and the associated trial pleadings in order to raise cognizable legal claims.

By contrast, a capital § 2255 case cannot be litigated competently in the same way; although a thorough knowledge of the trial record, as well as extensive legal research, is a necessary part of habeas litigation, close to none of the cognizable capital post-conviction claims can be identified or developed consistently with the requirements of Rule 2 of the RULES GOVERNING SECTION 2255 PROCEEDINGS FOR THE UNITED STATES DISTRICT COURTS ("§ 2255 Rules") absent investigation into facts outside the existing record. See § 2255 Rules, Rule 2(b)(2) (requiring that the § 2255 motion "state the facts supporting each ground [for relief]"). Unlike a prisoner on direct appeal, a capital § 2255 litigant cannot establish a claim entitling him to relief absent the development of new facts outside the trial record. *See Massaro v. United States*, 538 U.S. 500, 504-05 (2003).

Moreover, a § 2255 movant generally cannot relitigate questions that have already been raised and considered on direct appeal, as those adjudicated claims are considered to be the "law of the case." *See*, *e.g.*, *United States v. Sanin*, 252 F.3d 79, 83 (2d Cir. 2001) (*per curiam*); *United States v. Wiley*, 245 F.3d 750, 752 (8th Cir. 2001); *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999). Indeed, if a capital § 2255 proceeding simply relied on the facts and arguments already litigated at trial and appeal, it would serve no function. The very purpose of post-conviction litigation is to develop facts and claims outside the existing record that entitle the movant to relief.

In light of this fact, one of the central tasks in the competent litigation of a post-conviction case is a comprehensive reinvestigation of the case. Nearly all of the cognizable claims that can be brought in a capital § 2255 proceeding will not be apparent on the face of the trial record, and can be established only by virtue of the discovery of extra-record facts. The demands involved in such a post-conviction investigation have been aptly summarized by the American Bar Association:

> Ultimately, winning collateral relief in capital cases will require changing the picture that has previously been presented. . . . [C]ollateral counsel cannot rely on the previously compiled record but must conduct a thorough, independent investigation . . . . [T]he trial record is unlikely to provide either a complete or accurate picture of the facts and issues in the case. That may be because of information concealed by the state, because of witnesses who did not appear at trial or who testified falsely, because the trial attorney did not conduct an adequate investigation in the first instance, because new developments show the inadequacies of prior forensic evidence, because of juror misconduct, or for a variety of other reasons.
> …
> Reinvestigating the case means examining the facts underlying the conviction and sentence, as well as such items as trial counsel's performance, judicial bias or prosecutorial misconduct. Reinvestigating the client means assembling a more-thorough biography of the client than was known at the time of trial, not only to discover mitigation that was not presented previously, but also to identify mental-

health claims which potentially reach beyond sentencing issues to fundamental questions of competency and mental-state defenses.

American Bar Association, GUIDELINES FOR THE APPOINTMENT AND PERFORMANCE OF DEFENSE COUNSEL IN DEATH PENALTY CASES (2003) ("ABA Guidelines"), Commentary to Guideline 10.15.1, 31 HOFSTRA LAW REV. 913, 1085-86 (2003).[3]

Moreover, capital § 2255 litigants face unique challenges in that they only have one opportunity to develop and present facts in support of a post-conviction challenge on their conviction and sentence. This is readily apparent by comparing capital § 2255 litigation with capital § 2254 litigation. In a capital § 2254 proceeding, where the death-sentenced individual is challenging a conviction and sentence imposed in a state court, the state habeas proceeding has already served as the main vehicle for review. By the time the state petitioner has entered federal court, the first and main opportunity to develop extra-record facts in support of any claims of error − i.e., in the state post-conviction proceeding − has already taken place. As a practical matter, that means that an indigent § 2254 petitioner has already likely received funding from the state courts to pursue a post-conviction investigation, and has similarly had an opportunity to present new facts developed in the course of that investigation to the state habeas court.[4] If the state prisoner does not succeed in state court, he has a chance to pursue his federal claims for

---

[3] See also ABA Guideline 10.7 ("Counsel at every stage have an obligation to conduct thorough and independent investigations relating to the issues of both guilt and penalty"); *Padilla v. Kentucky*, 559 U.S. ___, 130 S. Ct. 1473, 1482 (2010) (noting that the Supreme Court has "long . . . recognized that prevailing norms of practice as reflected in American Bar Association standards and the like . . . are guides to determining what is reasonable [attorney performance]" (internal quotation marks and citations omitted)).

[4] In the event that a § 2254 litigant did not develop such facts on account of the state's refusal to provide funds, those facts would then have to be developed in federal court. *See Michael Williams v. Taylor*, 529 U.S. 420, 442-443 (2000).

relief in § 2254 proceedings, where his ability to develop and present new evidence is delineated by the § 2254 statute. See 28 U.S.C. § 2254(e)(2) (setting forth conditions for evidentiary hearing in § 2254 cases).

By contrast, a § 2255 litigant only has *one* forum, and *one* opportunity, to develop and present extra-record facts in support of the § 2255 motion – the federal district court. Failure to fully develop and present all cognizable claims in the district court in a capital § 2255 proceeding, within the strict one-year limitations period, thus exposes a capital litigant to the substantial risk that he will be executed without his claims ever being heard by a federal court on the merits.[5]

Even for qualified legal counsel, identifying, developing and presenting all the available habeas claims in a particular case within the strict time limits imposed by § 2255 is difficult and challenging work which will require the assistance of co-counsel, as well as investigative and expert services. Indeed, the relevant appointment statute anticipates this and provides for the appointment of more than one counsel, as well as the furnishing of investigative, expert and other services as are reasonably necessary. See 18 U.S.C. § 3599(a)(2) and (f). It is difficult, if

---

[5] As this Court is likely aware, it is unfortunately not uncommon for capital petitioners to be executed after their counsel have missed filing deadlines, thus barring the petitioners' post-conviction claims from being reviewed in federal court. Examples of capital petitioners who were executed because their lawyers' tardy filings made their petitions time-barred, and therefore precluded them from review in federal court, include: Johnny Ray Johnson (executed in Texas on February 12, 2009); Willie Marcel Shannon (executed in Texas on November 8, 2006); Robert Andrew Lookingbill (executed in Texas on January 22, 2003); Leonard Uresti Rojas (executed in Texas on December 4, 2002); Spencer Corey Goodman (executed in Texas on January 18, 2000); Andrew Cantu Tzin (executed in Texas on February 16, 1999); Keith Steven Thurmond (executed in Texas on March 7, 2012); and Paul Kreutzer (executed in Missouri on April 10, 2002). *See also* "Slow paperwork in death row cases ends final appeals for 9; Lawyers' late filings can be deadly for inmates; Tardy paperwork takes away final appeals for nine men, six of whom have been executed," Houston Chronicle (March 21, 2009) (available online at http://www.chron.com/news/houston-texas/article/Slow-paperwork-in-death-row-cases-ends-final-1736308.php) (last visited on March 18, 2012).

not impossible, to imagine how a lone, incarcerated inmate could possibly accomplish the requisite legal and investigative work necessary to properly prepare a capital habeas case and thereby satisfy the fair administration of justice in a capital § 2255 proceeding.

### 2.   Incarcerated inmates on federal death row face nearly impossible circumstances in investigating and preparing a § 2255 motion.

Mr. Davis is confined in the Special Confinement Unit ("SCU") at the U.S. Penitentiary in Terre Haute, Indiana ("Terre Haute"). Terre Haute is a maximum security federal prison, and the SCU is one of the most restrictive areas of the facility. Inmates confined to the SCU, such as Mr. Davis, are generally locked in their cells for 23 hours out of the day. Setting aside the Herculean task of mastering the procedural and substantive jurisprudence that governs capital habeas pleadings, Mr. Davis is confined under conditions that make the task of investigating and preparing a § 2255 motion nearly impossible.[6] Below are just some of the difficulties that Mr. Davis faces:

### a.   Mr. Davis has no access to witnesses.

Mr. Davis is incarcerated in a prison in Terre Haute, Indiana. The majority of the relevant witnesses in his case are located in and around New Orleans, Louisiana. Even if he were able to somehow identify and locate all the relevant witnesses that he would need to interview for purposes of preparing his § 2255 motion, he has no ability to travel to New Orleans to meet with witnesses and assess them for their credibility and potential value as witnesses in his post-conviction proceedings.

---

[6] As should be noted, the conditions of confinement at the SCU are very different than those at Orleans Parish Prison, pre-sentencing, where Mr. Davis was allowed all kinds of leeway to listen tape-recordings, meet extensively with standby counsel and even witnesses, had extensive access to the phone, was able to keep and have access to all his case materials, and had access to the law library as well as attorneys that could deliver cases to him any day of the week.

### b.     Mr. Davis has limited access to the phone.

Access to phones is limited in the SCU. Because all prisoners in the unit have a right to legal calls, Mr. Davis would have to compete with about 56 other prisoners for use of the phone to make legal calls. Additionally, no non-attorney member of the legal team may have a legal call with a prisoner in the SCU unless the call is initiated by an attorney. Thus, even if Mr. Davis were able to hire an investigator or expert to work on his case, his ability to communicate confidentially would be restricted without the presence of an attorney on the call. In other words, any calls that are not initiated by an attorney will not be considered legal calls and will be monitored and recorded according to BOP policy.

Moreover, prisoners are limited to 300 minutes of non-legal calls per month, and such calls may only be made to family and friends, so there would be temporal and substantive restrictions on Mr. Davis's calls with any investigators or other experts he would hire to assist him. *See* Legal Resource Guide To The Federal Bureau Of Prisons at 30, (2008) (hereafter "BOP Legal Guide") (available online at http://www.bop.gov/news/PDFs/legal_guide.pdf) (last visited on March 3, 2012).

### c.     Mr. Davis has limited access to his own legal files and discovery.

Printed materials retained by prisoners are subject to personal property space limitations as prescribed by BOP policy. *See* BOP Legal Guide at 34. In the SCU, prisoners are limited to about 3 cubic feet of legal materials, or no more than what will fit under the bed in their cells. Excess legal materials are typically retained by counsel for a prisoner, and in rare circumstances stored in other vacant cells in the SCU that are not immediately accessible to the prisoner. Given that Mr. Davis's case involves multiple co-defendants and re-sentencings, the record in his case

is quite large, so the personal property space limitations are severe. Moreover, the prison tends to restrict prisoners' receipt of certain privileged discovery materials. For example, with very limited exceptions requiring judicial approval, Mr. Davis is restricted from maintaining copies of his own Pre-Sentence Report and Statement of Reasons from the judgment in his criminal case, and the release to Mr. Davis of federal court or probation documents other than PSRs will require court review and approval. *See* 28 C.F.R. §§ 513.40(a)(2)(d)(1) and (d)(2). Mr. Davis will also be limited in his review of his BOP central file and will be allowed to review it only under "direct and constant supervision" by BOP staff. *See* 28 C.F.R. § 513.40(a)(2)(b)(2). There are also restrictions on the release to prisoners of BOP medical records containing any subjective evaluations of them, and the release of some records may be subject to BOP administrative appeals and court review. *See* 28 C.F.R. §§ 513.42(c) and (d). In addition, to the extent that he is allowed copies, Mr. Davis will also be charged fees for duplication of his BOP central file and medical records. *See* 28 C.F.R. § 513.44.

### d.    Mr. Davis's access to the law library is limited.

Prisoners have limited access to the law library, so Mr. Davis cannot readily conduct legal research. Prisoners in the SCU are ordinarily required to submit a written request to use the law library twenty-four hours in advance of using the library. Requests are considered on a first-come-first-served basis, and there are more than 50 other prisoners on federal death row. Additionally, library usage is limited to two-hour increments, meaning Mr. Davis can conduct at most a few hours of legal research a week on his case. Also, to the extent that Mr. Davis is allowed to use law library computers to conduct legal research, all computer usage is monitored by the BOP.

### e.    Mr. Davis's ability to obtain records is limited.

17

Mr. Davis's ability to collect records is severely hampered by the fact that almost all agencies charge fees for FOIA requests to cover copying costs. In other words, Mr. Davis cannot obtain FOIA documents without making a motion to the court for necessary funds to cover the relevant fees. Also, initial FOIA requests to an agency are sometimes denied and require an appeal before being able to obtain the relevant records, and it is unclear whether all agencies will even release FOIA material to a prisoner. Moreover, because Mr. Davis is incarcerated, he cannot conduct the kinds of non-FOIA records searches that are ordinarily performed in post-conviction cases, such as searches of courthouse records and other public databases and archives.

### f. Mr. Davis has limited access to a typewriter on which to prepare pleadings.

There are no computers or printers available for prisoners in the SCU to use for word processing or to generate pleadings. *Pro se* pleadings must either be hand-written or typed using one of the handful of typewrites available to SCU inmates. However, access to the typewriters is limited. Moreover, he cannot keep the typewriter in his cell; he can only use the typewriter during designated and limited periods of time.

These are just some of the many limitations that Mr. Davis faces as an incarcerated person attempting to investigate and develop potential habeas claims for his case. Even under the best circumstances, Mr. Davis simply does not have the ability to direct a competent investigation of his case from the confines of his cell in a maximum security federal prison. Even routine tasks, such as identifying and reviewing relevant caselaw, are limited and burdensome for a prisoner in the SCU, much less for a prisoner operating within a strict one-year limitations period. Mr. Davis simply lacks the resources to competently identify relevant legal claims and investigate and develop relevant extra-record evidence and witnesses. This is especially so

18

considering that this is a federal capital case with multiple co-defendants, a lengthy record, and many witnesses. The fair administration of justice requires more than Mr. Davis can possibly accomplish given the restrictive conditions he is under as a prisoner on federal death row.

C.     **Failure To Appoint Counsel Would Undermine Mr. Davis's Own Stated Goal Of Subjecting His Conviction and Sentence To Greater Scrutiny In Post-Conviction Proceedings.**

In Mr. Davis's Original Brief to the Fifth Circuit Court of Appeals, filed by his then counsel on June 8, 2001, he stated that he intended to raise numerous issues attacking his conviction by way of a § 2255 motion, which he believed would be given greater scrutiny if he was facing a death sentence:

> Mr. Davis believes that the[] legal issues [he plans to raise in a motion for new trial and/or Rule 2255 motion] will of necessity have to be viewed much more closely by the district and appellate courts if he is facing a death sentence, than they would if he were facing a life sentence. . .

*United States v. Davis*, 285 F.3d at 389 n. 23 (quoting Appellant's Opening Brief at 5-13 (June 8, 2001) (parenthetical brackets in original)). At a subsequent status conference held on August 3, 2001, Mr. Davis reiterated his position, stating that "with the death sentence it will force the Court to take my issues a little more seriously." *Id.* at 389 n. 23.

What Mr. Davis has previously made clear on the record is that not only does he want the benefit of judicial review that § 2255 affords, but that he wants his case to receive the greatest scrutiny possible to identify and remedy any legal errors committed at his trial. Indeed, Mr. Davis has never sought to waive his right to file a § 2255 motion; rather, he has stated that he wants to proceed with his post-conviction proceedings, but simply without the assistance of counsel. However, if Mr. Davis fails to file a § 2255 motion within the statutory limitations period, he will be legally barred from ever pursuing this remedy and his § 2255 proceedings will

19

simply come to an end. *See* 28 U.S.C. § 2255(f) (setting strict 1-year limitations period for filing § 2255 motion) & § 2255(h) (restricting successive § 2255 motions to two narrow categories of claims – newly discovered evidence establishing actual innocence and claims based on previously unavailable new rules of constitutional law made retroactive to cases on collateral review by the Supreme Court – thereby eliminating review for all other ordinarily cognizable habeas claims). He will have no other legal remedy available to him to raise any post-conviction claims. Simply put, this is his one and only opportunity to raise any potential claims attacking his conviction and sentence; if he misses the filing deadline for his § 2255 motion, he will be executed at the time and in the manner of the government's choosing.

It is unclear whether Mr. Davis appreciates the gravity of failing to file his § 2255 motion within the statutory limitations period. He has not communicated with undersigned standby counsel, and it is unclear to the undersigned whether Mr. Davis is operating under the mistaken belief that he will still have post-conviction remedies available to him to challenge his conviction and sentence after March 21, 2012. He will not.

Moreover, even if Mr. Davis does intend to file a timely § 2255 motion, any such motion will be plainly inadequate to meet his stated goal of subjecting his case to the type of legal scrutiny that a capital case demands. As noted above, a § 2255 proceeding can only bring to bear such scrutiny after an exhaustive investigation and the development of extra-record evidence, and Mr. Davis simply does not have the ability to conduct such tasks from within the confines of his prison cell. Any motion Mr. Davis might file will have been prepared without access to the type of investigative and expert services that are required in any capital habeas case, and will almost certainly fail to identify and raise all the cognizable, meritorious claims which counsel could develop and present. In short, a failure to file a § 2255 motion based on a thorough re-

20

investigation of his case and the development of extra-record evidence would deprive Mr. Davis of the only opportunity he has to challenge his convictions and sentence and would effectively condemn him to death without any of the additional legal process contemplated by Congress and enshrined in decades of capital jurisprudence.

Since Mr. Davis does not have a constitutional right to proceed *pro se* in a § 2255 proceeding, it is in this Court's discretion to revoke Mr. Davis's *pro se* status and re-appoint counsel if the appointment of counsel would result in fair administration of justice and an orderly and efficient consideration of Mr. Davis's claims for § 2255 relief. In light of the uncertainty of whether Mr. Davis will even file a § 2255 motion, despite never having indicated that he desires to waive his right to a § 2255 proceeding, and given that even in the event that Mr. Davis does file a § 2255 motion, it will plainly be deficient given his inability to perform any of the necessary tasks involved in preparing such a motion while confined in a maximum security federal penitentiary, it is respectfully submitted that this Court exercise its discretion to re-appoint the undersigned as counsel for Mr. Davis for his § 2255 proceedings.

### D.    Undersigned Counsel Are Ethically Obligated To File A § 2255 Motion On Mr. Davis's Behalf.

Attached to this motion is the Declaration of Monroe H. Freedman, a Professor of Law and former Dean of Hofstra University Law School, and a renowned expert on lawyers' ethics. As Professor Freedman explains, undersigned counsel "are ethically required to file a 2255 motion and to seek to litigate what they conscientiously believe to be an erroneous grant of self-representation, and also to present to the Court the merits of Mr. Davis's habeas corpus claims, even though the court has ordered them, at the request of the prosecution, not to file pleadings without their client's consent." Ex. A (Freedman Declaration), at ¶ 7.

Since their appointment, undersigned standby counsel have made numerous attempts to communicate with Mr. Davis in an attempt to consult with him about the necessary tasks involved in investigating and developing claims for his capital § 2255 motion. Despite their diligent efforts, Mr. Davis has demonstrated himself to be incapable of consulting with the undersigned with a reasonable degree of rational understanding, and the undersigned are convinced that Mr. Davis is incapable of voluntarily and knowingly rejecting their services. Undersigned counsel's belief in this regard is underscored and corroborated by its own investigation into Mr. Davis's competency and mental health, some of which is outlined in the relevant claims set forth in § 2255 motion. As Professor Freedman articulates in his declaration, undersigned counsel are ethically obligated to file a § 2255 motion on Mr. Davis's behalf under these circumstances, despite this Court's order that no pleading be filed absent Mr. Davis's consent. In Professor Freedman's expert opinion, undersigned counsel's obligation is dictated both by relevant caselaw and widely-recognized professional guidelines governing the duties of counsel in capital cases:

> 8. The Supreme Court has held that whether a defendant is competent to represent himself requires a determination that he have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding." Godinez v. Moran, 509 U.S. 389, 398, 400 (1993) (citing cases). Since counsel for Mr. Davis have not been able to communicate with Mr. Davis at all since their appointment, despite their diligent efforts, and because their fact investigation has convinced them that he is, indeed, incapable of consulting with them with a reasonable degree of rational understanding, and also that he is incapable of voluntarily and knowingly rejecting their services, counsel would be derelict in their ethical duty to the Court and to their client if they failed to inform the Court of these crucial facts in an appropriate motion. The fact that counsel were appointed as standby counsel, with the understanding at the time that Mr. Davis was competent to stand trial and also that he would remain competent throughout these proceedings, does not affect counsels' duty to the Court and to their client to make the Court aware of Mr. Davis's present incompetence.
>
> 9. In addition, counsel for Mr. Davis are ethically required to raise "any and all conceivable issues" that might be in their client's interest. See Freedman,

The Professional Responsibility to Raise Frivolous Issues in Death Penalty Cases, 31 Hofstra L. Rev. 1167, 1177-1178 (2003), quoting ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases, Guideline 10.8 (rev. ed. 2003).

10.    The Supreme Court has relied on the ABA Guidelines to define "prevailing professional standards" in considering whether a defendant has received competent representation under the Sixth Amendment.    See, e.g., *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 2535 (2003); see also *Williams v. Taylor*, 529 U.S. 362, 369 (2000), relying on the ABA Standards for Criminal Justice, Commentary to Standard 4-4.1, (2d ed. 1980).    Since counsel for Mr. Davis have not been able to communicate with Mr. Davis at all despite their diligent efforts, and because their fact investigation has convinced them that he is, indeed, incapable of consulting with them with a reasonable degree of rational understanding, and also that he is incapable of voluntarily and knowingly rejecting their services, counsel would be derelict in their ethical duty to the Court and to their client if they failed to inform the Court of these crucial facts in an appropriate motion.    Because the provisions of the current ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases are appropriate for the Court's consideration in Len Davis's case, they are quoted and discussed in paragraphs 11-14 below.

11.    "Counsel at all stages of the case should engage in a continuing interactive dialogue with the client concerning all matters that might reasonably be expected to have a material impact on the case, such as: 1. the progress of and prospects for the factual investigation, and what assistance the client might provide to it; ... 4. presentation of the defense case...."  Guideline 10.5(C).  This Guideline is of particular importance in Len Davis's case because counsel have not been able to engage in any dialogue with Mr. Davis whatsoever since their appointment.  Moreover, on an earlier occasion, Mr. Davis represented himself with a different hybrid counsel for part of a hearing, and he then left the courtroom, leaving hybrid counsel to conduct the remainder of the hearing. Counsel in that hearing should have been, but were not, prepared to do so.  Ms. Ottinger and Ms. Hudsmith are therefore required to comply with Guideline 10.5(C) regardless of their standby status.

12.    Specifically with regard to "Counsel's Duties Respecting Uncooperative Clients," the Commentary to Guideline 10.5 requires counsel "to monitor the client's personal condition" and "to make a reasoned decision ... whether to assert the position that the client is not competent to waive further proceedings." This obligation applies to "all stages of the case," expressly including counsel's duties in the post-conviction stage.

13.  Guidelines 10.7(A)(1) and (2) obligate counsel to conduct a thorough and independent investigation relating to both guilt and penalty "regardless of any ... statement by the client that the evidence ... is not to be collected or presented."

Moreover, Guideline 10.7(B)(2) provides that "Counsel at every stage have an obligation to satisfy themselves independently that the official record of the proceedings is complete and to supplement it as appropriate." Counsel for Mr. Davis are therefore ethically required to file appropriate motions with the Court regarding their professional assessment of Mr. Davis's incompetence and setting forth all conceivable issues that might be raised on his behalf.

14.  Guideline 10.15.1 requires post-conviction counsel to "(C) ... seek to litigate all issues ... that are arguably meritorious under the standards applicable to high quality capital defense representation, including challenges to any overly restrictive procedural rules. Counsel should make every professionally appropriate effort to present issues in a manner that will preserve them for subsequent review."  In addition, counsel are required by Guideline 10.15.1(E)(2) to "continually monitor the client's mental ... condition for effects on the client's legal position." Despite any procedural rulings to the contrary, therefore, counsel for Mr. Davis are ethically required to file appropriate motions with the Court regarding their professional assessment of Mr. Davis's incompetence and setting forth all conceivable issues that might be raised on his behalf.

Ex. A, at ¶¶ 8 – 14 (footnote omitted). Thus, in light of these ethical and professional obligations, the undersigned are compelled to file a § 2255 motion on Mr. Davis's behalf.

## IV.    Conclusion

Mr. Davis is the only federal capital defendant in the modern era to have been uncounseled during the pendency of the limitations period for his § 2255 motion. If Mr. Davis manages to file a § 2255 within the limitations period, he will be the only federal capital defendant in the modern era to have done so without the assistance of counsel and expert and investigative services, and any § 2255 motion he files will almost certainly fail to identify and present all the cognizable, meritorious habeas claims available to him. If Mr. Davis does not file a § 2255 motion, he will not only be the only federal capital defendant in the modern era to have failed to do so, his § 2255 proceedings will be summarily concluded and he will be executed by the government.

None of the foregoing represents the fair administration of justice in a capital case. This Court has the discretion to correct this and to ensure that any potential post-conviction claims

claims attacking Mr. Davis's conviction and sentence are properly identified and presented to this Court for review by qualified legal counsel. Therefore, it is respectfully submitted that this Court vacate its prior grant of *Faretta* relief, based on Mr. Davis's mistaken and legally incorrect assertion that he has a constitutional right to represent himself in his post-conviction proceedings, and re-enter this Court's March 2, 2011 order appointing undersigned counsel to represent Mr. Davis in his capital § 2255 proceedings.

WHEREFORE, the undersigned respectfully move this Court to vacate its May 16, 2011 order (Doc. No. 2231) allowing Mr. Davis to represent himself in his capital § 2255 proceedings and re-appoint the undersigned to represent Mr. Davis as per the March 2, 2011 order (Doc. No. 2190).

Respectfully submitted,


/s Sarah L. Ottinger____
Sarah L. Ottinger, La. Bar No. 24589
636 Baronne Street
New Orleans, LA 70113
(504) 529-5955
*saraho@thejusticecenter.org*

Rebecca L. Hudsmith, La. Bar No. 7052
Federal Public Defender for the
Middle and Western Districts of Louisiana
102 Versailles Blvd., Suite 816
Lafayette, LA 70501
(337) 262-6336
*Rebecca_Hudsmith@fd.org*

*Counsel for Len Davis*

**CERTIFICATE OF SERVICE**

I hereby certify that a that a true and correct copy of the foregoing document has been filed with the Clerk of the Court by using the CM/ECF System which will send a notice of electronic filing to all counsel of record on this 20th day of March, 2012.


/s Sarah Ottinger_____
Sarah Ottinger