1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA          *    Docket 94-CR-381
                                  *    Section "C"
                                  *
versus                            *    New Orleans, Louisiana
                                  *
                                  *
LEN DAVIS                         *    April 17, 2012
                                  *    10:00 a.m.
* * * * * * * * * * * * * * * * *

STATUS CONFERENCE BEFORE THE
HONORABLE HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:          U.S. Attorney's Office
                             BY:  MICHAEL E. MCMAHON, ESQ.
                             650 Poydras Street
                             Suite 1600
                             New Orleans, Louisiana 70130


For Len Davis:               LEN DAVIS (Pro Se)
                             #24325-034
                             FCC Terre Haute
                             U.S. Penitentiary
                             P.O. Box 33
                             Terre Haute, Indiana  47808


For Len Davis:               Capital Appeals Project
                             BY:  SARAH L. OTTINGER, ESQ.
                             636 Baronne Street
                             New Orleans, Louisiana  70113

JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

APPEARANCES CONTINUED:

Official Court Reporter:       Jodi Simcox, RMR, FCRR
                               500 Poydras Street
                               Room HB-406
                               New Orleans, Louisiana 70130
                               (504) 589-7780

Proceedings recorded by mechanical stenography, transcript produced by computer.

## STATUS CONFERENCE

## (April 17, 2012)

(WHEREUPON, the following proceedings were held in chambers.)

**THE COURT:** Okay. Mr. Davis, this is Judge Berrigan, and Mike McMahon is here and a court reporter is here. Of course, Kim County, our courtroom deputy, is here. Ms. Hudsmith and Ms. Ottinger are out in the --

**MS. MORGAN:** Ms. Ottinger and her paralegal. Ms. Hudsmith has waived her presence.

**THE COURT:** Okay. Ms. Ottinger is out in the reception area. She's not present for this particular meeting.

Okay. I need to ask you just a couple of things, Mr. Davis. We didn't receive anything directly from you post-conviction. So what I wanted to ask you first is if you attempted to file something or not.

**MR. DAVIS:** No, I did not.

**THE COURT:** Okay. Now, we have had the representation made to us by Ms. Hudsmith and Ms. Ottinger that you consent to at least some of the parts of the pleading -- well, let me back up.

Do you have a copy of what Ms. Ottinger and Ms. Hudsmith filed?

**MR. DAVIS:** Yes, Your Honor, I do.

**THE COURT:** They've represented to us that you have

consented, maybe not written-wise, but have consented to at least some of the issues they are raising; is that correct?

**MR. DAVIS:**  I don't know if I would use the word *consent*.  What I actually said -- well, I spoke to Ms. Costa. I don't know if you remember Mary from being my paralegal when I was -- 2000 to 2005, she was the paralegal hired by --

**MR. MCMAHON:**  Mary Costa?

**MR. DAVIS:**  Mary Costa, yes.

**MR. MCMAHON:**  She worked with Julian.

**THE COURT:**  Oh, Julian Murry.  Okay.

**MR. DAVIS:**  Yes.  Julian hired her.  She's the only one I've accepted phone calls from for the past year because I had a working relationship with her.

I simply spoke to Mary and Mary relayed a message where I made it clear that if I ever decided to go forward, it would only be for conviction issues, and that came with stipulations, Your Honor.  That's why I didn't say *consent*.

What I said was is that not only would the Court, but Ms. Ottinger and Ms. Hudsmith would, have to acknowledge for the record that every sentencing issue in that 2255 is to be redacted.  Anything dealing with incompetency, which we all know is absurd, would be redacted.  And the only thing that would be in front of this Court would be conviction issues; in other words, those convictions would be dealt with.

Or if they're not, I'm in the same place I'm at.

And that's what I said I would be willing to do only if the Court and those attorneys agreed to stipulate to that fact, that no sentencing issues would be in front of this Court without my express permission. And the government would not have to file anything related to any sentencing issues, only with the conviction issues.

THE COURT: Okay.

MR. DAVIS: That's my Sixth Amendment right to do it the way I would want to do it. So if I agreed, that is where we're at. If there's a problem with that, then we go back to where I'm at.

THE COURT: Okay.

MR. MCMAHON: Could I --

THE COURT: Go ahead, Mike.

MR. MCMAHON: Mr. Davis?

THE COURT: Can you hear Mike?

MR. DAVIS: Yeah. I can hear you, Mike. Go ahead.

MR. MCMAHON: Do you recall the hearing last May 16th where you were brought down here from Terre Haute?

MR. DAVIS: Yes.

MR. MCMAHON: Do you feel right now in any way that you are mentally ill?

MR. DAVIS: Of course not. That's absurd. What I had, like, six competency hearings? I mean, that's absurd to

claim that I'm any way incompetent.

MR. MCMAHON:  That was my next question.  Did you understand the implications of the hearing last May 16th where -- and I have the copy of the minute entry.  I ordered the transcript -- where you expressly stated that you wanted to exercise your right under *Faretta v California* and represent yourself post-conviction?

MR. DAVIS:  Absolutely.

MR. MCMAHON:  Do you feel -- do you understand what that means?  Do you understand that you are giving up -- you gave up your right in court, under oath, to have counsel?

MR. DAVIS:  Well, no, that's not true, Mike.  If you remember, even the judge said it herself, it would be just like it was with Julian and Carol, where they were standby counsel and they assisted me throughout, with my permission.  Any motions that were filed, anything that was done, we worked in concert, with my permission.

You see, the main thing with me, Mike, was always that it's with my permission.

MR. MCMAHON:  Right.

MR. DAVIS:  You see, I've been --

MR. MCMAHON:  But, I think actually the ultimate -- what the question really is here, Mr. Davis, is do you feel -- do you understand -- I guess:  Do you feel you're competent?  Do you understand what went on?  Do you understand what waving

the right to counsel meant?

MR. DAVIS:  I understand exactly what it meant.  And I also understood when Judge Berrigan put them on as standby counsel that they had the same position that Julian Murray had and Carol Kolinchak had when I was pro se between 2000 to 2005, during the time we went to the Fifth Circuit.  That was Julian filing that stuff for me to the Fifth Circuit, as a standby counsel, when we got the judge reversed.

MR. MCMAHON:  Okay.

MR. DAVIS:  So I understand it falls back to the hybrid representation.  But I am, for lack of a better term, I'm the HNIC, "N" meaning negro.  And so I understand that I'm in charge, but they could assist me if I chose to allow them to assist me.

MR. MCMAHON:  Okay.  Let me ask you this:  When were you served with the 400 pages plus that we got -- that was filed on March the 20th of this year?

MR. DAVIS:  I think I got mine, like, around the 16th of March.  It was like a week or -- a week to 10 days before it was due, like, on the 21st, I believe.  It was like a week or 10 days before that, and I read it.

MR. MCMAHON:  Okay.  You received it by way, I'm taking it, of mail?

MR. DAVIS:  Yes, yes.  I believe it was Federal Express.

MR. MCMAHON:  It was filed on the 20th.

MR. DAVIS:  Okay.

MR. MCMAHON:  Before it was filed, did you speak to either Ms. Ottinger or Ms. Hudsmith or Mary Costa or any agent or representative of any of those people?

MR. DAVIS:  Okay.  Give me the date again, Mike, because I don't want to tell you something that's not right. Did I speak to them before what date?

MR. MCMAHON:  Well, before the pleadings were filed on March 20th, did you speak to them about the pleadings that were to be filed?

MR. DAVIS:  No.  The only person I spoke with since May of last year at that hearing is Mary Costa.  I have not spoke with Rebecca or Sally.

MR. MCMAHON:  Was Mary Costa speaking on behalf of Hudsmith or Ottinger?

MR. DAVIS:  Mary is like an in-between.  The only reason Mary start calling up here is because after that hearing in May when I praised Mary Costa as the only one who was -- had any relevance when I was representing myself, apparently, Ms. Ottinger and Ms. Hudsmith picked up on that and they contacted Mary on their own.

You see, because I wasn't accepting any phone calls from anyone up here.  But when Mary wrote and said she wanted to call, I said okay, because I had a working

relationship with Mary.  So Mary Costa, I have spoken with her, and that's who I've been speaking with over the year.

So what she's been doing is acting as an in-between with Ms. Ottinger and Ms. Hudsmith and myself.  And if they had a message, Mary would give it to me; and if I had something I wanted to say, I would give it to Mary.

**MR. MCMAHON:**  All right.  Mr. Davis, did you authorize -- did you consent to the filing of that 400 pages plus that was filed on March the 20th of this year?

**MR. DAVIS:**  Up until this point, I have not gave my -- whether or not I want to let that be filed for me or not.  No, I have not.

**MR. MCMAHON:**  You were aware the minute entry -- or the order -- the Court's order, which stated, and I'm quoting, standby counsel cannot file anything without the consent of Defendant Davis.

So I take it from your plain language, you did not consent to this filing; correct?

**MR. DAVIS:**  No, I did not.  But at the same time, Mike, you know it's my Sixth Amendment right.  So it still falls back on me.  It's not a right that the government has; it's something that I can decide on.  See, because that thing was filed within the one-year time line.  So the government is not injured in any way in this case.

If I decide that I want to have it filed, it's

well within my right because it was filed within that time period.  So that falls back on me is what I'm saying.  It's not a decision you can make, Mr. McMahon; it's a decision that I can make being a pro se defendant since it's my Sixth Amendment right that's in jeopardy.

MR. MCMAHON:  Well, I guess that's why we're here.

Did you speak to the attorneys about the filing since March 20th?  Since it was actually filed, did you speak to them about this?

MR. DAVIS:  I spoke to Mary and Mary relayed a message to them, which I'm not sure if they got the full, complete message.  But I got a letter from Mrs. Ottinger telling me that she did speak to Mary and they partly have something in the letter about what I told Mary.

But as I just told the judge and you earlier, that would be with stipulations as far as how far I would be willing to go with this.

THE COURT:  Okay.  I --

MR. DAVIS:  But I did speak with Mary, but not Ms. Ottinger or Ms. Hudsmith.

THE COURT:  I'm going to intervene here because we're getting into a lot of conversations about you with your counsel and that's not really appropriate to be talking about.

I would like to invite Ms. Ottinger in at this point with the paralegal for you to say to her what your

conditions of representation would be.

But, also, Mr. Davis, I'm going to need for you to go through those pleadings and write to me specifically what portions of those pleadings you are interested in adopting, what portions of those pleadings you specifically reject. And that's a letter that we will put into the record.

Okay. Would you do that for me, Mr. Davis?

MR. MCMAHON: But also before -- what I'd like to establish here is, again, I mean, either you're going to represent yourself or they're going to be your counsel. Okay? This hybrid stuff about you'll take some issues and they'll take other issues, Judge, that doesn't work.

THE COURT: I'm going to allow the standby counsel process to continue.

MR. DAVIS: And I'd like to point out for the record that we did that for five years.

THE COURT: I know. And it actually functioned reasonably well.

Okay. Let's bring Ms. Ottinger in and her paralegal. Ms. Hudsmith has waived her presence.

(WHEREUPON, Ms. Ottinger and her paralegal entered the conference room.)

THE COURT: Okay. Mr. Davis is on the line. We've been talking, obviously, with Mr. Davis for a few minutes. I've asked him to send me a letter to -- Ms. Ottinger and the

paralegal are here now, Mr. Davis.

**MR. DAVIS:**  Okay.

**THE COURT:**  I asked Mr. Davis to send me a letter in which he will identify what portions of the pleadings that were filed that he adopts, what portions he specifically rejects, and then we'll put that into the record when it arrives.

But I wanted him to go ahead, since it's not that often we can have him on the line, I wanted him to express himself to you as to what portions of those pleadings he does accept and what portions he specifically rejects.

So, Mr. Davis, if you wouldn't mind just reciting what you said to us --

**MS. OTTINGER:**  Your Honor, could I just interject for a moment?

**THE COURT:**  Sure.

**MS. OTTINGER:**  Just that I believe that any conversations with Mr. Davis about which portions of the pleadings he wants to go forward and which portions that he wants to reject are privileged and confidential and attorney/client material.

So I would object to the government's presence for these conversations.

**THE COURT:**  That objection is overruled.

Mr. Davis, can you go forward and just tell Ms. Ottinger and the paralegal what you --

**MR. DAVIS:** Okay. Again -- I'm sorry. They were coming to the door.

**THE COURT:** Okay.

**MR. DAVIS:** What I told them, Ms. Ottinger, is that the only way I would be willing to allow the 2255 to stand is if the only thing that was in front of this Court would be conviction-related issues. Period. Not any sentencing issues, not the ones that you filed, not any future sentencing issues, without my permission -- without my express permission. Of course, that would redact not only the sentencing issues, but what I consider to be absurd incompetency issues.

The only issues that would be in this brief and that would be in front of this Court to make a ruling on and that the government would have to respond to would be conviction issues.

If that's a problem for you, I respect that. I want you to make it clear right now for the record so I can make my decisions for the judge and we can be done with this. But that is the only thing that would be in front of this judge, nothing else. If you have a problem with that, please speak so we can get it straight now.

**THE COURT:** Well, we don't necessarily have to go into that aspect of it, but I just wanted to get the clarification.

Mr. Davis, I do need you to send me that letter

so we can put that into the record.

Then if any party at this point wants to say anything more, put it in writing, one way or the other. I think we have a lot of clarification as of this morning. I appreciate it. Then we'll just move on from here.

I'm not suggesting any particular motion should be filed. But if the government or the defense wants to file anything in response to this conversation this morning, two weeks.

MR. MCMAHON: I want to bring something up. In light of the fact that the hearing last May 16th was, apparently, meaningless, and what I'm worried about is that any filings that going forward that if Mr. Davis supports the filings, okay, we already have him on record last May stating that he didn't want anything filed without his express approval beforehand, which, obviously, was not obtained here.

And then later on, what he can do is, if any issues come up, Mr. Davis -- and this is what we're worried about, is that he can later claim that he did not approve the advancement of these issues, that counsel were ineffective and they violated his *Faretta* rights in doing this.

So we're kind of -- we're kind of in a trick bag here, since, apparently, nothing said on the record, unless -- applies unless it applies to the government. I'm going to file a motion for sanctions and a motion to strike the pleading

filed on March 20th.

THE COURT: Okay.

MR. MCMAHON: It was in clear violation of the order. Counsel did not seek leave to file with the Court beforehand. They did not get Mr. Davis' prior authorization beforehand, as the Court ordered. The simple fact is, is that if the roles were reversed -- I mean, it's not a level playing field.

It's clear to me, from the depth of detail of that filing, that these attorneys spent not weeks but months researching this thing. They cite the detention hearing for Mr. Davis, which was held in December of 1994. They cite to the drug trial before Judge Feldman. So it was clear that they intended this when they walked out of court last May 16th and that the court order meant nothing.

I'm filing a motion to strike and I'm filing -- and I'm going to seek sanctions.

THE COURT: Okay. Well, you can go ahead and do that. I'll give you two weeks. Is two weeks enough time to do it?

MR. MCMAHON: That's fine.

THE COURT: All right. And then you all file a response two weeks thereafter.

MR. DAVIS: Your Honor, I'd like to get a clarification. I notice when you told me you wanted me to write a list of the things that I would want before this Court.

THE COURT:  Right.

MR. DAVIS:  Does the Court acknowledge that that is within my purview and that the Court cannot overrule me and accept sentencing issues without my permission?  Does the Court acknowledge that?

THE COURT:  Well, you're asking me to rule on something.

MR. MCMAHON:  And that was my question.

THE COURT:  Well, I know that's Mike's concern.

I'm not going to venture a legal opinion about anything without something written down.  I need you to file, for purposes of clarification, so that your attorneys and the prosecutor know.

You did say one thing, Mr. Davis, that caused me some concern.  You made it very clear that you wanted conviction issues raised and then you said something about you didn't want any sentencing issues raised without your permission.

You need to decide in this letter that you send me which it's going to be.  If there's any sentencing issues you're content to raise, fine, but tell me now.  Don't lay in the gap and tell me six months from now, "Oh, by the way, I want to raise this sentencing issue."

MR. DAVIS:  Your Honor, I can give you my word on that right now.  Under no --

THE COURT:  Okay.  Well, that's fine --

MR. DAVIS:  Under no circumstances will any sentencing issues be raised.

THE COURT:  Okay.  Well --

MR. DAVIS:  The only reason I clarified it that way is just to show that I was the one who was lead.  But by no mistake should anyone believe that I will ever change my mind --

THE COURT:  Okay.

MR. DAVIS:  -- on that.

THE COURT:  Well, I was a little uncertain because you said something "without consent."

Please write to me as soon as you can so we can put that into the record.  I've given Mike two weeks to file his motion to strike; two weeks after that for you guys to respond.

MS. OTTINGER:  If I could, could I respond?

MR. MCMAHON:  Wait.  Could I ask?

Mr. Davis, I'm going to clarify something, okay?

MR. DAVIS:  Okay.

MR. MCMAHON:  Now, you have -- now, when you say you're going to --

MS. OTTINGER:  Objection, Your Honor.  I mean, I think -- the government --

THE COURT:  Well, let's see what the question is.

Go ahead.  What's the question?

MR. MCMAHON:  Just to be clear:  You're going to identify those issues that are in the existing filing that you want to adopt; correct?

MR. DAVIS:  Correct.

MR. MCMAHON:  Now, what about other issues that you want to advance --

MR. DAVIS:  Only related to the conviction, Mike.

MR. MCMAHON:  -- that are not contained in that -- you know, and, again, this is my concern.

THE COURT:  Well, the time has run for any other issues.  The time has run for any other issues.  The only thing that's potentially before us is the petition that was filed by Ms. Ottinger.

MR. MCMAHON:  I just want to nail this down because this is very messy.

THE COURT:  Well, I don't think it's messy.  I think it's pretty clear.

Mr. Davis, let me ask you another quick question.  I assume that standby counsel have permission to respond to -- Mike's going to file a motion to strike.  May I assume that standby counsel will have your permission to respond to these various pleadings?  Hopefully, route them through you first, but if we have a time crunch that they can go ahead and respond.

MR. DAVIS:  Yes.  What I'm going to do, I'm going to give them permission up here to start calling so I can speak to them on the phone --

THE COURT:  Perfect.

MR. DAVIS:  -- so we can make sure we're on the same page.

THE COURT:  Great.  That's what I needed to know.

MR. DAVIS:  Yes.

THE COURT:  Okay.  Very good.

MS. OTTINGER:  Your Honor, may I quickly respond to Mr. McMahon?

THE COURT:  Sure.

MS. OTTINGER:  I just -- I need to make clear, again, that the government in this case is seeking to maintain a life sentence and seeking execution; and that what we've raised in the 2255, and we'll find out from Mr. Davis whether that's a claim that he wants to adopt, is that there's a serious conflict of interest in the very prosecution of this case. That's the first claim.

I think that for the government to be involved in hashing through the relationship between standby counsel and Mr. Davis or the claims that Mr. Davis should or should not pursue violates attorney/client privilege.

THE COURT:  I note your objection.  I note your objection.  This has been a very complicated process and --

**MS. OTTINGER:** It has. But, I mean, I think it's akin to funding.

**THE COURT:** Well, I don't agree with that.

All right. I think that all we have to --

Well, Mr. Davis, you have consented to them filing on your behalf and you'll be in touch with them?

**MR. DAVIS:** Yes.

**THE COURT:** So we'll go ahead and just do a minute entry to that effect.

**MS. MORGAN:** And any opposition to the government's motion can be accepted?

**THE COURT:** Yes. Right.

**MS. OTTINGER:** And --

**MR. MCMAHON:** Well, before he hangs up, where do we go forward from here?

**THE COURT:** You have two weeks to file your motion to strike.

**MR. MCMAHON:** Assuming it's going to be denied, Mr. Davis files his letter identifying those issues --

**THE COURT:** Right.

**MR. MCMAHON:** -- and then what happens? Then what happens then?

**THE COURT:** Well, whoever wants to file something to tell me what they think ought to happen next, fine, I will listen to it and listen to any response. And there may be some

agreement.  I don't know.  I'm not going to conjecture at this point what's going to happen after that.

He gets his filing in, the defense may have a response to it.  I don't know if they will or not.  You may have a response to it.

MR. MCMAHON:  How long are you giving Mr. Davis to --

THE COURT:  Two weeks.  I gave you two weeks, I gave him two weeks to respond to your motion to strike.

THE DEPUTY CLERK:  What about the letter?

THE COURT:  Oh, the letter.

Mr. Davis, can you get the letter in by sometime --

MR. DAVIS:  I'm writing that today and it's leaving tomorrow morning.

THE COURT:  Okay.  Fine.

THE DEPUTY CLERK:  So I'll say within two weeks.

MS. MORGAN:  Two weeks after the letter.

THE COURT:  So do you want to do two weeks after the letter?

MR. MCMAHON:  I'd take your time on that, Len. That's a long pleading.

MR. DAVIS:  Oh, I've read through it.  Mike, I don't know how clear I can make this.  I know exactly:  There will be no sentencing issues.  If a problem arises from that, then we'll just take the other option.  So, I mean, it's not

anything where I'm trying to be slick, Mike.  I'm telling you that you will only have to respond to conviction issues.

THE COURT:  Okay.  Mr. Davis --

MR. DAVIS:  I don't have anything that I need to hide.

THE COURT:  Mr. Davis, I'll give you until next Monday.  What's today?

MR. DAVIS:  Today is Tuesday, Your Honor.

THE COURT:  I'll give you until next Monday to get your letter in.

MR. DAVIS:  Okay.

THE COURT:  Then, Mike, do you want two weeks after that to get your motion in?  Do you want to see the letter first before you file your motion or not?  It's up to you.  The motion to strike.

MR. MCMAHON:  I understand that.

THE COURT:  Do you want to see first what he's filing?

MR. MCMAHON:  No.

THE COURT:  Okay.  All right.  So two weeks for Mr. McMahon to file -- two weeks from today to file the motion to strike; two weeks for Mrs. Ottinger, et. al., to file a response to that.

MS. MORGAN:  We have three pending motions or filed motions.  Is Mr. Davis going to address those as well?

THE COURT: Oh, yes. Mr. Davis, there's also a number of -- in addition to the monster pleading that was filed, there was also several separate motions for discovery and some other things. Would you please also in your letter be very clear about which of those motions, if any, that you want to go forward with.

MR. DAVIS: Okay.

THE COURT: All right. Thank you.

Thank you, Diane.

MS. OTTINGER: Could I speak really briefly with him to schedule a follow-up call?

THE COURT: Yes. Are we done other than -- are we done with everything other than . . .

THE DEPUTY CLERK: All right. Mr. Davis is to file his letter by April 23rd, the government to file their motion by May 1st, the defendant to respond to the government's motion by May 8th.

THE COURT: No, I thought two weeks. I gave them two weeks. Two weeks and two weeks. Two weeks from today for --

THE DEPUTY CLERK: Wait. You told Mr. Davis to file a letter by next Monday, which is the 23rd.

THE COURT: Right. That's for Mr. Davis. But then Mr. McMahon can file his motion in two weeks, and then --

THE DEPUTY CLERK: So two weeks from today, May 1st.

THE COURT: May 1st. And then two weeks later for

the response.

THE DEPUTY CLERK:  Oh, I'm sorry, May 15th.

THE COURT:  Okay.  That's where I thought --

MR. MCMAHON:  In the meantime, Mr. Davis files his letter by next --

THE COURT:  Yes.  His letter will be filed by next Monday.

Mr. Davis, go through all those motions also and let us know which ones you adopt and which ones you reject.

MR. DAVIS:  Okay.

THE COURT:  Okay.  Now, I think we're done with Mr. McMahon.  And you wanted to talk to --

MS. OTTINGER:  Just very briefly.

THE COURT:  -- just to schedule a time.

MS. OTTINGER:  Right.

THE COURT:  Okay.  Mr. McMahon, thank you.

Okay.  I'm going to step out of the room also.

(WHEREUPON, Mr. McMahon exited the conference room.)

THE COURT:  Mr. Davis, the court reporter will stay here, however, because we do need to keep this on the record. I'm going to let Ms. Ottinger speak with you.  Miss Kim, you can leave, too, I think.

MS. OTTINGER:  Well, I'm fine with --

THE COURT:  Okay.

MS. OTTINGER:  Mr. Davis, I'm just going to follow-up

with -- I'm going to be in touch with Mr. Edwards to try to schedule a call with you, because I do think it's really important that we talk.  And I'm really glad that we are going to have the opportunity to talk.

How long does it take for you to change your preference in terms of who you speak to?  Do you have any sense of that?

MR. DAVIS:  All I need to do is send out a letter. The only problem you're going to have is how long they take to schedule for you to be able to call up here.  But as far as me, once I get off the phone, I can send out what's called a "Cop-Out" to Mr. Edwards and let him know that I will accept phone calls from you.

MS. OTTINGER:  So if it's all right with you, I'm going to go ahead and give him a call to try to schedule today as soon as I get back to the office and let him know that you're sending that letter so that we can expedite the whole thing.

MR. DAVIS:  All right.

MS. OTTINGER:  Sound good?

MR. DAVIS:  Okay.

THE COURT:  Yeah, it took us about a week to set this conference up.

MR. DAVIS:  Normally, it takes -- they got like 50 people up here, I think.  So it normally takes -- you can't get

a call immediately.  It normally takes a while.

**MS. OTTINGER:**  Okay.  Thanks so much.  I look forward to talking with you.

**MR. DAVIS:**  Okay.

**THE COURT:**  All right.  Mr. Davis, always good to talk to you.

**MR. DAVIS:**  All right, Judge.

**THE COURT:**  You take care.

**MR. DAVIS:**  Bye-bye.

**THE COURT:**  Bye-bye.

(WHEREUPON, Mr. Davis' participation in the status conference concluded.)

**MS. MORGAN:**  Judge, did you want to address any budget issues?

**THE COURT:**  Yes, I guess.

**MS. OTTINGER:**  This will be ex parte on the record?

**THE COURT:**  Oh, yes, yes.

**THE DEPUTY CLERK:**  This portion of the conference will be sealed.

(WHEREUPON, the following proceedings were placed under seal.)

(WHEREUPON, the status conference was concluded.)

*****

**<u>CERTIFICATE</u>**

I, Jodi Simcox, RMR, FCRR, Official Court Reporter for the United States District Court, Eastern District of Louisiana, do hereby certify that the foregoing is a true and correct transcript, to the best of my ability and understanding, from the record of the proceedings in the above-entitled and numbered matter.


S/ Jodi Simcox, RMR, FCRR
Jodi Simcox, RMR, FCRR
Official Court Reporter