**UNITED STATED DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL DOCKET NO. 94-381 |
| v. | * | SECTION: "C" |
| LEN DAVIS | * | |
| | * * * | |

**MEMORANDUM IN SUPPORT OF GOVERNMENT'S MOTION FOR LEAVE TO FILE REPLY TO DEFENDANT'S REQUEST FOR APPOINTMENT OF COUNSEL**

The United States opposes the request to appoint yet another, separate attorney to represent Davis ensuing the Court's order that Dr. Ned Masbaum examine his competency to waive certain claims set out in his pending habeas corpus application: additional representation is unnecessary because the competency examination does not create an intractable conflict for present stand-by counsel; the Court's order anticipated the "protective action" contemplated in Louisiana Rule of Professional Conduct 1.14(b), making the request for additional counsel moot; and Davis's right to control his legal fate, as unwise as some may think his strategy may be, has been consistently asserted, and upheld, throughout this litigation.

I.

Stand-by counsel's request for separate representation on the competency question flows from a *non-sequitur*: an inquiry into Davis's competency to advance certain issues, while rejecting

others, does not put him and his present counsel at opposite sides of an ethical divide.  The mere request for a competency examination is not antithetical to Davis's position that his mental state is not open to challenge.  While Davis informed the Court that he wants to litigate only conviction-related claims (the same position he has espoused since this case was remanded in 1999), examination of his competency one more time does not amount to litigating a claim that conflicts with his wishes.  Stand-by counsel conflates these separate issues, hence their error in reasoning.

The competency commission was ordered on the Court's order and not by way of a motion from either the government or the defendant.  There is nothing adversarial, therefore, regarding the impending examination:  it will serve a gatekeeping function to protect the record and assure the Court, along with the parties, that Davis can knowingly and intelligently adopt certain issues and abandon others relating to his sentence and mental condition.  And it is not an option that Davis can accept or reject: the Court has ordered the inquiry and the parties have no alternative other than to abide by its order.

The inquiry into his ability to pick and chose his issues is a reasonably, and logical, initial step in this process.  Actually, stand-by counsel's request really imposes an alteration to the Court's order.  Had the Court seen fit to deem additionally counsel necessary, surely the Court would have included that condition in its initial order.  But, since the Court rightly issued the order from the perspective of its neutral position, not prompted by a motion from either side, the fact that such a requirement was not included illustrates further the non-adversarial nature of the inquiry.

Assumedly, the Court appointed Dr. Masbaum out of an overabundance of caution, since the pending exam will be the fourth competency inquiry since Davis was convicted: he was examined, on the government's motion, when he boycotted the penalty phase of trial in 1996; he was examined

post-remand when he announced his wish to represent himself at the new sentencing hearing; he was examined by Dr. Donna Mancuso after the Supreme Court denied *certiorari*, barely over a year ago, when Davis asserted his right to self-represent during post-conviction litigation; and, finally, the impending examination, relatively hard on the heels of Dr. Mancuso's last evaluation.

Since there is nothing antagonistic between Davis's desire to control his litigation and any lingering, albeit unwarranted, doubt about his competency to do so, Davis's ability to discern all, and discriminate among, the 29 habeas issues authored by stand-by counsel should be viewed as a threshold matter to be resolved before consideration is given to his selected issues. As opposed to erecting a conflict, this gatekeeping step is integral to present counsel's very representation.

Stand-by counsel's invocation of a "conflict" is thus half-formed: apart from their bald assertion, the request does not define the substance of any alleged conflict, nor do they consider the fact that the Court's order should be viewed as a cautious predicate to consideration of the claims embraced by Davis, at the expense of his rejection of others. Counsel's request for new representation misses the point, since they confect a non-existent ethical dilemma from a reasonable and cautious order issued as a mater of course in this situation.

II.

Nor does the Court's order implicate any ethical imperative on stand-by counsel's part: in fact, the order is precisely the sort of "protective action" contemplated by Rule 1.14(b). Thus, the request for additional counsel, if based on an imagined ethical mandate, has been rendered moot.

Stand-by counsel's argument is redundant and their invocation of Rule 1.14(b) flows from a false premise: the "protective action" contemplated by the rule is not the appointment of a new layer of representation, a separate and redundant counsel, but rather the "protective action" is the

very appointment of the new competency commission itself. Any ethical concerns have been assuaged by the Court's order.

The cases cited along these lines by stand-by counsel are, accordingly, superfluous and they do not inform this issue. Their citations address the sort of prophylactic steps that should be taken when a subject's mental condition comes into play, ignoring the fact that the Court has already engaged such action. Their cited authority is incongruous and really not useful for consideration of stand-by counsel's redundant request.

### III.

Finally, there is no "reasonable belief" (as the request for counsel disingenuously puts it) that Davis suffers from a defect, such as bipolar disorder, that calls into question his ability to decide which issues he wants to litigate. Quite to the contrary, Dr. Mancuso's May 2011 evaluation made no Axis I diagnosis, under which bipolarity would fall. Dr. Mancuso's most recent examination is particularly instructive because she previously examined Davis during this litigation, so she has a clinical history with him. She surely would have noted any changes or deterioration in his mental condition in the interim between her examinations. (In fact, Dr. Mancuso's last report noted that Davis's April 22, 2011 psychological progress report from the penitentiary observed "no indication of psychological deterioration" in Davis's condition "due to locked status." (Doc. 2232, at 6.)

Davis's decision to attack only his conviction is not some newly-hatched change in tactics borne of some imagined delusion, as stand-by counsel implies. He has consistently, since his convictions were affirmed, employed the strategy of attacking the strength of the governments's case regarding guilt, eschewing any challenge to his sentence or to his mental health. While this approach may be "admittedly risky" (*United States v. Davis*, 285 F. 3d 378, 384 (5th Cir. 2002)), as long as

Davis is cognizant of his options and knowingly and intelligently waives some other strategy, "The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails." *United States v. Davis,* 2001 WL 34712238 * 3 (C.A. 5 (La.)), *quoting Faretta v. California*, 422 U.S. 806, 820 (1975). Davis has always expressed his opinion that courts will take his case more seriously if he is sentenced to death. As unconventional as this may be, and as much as some may disagree with his strategy, the Sixth Amendment confers his right to proceed as he sees fit.

<div style="margin-left:50%">

Respectfully Submitted,

JIM LETTEN
UNITED STATES ATTORNEY

 /s/Michael E. McMahon
MICHAEL E. MCMAHON
Assistant United States Attorney
Louisiana Bar Roll No. 10095
650 Poydras Street, Suite 1600
New Orleans, Louisiana  70130
Telephone: (504) 680-3027

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2012, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all defense counsel of record.

<div style="margin-left:50%">

/s/Michael E. McMahon
MICHAEL E. McMAHON
Assistant United States Attorney

</div>

5