**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**UNITED STATES OF AMERICA**          *          **CRIMINAL DOCKET NO. 94-381**

          **v.**          *          **SECTION: "C"**

**LEN DAVIS**          *

          *          *          *

**GOVERNMENT'S OPPOSITION TO MOTION TO**
**VACATE GRANT OF *FARETTA* RELIEF (DOC. 2266-2)**

I.     PREFATORY NOTE: LEN DAVIS REPUDIATES THE "MOTION TO VACATE *FARETTA* RELIEF"

At a hearing on May 16, 2011, the court, recognizing that Len Davis was competent to make his own decisions, ruled that he could represent himself during habeas corpus litigation and also appointed standby counsel.  (Doc. 2231)  The order issued that day additionally forbade any filing by counsel without Davis's authorization.  But, in defiance of both that explicit order and Davis's subsequent vigorous repudiation, standby counsel filed, as part of a volume of other pleadings, on March 20, 2012, a "motion to vacate grant of *Faretta* relief."[1]  (Doc. 2266-2)

Events following the March 20, 2012 motions dump re-emphasized Davis's wish to control his own litigation:  the court ordered Davis to specify, in writing, which of the 29 listed claims he

---

[1]This opposition should not be considered a waiver or abandonment of the government's motion to strike and for sanctions (Doc. 2277).

wished to adjudicate.  Davis replied and identified the issues he would accept (Doc. 2273),[2] but he also followed-up a week later in a separate filing (Doc. 2278), where he made it plain that he repudiated the *Faretta* waiver motion.  He wrote: "Defendant believed that during phone conference he stated that both" 'Faretta' motion and 'incompetent' motion were to be dismissed. . . for the record: defendant does <u>not</u> accept 'Faretta' motion."  (Doc. 2278, emphasis in original.)  And, yet again, for the third time and the second in writing, Davis, in no uncertain terms, vigorously importuned the court to reject the "*Faretta* relief" motion.  (Doc. 2319)  For this reason, and this alone, the motion should be denied.

Davis has consistently embraced, since the guilty verdict, certain core beliefs about his right to conduct his own litigation: it resides in him, the individual; it implicates the essential element of personal choice; it can be intelligently waived; and it cannot be overridden (as his surrogates are now trying to do) by supposed interests of social utility.  The defendant has remained adamant that he wants to control his own strategy, and he is equally steadfast in his wish that no lawyer, embracing a strategy incompatible to his own, will be forced upon him.

The motion to strip Len Davis of his right to proceed *pro se,* filed in his name, should be denied for three reasons: first, *Martinez v. Court of Appeal*, 528 U.S. 152 (2000), does not mean what standby counsel say it does.  That narrow opinion addressed the constitutionality of a California appellate rule and it did not pretend to bar self-representation in federal habeas cases; second, the

_____

[2]In that response, Davis refers to himself repeatedly as "*pro se* defendant," connoting one who is advancing his own case, and not as mere client to appointed counsel.  He identified and adopted certain claims that comport with his litigation strategy, while rejecting those that are inconsistent with it.

federal statute that allows for appointment of counsel does not forbid a *pro se* litigant; and, third, Davis adamantly repudiates the motion and standby counsel overstep their role and violate their duty to safeguard Davis's right to decide his own strategy.  Instead, their motion usurps Davis's *pro se* autonomy to wrest control of this case from him.

II.     *MARTINEZ*, A NARROW OPINION INTERPRETING A CALIFORNIA RULE, DOES
        NOT FORBID DAVIS FROM SELF-REPRESENTATION

Standby counsel invoke a single decision, *Martinez, supra*, as putative authority that Davis has no *Faretta* right to self-representation in a post-conviction proceeding.  They label his March 7, 2011 *pro se* invocation "invalid, as Mr. Davis possesses no such right."  (Doc. 2266-2, at 4) This motion goes on to exaggerate further: "The *Martinez*  holding clearly establishes that there is no *Faretta*  right of self-representation in any post-trial proceeding, and its rationale necessarily encompasses § 2255 proceeding."  (Doc. 2266-2, at 5)  *Martinez*  stands for no such thing and it most certainly does not implicate the conduct of post-conviction litigation in federal courts. *Martinez* addressed a limited question of state criminal appellate procedure: whether *Faretta* required California to recognize a constitutional right to self-representation on direct appeal from a criminal (and non-capital) conviction.  528 U.S. at 163.  Counsels' interpretation of *Martinez* is superficial, taken out-of-context, and it goes too far.

*Martinez* does not mean what counsel say it does: it des not stretch so far to hold that "the *Faretta* right of self-representation does not extend to any post-trial proceedings."  (Doc. 2266-2, at 4)  The Supreme Court only addressed a limited question about the conduct of California's criminal appeals system, deciding only that a California rule that forbade self-representation on the

direct appeal of a state conviction did not violate the Due Process and Equal Protection Clauses. But, counsels' shoe-horning *Martinez* into federal habeas context neglects to acknowledge the Supreme Court's reminder that: "our holding is, of course, narrow. It does not preclude the States from recognizing such a right under their own constitutions." 528 U.S. at 163. *Martinez* also conceded that its holding was not absolute, even in California: "Meanwhile, the rules governing appeals in California, and presumably those in other States as well, seem to protect the ability of indigent litigants to make *pro se* filings." *Id*. at 163-64. Their treatment of *Martinez*, which dealt only with a California rule and cannot be extended to federal procedure, is so shallow and illogical that it amounts to no analysis at all. Their argument is not persuasive and it should not be followed.

III.    *FARETTA* AND *McKASKLE* AFFIRM THE DEFENDANT'S RIGHT TO CONTROL HIS OWN CASE

*Faretta*'s rule springs from the long-held notion that "the Constitution does not force a lawyer upon a defendant," and he "may waive his Constitutional right to assistance of counsel if he knows what he is doing and his choice is made with eyes open." *Adams v. United States ex. rel. McCann*, 317 U.S. 269, 279 (1942). The idea, in turn, derives from the coercive nature of trial: a defendant does not initiate the trial. He is "haled into court" by the state and stripped of his presumption of innocence. A defendant then has the right to reject assistance from counsel he may identify with the state, the entity prosecuting him.

But, *Martinez* upheld the California bar to self-representation because counsel is not forced onto an appellant. As the trial is initiated by the state and is held, normally against the wishes of the defendant, appointing defense counsel does force a lawyer onto a criminal defendant because the trial

4

will inevitably occur as a result of the state's action.  The lawyer will have to represent the defendant in that circumstance.  But the same is not true for appeals, at least on the state level.  The appeal only occurs if the defendant asks for one.  Under that circumstance, if a defendant seeks review, he must accept the requirements that go with such an appeal, such as time  limits, the length of briefs, and the use of a lawyer.  No lawyer is appointed except in response to the request for an appeal.  Since the entire appeal is initiated by the request of the defendant, instead of by the filing of charges by the state, counsel is not being forced on a defendant.  This only obtains, however, in state non-capital situations, such as the scenario in *Martinez*.  In a federal death penalty case, counsel is always made available to a convict by statute, both pre- and post-judgment.

If *Faretta* recognized a right under the Sixth Amendment to represent oneself in a criminal proceeding, but also acknowledged that the court could appoint standby counsel to aid a *pro se* defendant, then *McKaskle v. Wiggins*, 465 U.S. 168 (1984), considered the role of standby counsel and defined the constitutional limits on that role.

*McKaskle* arose when a *pro se* defendant alleged his standby counsel's active involvement in the trial violated his Sixth Amendment right to represent himself.  The defendant, Wiggins, invoked his right to self-representation at trial, and the court appointed two lawyers as standby counsel.  As the case progressed, Wiggins repeatedly changed his mind about what he wanted standby counsel to do.  At times he objected to their very presence; at others he consulted with them or asked them to take over aspects of the case.  Standby counsel took an active role in the trial, arguing legal points, performing specific tasks, and occasionally making motions over Wiggins's objection.  Once convicted, Wiggins complained that standby counsel had been overzealous and had

interfered with his right to self-representation by their "distracting, intrusive, and unsolicited participation." The Court of Appeals for the Fifth Circuit agreed and stated that standby counsel is "to be seen, but not heard." The Supreme Court, however, held that counsel had not so overstepped the constitutional limits on the role, but also emphasized that the right recognized in *Faretta* exists to "affirm the dignity and autonomy" of the accused.

The Court specifically held that the right to self-representation includes the right to actually control the defense. *See McKaskle*, 465 U.S. at 178. This guarantee precluded standby counsel from substantially interfering with significant tactical decisions or "speak[ing] instead of the defendant on any matter of importance." *Id*. The defendant must retain final authority over all decisions.

The American Bar Association addressed the limitations on standby counsel in reaction to *McKaskle v. Wiggins*. The ABA details the "obligations of hybrid and standby counsel" as follows:

    (a)    Defense counsel whose duty is to actively assist a *pro se* defendant should permit the accused to make the final decisions in all matters, including strategic and tactical matter relating to the conduct of the case;

    (b)    Defense counsel whose duty is to assist a *pro se* accused only when the accused requests assistance may bring to the attention of the accused matters beneficial to him or her, but should not actively participate in the conduct of the defense unless requested by the accused or insofar as directed to do so by the court.

ABA Standards for Criminal Justice: Prosecution Function and Defense Function Standard 4-3.9 (3d ed. 1993)

It is also wrong to imply that the right to self-representation extends only as far as *Faretta*'s reach, and no farther. While the Sixth Amendment's right to counsel may end at conviction and, in a capital case, sentencing, the right to self-representation may also obtain by statute or rule, just as *Martinez* noted.

IV.    THE FEDERAL DEATH PENALTY ACT DOES NOT DISALLOW *PRO SE* STATUS

Counsel conflates their faulty analysis of *Martinez* into the equally erroneous claim that 18 U.S.C. § 3599(a)(2)'s authorization of counsel in federal capital habeas actions concomitantly forbids *pro se* representation. Their claim is unsupported by any authority. Nothing in the counsel-authorizing statute creates a corresponding, irrefrangible prohibition against a competent litigant from appearing *pro se*. And, *Martinez* cannot be read to extend California's rule against self-representation on direct appeal of a state conviction to a rule forbidding self-representation in federal habeas litigation. In fact, *Martinez* itself alluded to the creation of rules, even in California, to permit *pro se* appellate filings. *See* 528 U.S. at 164. Congress could have included in § 3599(a)(2) a *Martinez*-like provision proscribing self-representation, but chose not to do so. More to the point, Congress codified the *Faretta* rule at 28 U.S.C. § 1654, guaranteeing that a federal litigant could "personally" conduct his own case strategy.

Indeed, as part of the Federal Death Penalty Act, § 3599 also mandates appointment of counsel at the trial ("before judgment") and post-judgment stages. See 18 U.S.C. § 3599(a)(1)(A) and (B). Davis's right to counsel at trial and sentencing sprang from both the Sixth Amendment and the FDPA. Therefore, the Fifth Circuit's recognition of Davis's right to represent himself necessarily meant that a right conferred both by the Constitution and by statute could be waived by a competent litigant, as Davis most assuredly is. Standby counsels' claim that a statutory grant of counsel is non-waivable is unsupported by law and it was implicitly rejected by the Fifth Circuit's prior *Faretta* rulings in this case.

The call under 18 U.S.C. § 3599(a)(2), for appointment of counsel in a capital habeas case

7

does not mean, as Davis's agents assume, that a federal habeas petitioner cannot represent himself. Nothing in that provision or in any case cited by counsel remotely suggests that habeas counsel must be forced on a litigant who does not want it.  Counsel point to no authority to support their shoe-horning the *Martinez* holding into, as they put it, "any post-trial proceeding," including federal habeas review.

Stand-by counsel refer to 18 U.S.C. § 3599(a)(2)'s language to suggest that Davis has no choice to proceed *pro se* in a capital habeas proceeding.  They argue that the statute's use of "shall be" means that counsel is not subject to waiver.  But their reading is truncated and therefore inaccurate and misleading.  The entire text of subsection (a)(2) reads:

> In any post conviction proceeding under section 2254 or 2255 of title 28, United States Code, seeking to vacate or set aside a death sentence, any defendant who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services *shall be entitled* to the appointment of one or more attorneys and the furnishing of such other services in accordance with subsections (b) through (f). (emphasis added.)

18 U.S.C. § 3599(a)(2).

The word "entitle" reflects the common meaning of "to give to a person a claim to a thing or to furnish with proper grounds for seeking or claiming something."  The Concise Oxford Dictionary (4th Ed. 1972). This statute entitles a capital defendant to obtain counsel, but it does not force counsel upon them: "shall be entitled" does not mean "must accept or acquiesce in."  The right is Davis's to invoke or to reject.

One appeals court has addressed the issue of waiving counsel under 18 U.S.C. § 3599(a)(2). In *Hunter v. Delo*, 62 F.3d 271 (8th Cir. 1995), a capital defendant in the process of his habeas claim

had an irreconcilable personal difference with appointed counsel and sought to have him replaced. The district court dismissed defendant's habeas motion with prejudice because he refused to explain to the court why he needed new counsel. *Id.* at 273. The Eighth Circuit reversed and remanded with instructions to the district court on whether Hunter could waive his counsel:

> Congress clearly expects that petitioners under sentence of death will be represented by counsel in non-frivolous federal habeas proceedings. See 21 U.S.C. § 848(q)(8) (recodified at 18 U.S.C. § 3599). *But a petitioner may waive that statutory right.* And the "persistent, unreasonable demand for dismissal of counsel and appointment of new counsel…is the functional equivalent of a knowing and voluntary waiver of counsel." *Citing United States v. Moore*, 706 F.2d 538, 540 (5th Cir. 1983). *Id.* at 276 (emphasis added).

Though *Hunter* was decided before *Martinez*, nothing in *Martinez* addresses the waiver of this federal entitlement provided by the statute. Therefore *Martinez* is irrelevant to resolving the issue at hand.

A capital defendant, who is found to be competent, has the right to forego all legal challenges to his conviction and sentence and no third party may assert a defense on their behalf. *See Gilmore v. Utah*, 429 U.S. 1012 (1976)(where a death-sentenced state inmate has competently and knowingly elected to forego legal challenges to his conviction and sentence, a federal court is without jurisdiction); *see also Whitmore v. Arkansas*, 495 U.S. 149 (1990)(a third-party does not have standing to challenge the validity of a death sentence imposed on a capital defendant who has elected to forego his right of appeal), *and United States v. Hammer*, 226 F.3d 229 (3rd Cir. 2000) (holding that a federal competent death-sentenced inmate could dismiss his own appeal and no other person has a legally-cognizable interest in these proceedings). And, a district court has followed the Fifth Circuit's *Faretta* decision in this case: in *Michael v. Horn*, 2004 WL 438678 (M.D. Pa. March 10,

2004), the Defender Association of Philadelphia, Capital Habeas Corpus Unit (CHCU), was appointed as counsel by the state to represent a capital defendant. Michael, the defendant, wished to terminate counsel and forego federal review of his state death sentence. The district court held that he had that right and CHCU could not pursue claims on his behalf, absent his consent. *Id.* at *23. In the face of the previously cited case law, CHCU cited *United States v. Davis*, 150 F.Supp.2d 918 (E.D. La. 2001). But, the Third Circuit held that *Davis*, twice-reversed, was not applicable, and a federal court could not act where a competent defendant does not seek review.

If a competent capital defendant can waive any and all appeals (even appeals of right) without the assistance of counsel, then it should be true that they can waive counsel to proceed "pro se" in their own habeas motion pursuant to 28 U.S.C. § 2255.

Furthermore, courts have held that 18 U.S.C. § 3599 does not guarantee a right to competent or effective habeas counsel. 48 A.L.R. Fed.2d 1 § 9. *See Downs v. McNeil*, 520 F.3d 1311 (11th Cir. 2008) (although an indigent capital defendant is entitled to postconviction counsel under 18 U.S.C.A. § 3599, that does not mean that he is entitled to effective assistance per se). Several district courts have held similarly, that the law does not guarantee effective counsel in habeas proceedings. *See Van Adams v. Schriro*, 2009 WL 89465 (D. Ariz. 2009) and *Brown v. United States*, 2009 WL 307872 (S.D. Ga. 2009).

It would defy convention, both in logic and in law, if the statute could be viewed as requiring the appointment of a lawyer under all circumstances, even against the will of the defendant, but at the same time refusing to guarantee effective assistance of counsel. Movants under 18 U.S.C. § 2255 facing the death penalty are not constitutionally entitled to effective assistance of counsel and,

10

therefore, should be allowed to proceed "pro se" where competent and able.

*Faretta* applied Sixth Amendment protections to the states through the Fourteenth Amendment. But the right recognized there had already been embedded in federal law since the birth of the Republic. The Judiciary Act of 1789, passed by Congress just 13 years after independence, gave all parties in federal court the ability to "plead and manage their own causes personally." The ability to appear *pro se*, therefore, has a longer history than the Sixth Amendment's right to counsel. *Faretta*, 422 U.S. at 812-13. Title 28, United States Code, Section 1654 reads:

> In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as by the rules of such courts, respectively, one permitted to manage and conduct causes therein.

Davis is a "party" to this litigation and has, thus far and in contrast to his standby counsel, conducted himself according to the orders ("rules") of the court. And, standby counsel cannot invoke *Martinez* to get around this statutory right. In fact, their waiver motion avoids any discussion of § 1654, let alone whether *Martinez* abrogates it. Davis's right to self-represent flows both from statutory authority and *Faretta*'s principle. Counsel cite nothing that negates that right and forces lawyers with antagonistic views upon him.

## V.      STANDBY COUNSEL VIOLATE THEIR DUTY OF LOYALTY TO LEN DAVIS

The motion to deny Davis's *pro se* status oversteps the bounds of standby counsel, notably because Davis so adamantly opposes it. It is a transparent, bald-faced maneuver to wrest control of this habeas action from him. Their gambit to strip Davis of *pro se* control disregards the proper role, duties, and obligations that should attend their appointment.

As the Fifth Circuit describes the role of standby counsel, its admonishments contrast with

11

Davis's agents' intrusive behavior: "Standby counsel is thus quite different from regular counsel. Standby counsel does not *represent* the defendant. The defendant represents himself, and may or may not seek or heed the advice of the attorney standing by. As such, the role of standby counsel is more akin to that of an observer, or attorney who attends the trial or other proceeding and who may offer advice, but who does not speak for the defendant or bear responsibility for his defense." *United States v. Taylor*, 933 F.2d 307, 313 (5th Cir. 1990) (emphasis in original).

Above all else, standby counsel owe loyalty to Davis. They must cede to the defendant all decisions that would normally fall to defense counsel. Instead of undermining, standby counsel should safeguard the defendant's *Faretta* right. Counsel should act as the defendant's champion by arguing against any action that marginalizes his role as *pro se*. Especially here, since standby counsel advances a position inconsistent with Davis's own, the court should respect the defendant's actual control and disregard counsel's motion. The court should not usurp control from Davis and grant the *Faretta* relief motion over Davis's objection.

If loyalty to the client should be the hallmark of standby counsel, then control over the case is the defining element of *pro se* representation. "The accused has the ultimate authority to make certain fundamental decisions regarding the case." *Jones v. Barnes*, 468 U.S. 745, 757 (1983).

Standby counsel here invoke *Martinez*, an irrelevant case, to shackle an unwilling and resistant Davis to their own agenda. But the Supreme Court has admonished against such heavy-handed tactics: "What were contrived as protections for the accused should not be turned into fetters. . . When the administration of the criminal law in the federal courts is hedged about as it is by the Constitutional safeguards for the protection of an accused, to deny him in the exercise of his

12

free choice the right to dispense with some of those safeguards. . . and to base such denial on an arbitrary rule that a man cannot choose to conduct his defense. . . unless, against his will, he has a lawyer to advise him. . . is to imprison a man in his privileges and call it the Constitution." *Adams v. United States ex. rel. McCann*, 317 U.S. at 277-80.

## VI.    REASONS IN SUPPORT OF THE MOTION ARE MOOT

Yet, with that said, the motion is also incongruous, since the purported reasons that support it are moot, and they were moot when it was filed. As counsel admit, they began researching their panoply of claims immediately after the May 2011 hearing at which they were appointed. Their investigation included an extensive review of the court record, both of this case and that of the drug conspiracy tried against Davis in another section of court; they hired an investigator (who, in a bit of irony, is a former veteran NOPD ranking officer implicated in the coverup of a grotesque post-Katrina homicide of a citizen by the police); they researched the facts and law; and they assembled their pleadings, enumerating 29 potential grounds for relief. If nothing else, their volume of defiant pleadings is thorough, totally nearly 500 pages.

Their motion is written, however, as if none of this happened: they gloss over the fact that they have done considerable work that Davis could never have done on his own in prison by assembling the records, conducting independent investigation by a veteran former cop, researched the law, and limned the issues; hence, the incongruity. So, apart from meaningless cant, they point to nothing left for Davis to do. For example, there is no need for Davis to gather the record, further investigate, or conduct legal research. Standby counsel have given Davis a menu of possible claims from which he may select those consistent with his own strategy, and reject those antithetical to it.

VII.    STANDBY COUNSEL RELY ON IRRELEVANT CASE LAW

Counsels' reliance on irrelevant cases diverts the court from authority that has met our issue head-on and affirmed that a post-conviction litigant may self-represent, even in a capital matter. Len Davis is not the first defendant to decide either to represent himself or to forego further appeal of a death sentence altogether. And, the United States Court of Appeals for the Fifth Circuit has recognized the principle Davis now so vehemently invokes.

Defending his autonomy, Davis, who has proven to be an adept *pro se* litigant, pointed the court in his pleading (Doc. 2319) to *Wilcher v. Anderson*, 188 Fed. Appx. 279, 2006 WL 1888895 (C.A. 5 (Miss.)), where counsel for a habeas petitioner lacked authority to submit, on the petitioner's behalf, a motion to reinstate appeals and stay execution; following the petitioner's earlier *pro se* submission to drop all appeals and proceed with the execution, and *Simpson v. Quarterman*, 341 Fed. Appx. 68, 2009 WL 2462248 (C.A. 5 (Tex.)), in which a death row inmate was found competent to waive further habeas review and forego further litigation. Davis, who has been found to be competent at least four times by three separate doctors since he first proclaimed his wish to self-represent, has embraced the same option as did the defendants in *Wilcher* and *Simpson*. (*See* Doc. 2319)

Standby counsel cite no case that, as they attempt here, forced a lawyer on a competent *pro se* habeas petitioner who wished to represent himself. In fact, along with the irrelevant *Martinez* opinion, none of the other cases they cite deal with the issue at hand; they are, accordingly, meaningless in resolving the motion; e.g.: *Murray v. Giarrantonio*, 492 U.S. 1 (1989), held that states were not required to appoint counsel in post-conviction proceedings; *United States v. Hammer*,

14

404 F. Supp. 2d 676 (M.D. Pa. 2005), addressed a Brady violation; *United States v. Sampson*, 820 F. Supp. 2d 151 (D. Mass. 2011), granted a new trial because of jury dishonesty; *Coleman v. Thompson*, 501 U.S. 722 (1991), held there was no constitutional right to counsel on a state habeas appeal; and *McFarland v. Scott*, 512 U.S. 849 (1994), decided a state capital defendant need not file a formal habeas petition to qualify for appointed counsel. None of these decisions addresses whether Davis's *pro se* status can be stripped from him, against his will.

At least two states explicitly authorize the waiver of appointed counsel in capital post-conviction proceedings. Texas law provides:

> (a) An applicant shall be represented by competent counsel unless the applicant has elected to proceed pro se and the convicting trial court finds, after a hearing on the record, that the applicant's election is intelligent and voluntary.
>
> (b) If a defendant is sentenced to death the convicting court, immediately after judgment is entered under Article 42.01, shall determine if the defendant is indigent and, if so, *whether the defendant desires appointment of counsel for the purpose of a writ of habeas corpus*. If the defendant desires appointment of counsel for the purpose of a writ of habeas corpus, the court shall appoint the office of capital writs to represent the defendant as provided by Subsection (c).

Tex. Crim. Proc. Code Ann. art. 11.071 (West) (emphasis added).

California, where *Martinez* originated, requires the following:

> The Supreme Court shall offer to appoint counsel to represent all state prisoners subject to a capital sentence for *purposes of state postconviction proceedings*, and shall enter an order containing one of the following:
>
> (a) The appointment of one or more counsel to represent the prisoner in postconviction state proceedings upon a finding that the person is indigent and has accepted the offer to appoint counsel or is unable to competently decide whether to accept or reject that offer.

(b) *A finding, after a hearing if necessary, that the prisoner rejected the offer to appoint counsel* and made that decision with full understanding of the legal consequences of the decision.

(c) The denial to appoint counsel upon a finding that the person is not indigent.

Cal. Gov't Code § 68662 (West) (emphasis added).  Martinez was denied a writ of mandate in the California Supreme Court, so this aspect of the law was not addressed.  *Martinez*, 528 U.S. 152 at 155.

VIII.   CONCLUSION

Nothing in case law, especially *Martinez*, statutes, or state practice supports the claim that a competent capital defendant cannot waive his right to counsel during post-conviction relief.  Davis has made his strategy clear and been twice ruled competent by this court.  His statutory right to proceed *pro se* during the habeas corpus proceedings should be respected, and the "motion to vacate grant of *Faretta* relief" should be denied.

Respectfully Submitted,

DANA J. BOENTE
UNITED STATES ATTORNEY

 /s/Michael E. McMahon
MICHAEL E. MCMAHON
Assistant United States Attorney
Louisiana Bar Roll No. 10095
650 Poydras Street, Suite 1600
New Orleans, Louisiana  70130
Telephone: (504) 680-3027

16

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2013, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all defense counsel of record. A copy of the foregoing has also been served upon Len Davis via United States Mail, postage pre-paid and properly addressed.

/s/Michael E. McMahon
MICHAEL E. McMAHON
Assistant United States Attorney