**UNITED STATED DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**


**UNITED STATES OF AMERICA**      **\***       **CRIMINAL DOCKET NO. 94-381**

**v.**                                  **\***

                                       **SECTION: "C"**

**LEN DAVIS**                       **\***

                          **\***       **\***       **\***


**GOVERNMENT'S OPPOSITION TO MOTION
TO INTERVIEW JURORS (DOC. 2268)**

In a thinly-disguised application for license to launch a "fishing expedition" into jury deliberations, Davis moves to interview jurors almost 18 years after his trial. As with their other discovery requests, standby counsel provide no specific allegations of juror misconduct, and thus fail to make the preliminary showing to would permit such an "extraordinary step." *United States v. Chavis*, 772 F.2d 100, 110 (5th Cir. 1985). And, putting that aside for the moment, Davis's counsel disregard the doctrine that habeas corpus litigation is not the mechanism for such a foray: since habeas is not a surrogate for appeal, it cannot be a vehicle to repeat 20 years' worth of motion practice, as we point out in our response to document 2267.[1]

Issues implicated by juror misconduct could have, and should have, been raised on direct appeal. Davis, however, never broached any such claims, which is no surprise because no misconduct during jury deliberations has ever been heretofore alleged; and, even now, Davis points to none. And, the juror-related anecdotes he cherry-picks from the voluminous record as putative support for his motion did not affect deliberations. The Court immediately addressed, on the spot, any juror-involved incident as it arose during the nearly month-long trial. More to the

---

[1] We will not repeat that argument, but we remind the Court of the authority for the principle that habeas litigation may not do service for appeal.

point, standby counsel never show, as they must, that any extraneous information or extrinsic influence was improperly brought to bear on the jury.

Davis pays lip service to Local Civil Rule 47.5, which still requires an order of the court to permit any jury interviews, but only after an initial finding of good cause. More instructive, however, is Fed. R. Evid. 606(b), which prohibits all post-verdict inquiries into a juror's deliberative process. At least five policy considerations are furthered by the prohibition: (1) discouraging harassment of jurors by losing parties eager to have the verdict set aside; (2) encouraging free and open discussion among jurors; (3) reducing incentives for jury tampering; (4) promoting verdict finality; and (5) maintaining the viability of the jury as a judicial decision-making body. *See United v. Stansfield*, 101 F.3d 909 (3rd Cir. 1996); *see also McDonald v. Pless*, 238 U.S. 264, 267 (1914) (holding that allowing juror interviews would "make what was intended to be a private deliberation, the constant subject of public investigation-to the destruction of all frankness and freedom of discussion and conference"); *United States v. Pinelli*, 890 F.2d 1461 (10th Cir. 1989) (following return of the verdict, the district court denied defense request to interview jurors).

Post-verdict interrogation of jurors should occur only "when reasonable grounds for investigation exist, i.e., there is clear, strong, substantial and incontrovertible evidence that a specific, nonspeculative impropriety has occurred which could have prejudicial the trial of a defendant." *United States v. Connolly*, 341 F.3d 16, 34 (1st Cir. 2003). A convicted defendant cannot lay claim to a right to cross-examine jurors in the absence of an adequate evidentiary predicate. *Neron v. Tierney*, 841 F.2d 1197, 1205 (1st Cir. 1988). Davis lays no such foundation. And a request for juror interviews is properly denied when allegations of misconduct are

˘2˘

speculative and, as does Davis, a petitioner is "requesting permission to conduct a fishing expedition." *Taylor v. Mabry*, 593 F.2d 318, 320 (8th Cir. 1979).

Davis's motion is an application to launch such an expedition. His inquiries necessarily would intrude on the jury's deliberations. To allow the jurors to be interviewed on the amorphous speculation he presents would apply to virtually any case, and interviews based on such rank speculation would eviscerate both the local civil rule and Rule 606(b). Moreover, since jurors are the judges of the facts, they should not be subjected to further inquiry as to the rationale of their verdict, regardless of how that inquiry is phrased. Such information, if gleaned from any juror, would, in any event, be inadmissible under the rule.

In fact, the phrasing of Davis's motion betrays his failure to present specific information to make a sufficient showing under Rule 606(b). His very language defines a fishing expedition: he wants to interview jurors to "request [ ] information relating to *potential* extraneous prejudicial matters and improper outside influences that *may have been* brought to bear on the members of the jury." It speculates, with no support, that "at the very least," the jurors "*may have had* improper extrajudicial contacts"; they "*require further investigation*" but Davis never explains what that will lead to; they want "further investigation … to identify *whether facts exists* (*sic*)"; and so on.

There are only *indications* that it is *possible* that some *unaccounted for* extraneous prejudicial information or outside influence infected the jury's deliberation. But, what those indications are – which show only the possibility that there *may* be some helpful information to be obtained by the fishing expedition – remain unspecified. Since he cannot identify the requisite specifics, his request fails to make the requisite predicate showing.

Federal Rule of Evidence 606(b) largely embodies the common law rules that preceded it, and relies on the same "[s]ubstantial policy considerations" to support it. *Tanner*, 483 U.S. at 119, 121. It seeks to preserve "frankness and freedom of discussion and conference" among jurors and to prohibit jurors from "be[ing] harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict." *M<sup>c</sup>Donald v. Pless*, 238 U.S. 264, 267-68 (1915). In other words, Rule 606(b) and its common law history help secure "the finality of the process," (a concept long abandoned in Davis's case). *Tanner*, 483 U.S. at 120.

This Rule is consistent with the Court's authority to maintain the integrity of its trials. Justice Cardozo, commenting on the confidentiality of jury deliberations, observed: "freedom of debate might be stifled and independence of thought checked if jurors were made to feel that their arguments and ballots were to be freely published to the world." *Clark v. United States*, 289 U.S. 1, 13 (1933). The Fifth Circuit also observed that"[c]ompelling government interest in the integrity of jury deliberation[s] ... requires that the privacy of such deliberations and communications dealing with them be preserved." *United States v. Gurney*, 558 F.2d 1202, 1210-11 (5th Cir. 1997). Moreover, the Sixth Circuit also upheld a denial of a post-verdict interrogation of jurors "to prevent expeditions in search of information with which to impeach jury verdicts." *Tschira v. Willingham*, 135 F.3d. 1077, 1089 (6th Cir. 1998).

Rule 606(b) creates an exception for inquiries concerning extraneous information and outside influences on the jury, so long as such inquiry does not touch on the actual effect of the outside intrusions. *See United States v. Simpson*, 950 F.2d 1519 (10th Cir. 1991) (holding that juror may testify as to "whether any extraneous prejudicial information was improperly brought

˘4˘

to bear" on juror deliberations but "a juror may not testify as to the effect the outside information had upon the jury"). The Supreme Court, however, has interpreted the "outside influence" exception to Rule 606(b) very narrowly. *See Tanner v. United States*, 483 U.S. 107 (1987) (holding that Rule 606(b) prevented inquiry into the veracity of statement by juror that several jurors consumed alcohol sufficient to cause them to sleep during trial because instances of substance abuse are not "outside" or "extraneous" influences that can impeach a jury verdict).

Rule 606(b) prohibits inquiry as to "at least four topics; (1) the method or arguments of the jury's deliberations; (2) the effect of any particular thing upon an outcome in the deliberation; (3) the mind set or emotions of any juror during deliberations; and (4) the testifying jurors own mental process during the deliberations." *United States v. Ruggiero*, 56 F.3d. 647, 652 (5th Cir. 1995).

No matter what the exception under Rule 606, and Davis invokes none, the rule cannot be exploited at the expense of "a fishing expedition." *See, e.g., United States v. Davila*, 704 F.2d 749, 754 (5th Cir. 1983) ("The prevention of fishing expeditions in search of information with which to impeach jury verdicts is a principal purpose of the rule."); *United States v. Smith*, 2007 WL 1741850 (C.A. 2 (N.Y.)) ("The Second Circuit" has consistently refused to allow a defendant to investigate jurors merely to conduct a fishing expedition.'" (*quoting United States v. Ianniello*, 866 F.2d 540, 543 (2nd Cir. 1989))). A showing of prejudice is always required before contact with the jurors or on evidentiary hearing is granted. *See United States v. Johnson*, 495 F.3d 951, 981 (8th Cir. 2007) ("Before a hearing may be granted, however, the moving party should 'show [ ] that outside contact with the jury presents a reasonable possibility of prejudice to the verdict.'"); United States v. Moses, 15 f.3d 774, 778 (8th Cir. 1994) (requiring a "

˘5˘

'colorable claim of outside influence' " to necessitate and evidentiary hearing, and noting "[s]peculation and unsubstantiated allegations do not present a colorable claim of outside influence of a juror.")

Based on the clear wording and public policy giving rise to Rule 606, Davis's ill-defined purpose makes it unclear for what he seeks to conduct interviews other than to engage in the proverbial fishing expedition. He cites no evidence of testimony about matters that affected the deliberations and the record is devoid of any such evidence. Anything upon a juror's mind, the effect of which may have influenced his verdict or his mental processes, are matters internal to the deliberations and they are not subject to post-trial scrutiny. *United Sates v. Martinez*, 14 F.3d 1030, 1036 (5th Cir. 1994).

Davis does not, indeed cannot, point to any juror misconduct. Prior life experiences, however, such as elements implicated in the trivial trial anecdotes he describes in his motion, relate to a juror's internal decision-making processes. And prior experiences, even if discussed in the jury room, are not " 'extrinsic' evidence that requires a new trial." *Arreola v. Choudry*, 533 F.3d 601, 606 (5th Cir. 2008) (collecting cases from other circuits). Davis, in sum, presents the Court with only his vague hope that juror interviews will lead to evidence of misconduct. But conclusory statements expressing his hope do not establish specific information. *See Aldridge v. United States*, 2007 WL 1289684 (W.D. Mo.)) *2.

Besides, after a nearly two decades' old interregnum, such an investigation would, "no doubt, lack reliability." *See United States v. Jones*, 132 F.3d 232 (5th Cir. 1998). Especially here, so far removed in time, it would be difficult, if not impossible, to determine whether a juror in Davis's trial was actually biased. *See United States v. Dyer*, 151 F.3d 970, 981 (9th Cir. 1998).

Public policy requires finality to ligation. And fairness requires that absolute privacy be preserved for jurors to engage in the full and free debate necessary to the attainment of just verdicts. Jurors will not be able to function effectively if their deliberations are to be scrutinized in post-trial litigation. In the interest of protecting the jury system and the citizens who make it work, Rule 606 does not permit Davis any inquiry into the internal deliberations of the jury. Cmt. to Rule 606(b). Davis's generalized conclusions do not invoke Rule 606 and his motion should be denied.

Respectfully Submitted,


KENNETH ALLEN POLITE, JR.
UNITED STATES ATTORNEY


/s/ Michael E. McMahon
MICHAEL E. MCMAHON
Assistant United States Attorney
Louisiana Bar Roll No. 10095
650 Poydras Street, Suite 1600
New Orleans, Louisiana    70130
Telephone: (504) 680-3027

## CERTIFICATE OF SERVICE

I hereby certify that on November 27, 2013, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all defense counsel of record, and by mailing the same to Len Davis, properly addressed and postage prepaid.

s/Michael E. McMahon
MICHAEL E. McMAHON
Assistant United States Attorney
