**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CASE NO. 2:94-cr-00381** |
| | * | |
| **v.** | * | |
| | * | **SECTION "C"** |
| **LEN DAVIS** | * | |
| | * | |

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO INTERVIEW JURORS**

NOW COMES Len Davis, through undersigned standby counsel, and pursuant to this Court's Order granting leave (Doc. No. 2349), files this brief reply to the Government's Opposition to his Motion to Interview Jurors (Doc. No. 2347).

### I. Mr. Davis has Made Credible Allegations of Extrajudicial Influences on Specific Jurors at his 1996 Trial.

Several issues arose regarding jurors' contacts with outside sources, exposure to extraneous information, and their ability to serve in an unbiased, and, indeed, conscious, manner, at Mr. Davis' 1996 trial. Due to trial counsel's failure to investigate these issues and have the jurors questioned to determine the extent of the extraneous influences, the record is incomplete regarding the prejudicial effect these influences may have had on the individual jurors and the jury as a whole. Not one of the following three jurors was questioned on the record regarding the extent of the influence of external factors. Instead, this Court questioned third parties, such as U.S. Marshalls and Government witness Kathleen Adams as to their contacts with the jurors. None of these third parties were in a position, however, to testify as to whether extraneous prejudicial information was improperly brought to the jury's attention, and/or whether any

1

outside influence was improperly brought to bear on any juror.[1] As such, the extant record is insufficient to resolve these claims.

The record does make clear that there is a substantial possibility that these jurors were improperly influenced or contacted in this case, which constitutes "good cause" meriting the allowance of jury interviews. *See Caliendo v. Warden*, 365 F.3d 691 (9th Cir. 2004) (granting habeas relief where three jurors were overheard talking to police officer, who was a prosecution witness, during recess in deliberations); *United States v. Brande*, 329 F.3d 1173, 1177 (9th Cir. 2003) (remanding for hearing where juror had extrajudicial contact with court clerk and noting that "a juror is more susceptible to improper influence from a court officer than from spectators or parties to the case"); *United States v. Tucker*, 137 F.3d 1016, 1032-33 (8th Cir. 1998) (remanding for a hearing on the extent of extrajudicial contacts between a juror and the juror's husband).

### 1. Juror Daniel Walker

Juror Daniel Walker had extrajudicial contacts with his mother and with Government witness Karen Jenkins during the trial. On one occasion, when his mother ostensibly came to bring him clothing, she also brought him a Bible and advised him to consult it as part of his deliberations in this case. Doc. No. 685-2, at 44-45. FBI Agent Karen Jenkins spoke with his mother when she came to the courthouse, about her familiarity with a court-runner for the defense team. *Id.* at 39. While this Court and the Government were concerned about her possible relationship with the court-runner, the extent of her and her son's communications with a Government witness was not probed. *See id.* at 39-41. Counsel for the Government noted on the

---

[1] These individuals also had an obvious interest in minimizing their own conduct given the prohibition on communicating with jurors during trial.

record a "bigger problem," which was that Juror Walker "has probably violated your instruction of not talking to anybody about this. He has spoken with his mother." *Id.* at 43. Even more problematic was his and his mother's contact with a Government witness. Mr. Davis' attorneys, however, were either absent or silent through this portion of the record, and this Court ultimately ruled that "we're not going to do anything right now except continue with the evidence." *Id.* at 45. Juror Walker

Later, Juror Walker told a U.S. Marshal that he "was having some problems or would have problems with his job, that he had some severe work conflicts and he fears that if he continues on the case, on this jury, that he's going to have some major problems." Doc. No. 685-3, at 39. Agent Karen Jenkins also had additional contacts with Juror Walker's mother, regarding religion and the death penalty, and helped her with the luggage. *Id.* This Court then brought Agent Jenkins in for questioning. *Id.* at 40. Agent Jenkins related a version of her conversation with Juror Walker's mother. *Id.* at 40-43. She stated that she had identified herself as an FBI agent during the contact, but did not disclose that she was a Government witness. *Id.* at 44. Neither Juror Walker nor his mother was questioned on the record.

Once again, Mr. Davis' attorneys were either absent or asleep during this portion of trial, and no further inquiry was conducted. This Court merely stated (with Agent Jenkins out of the courtroom) that "we don't want a whole mess of witnesses talking with people." *Id.* at 45. There is good cause to question Juror Walker regarding the extent of his contacts with this Government witness and his mother, and Agent Jenkins' contacts with his mother. *See Turner v. Louisiana*, 379 U.S. 466, 467 (1965) (holding that a jury's contacts with witnesses for the prosecution constituted extraneous influences, which violated the defendant's right to trial by an impartial jury); *Oliver v. Quarterman*, 541 F.3d 329, 340 (5th Cir. 2008) (holding that a bible constituted

an extraneous influence on a jury); *Caliendo v. Warden*, 365 F.3d 691 (9th Cir. 2004) (granting habeas relief where deliberating jurors chatted amiably with a prosecution witness for 20 minutes).

### 2. Juror Wallace Rodrigue

Juror Rodrigue had extrajudicial contacts with a U.S. Marshal during trial. The U.S. Marshals contacted Juror Rodrigue during trial to tell him that his wife had been receiving intimidating phone calls. Doc. No. 688, at 3. His wife apparently told the U.S. Marshal that one of the phone calls was someone "saying that it was the U.S. Marshal wanting to know what the home address was and she said you ought to know that and hung up." *Id.* Later, "she got a phone call saying that she had [] won two thousand dollars in a sweepstakes and wanted to know her address, and she got paranoid about that." *Id.* What "bothered" this Court was that the U.S. Marshal had spoken to Juror Rodrigue about these phone calls. *Id.* This Court noted that it "would rather [the marshal] not have [told] him," but, again, there was no further inquiry by counsel for Mr. Davis. *Id.* Juror Rodrigue was not questioned on the record.

Public records show that Juror Rodrique had been charged with "improper telephone communications" under La. R.S. § 41:285 in St. Bernard Parish in 1989, yet he stated in his juror questionnaire that the phone calls had been made by his children. Juror Rodrigue indicated during voir dire that he had an undisclosed friend or relative who had served time in jail, but was not questioned further. Doc. No. 683, at 25-36. Public records also show that Juror Rodrigue's wife, Prentissa Rodrigue, had a history of psychiatric illness at the time of trial. Good cause exists to inquire into the communications between Juror Rodrigue and the U.S. Marshall, the nature and extent of the phone call incident, and the veracity of his statements in his juror questionnaire and at voir dire. Further inquiry is also necessary to determine whether Juror

Rodrigue shared the information about the threatening calls with the other jurors, and if so, whether it had a prejudicial influence. *See State v. Bailey*, 97-302 (La.App. 5 Cir. 4/28/98), 713 So. 2d 588.

### 3. Juror John Bourgoyne

Juror John Bourgoyne had a brother who had recently died of a crack overdose at the time that he served as a juror.  Doc. No. 681-1, at 5, 10, 15.  During trial, Juror Bourgoyne began to decompensate and was characterized by counsel for the government as "wigging out." Doc. No. 666, at 3. A U.S. Marshal found Juror Bourgoune in the hallway of the courthouse very upset about his brother, especially concerned that the victim in this case, Kim Groves, would not "get justice" because she too was a crack addict. *Id.* at 2. Juror Bourgoyne also stated that his mother-in-law was "dying of cancer or some disease and may be in a coma," and he was afraid that if she died during the trial, he would be unable to attend her funeral. *Id.*

Juror Bourgoyne also told the marshal that he was up all night worrying about this trial and other personal crises, and that as a result, he was not sleeping well at night, and consequently having trouble staying awake during the trial proceedings. *Id.* This Court affirmed that he was "the one I was concerned about earlier, who seemed to have his eyes closed." *Id.* Other jurors had also indicated to a marshal that they had observed Juror Bourgoyne sleeping during the proceedings. *Id.*

The Government expressed serious concern that this juror was headed for a mental breakdown. *Id.* at 3. Counsel for Mr. Davis, however, stated that "it's only normal . . . just being an attorney in these types of trials, I don't sleep well." *Id.* When this Court offered to bring Juror Bourgoyne in for questioning, counsel for Mr. Davis declined. *Id.*at 4.

There has thus already essentially been a judicial determination that there was good cause to question him at the time of trial. The Government, at the time, appeared to have no objection to questioning this juror and should be precluded from now objecting to Mr. Davis interviewing this juror on the same subject matter. At the time of trial, Mr. Davis' ineffective counsel passed on the opportunity to investigate into the possibility of prejudice to their client. Mr. Davis submits that the record contains indications that, at the very least, this juror was: (a) sleeping, and (b) having extrajudicial contacts with court personnel. These grounds have caused courts to reverse convictions or at least order further inquiry. *See*, *e.g.*, *Dimas-Marinez v. State*, 2011 Ark. 515, 2011 WL 6091330 *9-*11 (Ar. 2011) (reversing murder conviction and remanding for new trial where record evidence demonstrated that juror was sleeping during portions of the trial); *State v. Majid*, 914 N.E.2d 730, 735 (Ohio App. 2009) (holding that instances of jurors' sleeping "deprived the defendant of his right to have 12 attentive jurors decide his fate and violated his right to due process"); *Judd v. State*, 951 So. 2d 103 (Fla. Dist. Ct. App. 2007) (holding that the petitioner was entitled to an evidentiary hearing on his claim that trial counsel was ineffective in failing to object to the presence of a sleeping juror); *United States v. Brande*, 329 F.3d 1173, 1177 (9th Cir. 2003) (remanding for hearing where juror had extrajudicial contact with court clerk and noting that "a juror is more susceptible to improper influence from a court officer than from spectators or parties to the case"). Good cause exists to question Mr. Bourgoyne about these areas of concern.

**II.    This Court has Broad Discretion to Grant Juror Interviews.**

Local Rule 47.5(E), "Interviewing Jurors," states as follows:

A. No juror has any obligation to speak to any person about any case and may refuse all interviews or comments;

B. No person may make repeated requests for interviews or questions after a juror has expressed a desire not to be interviewed;

C. Under no circumstances except by leave of court granted upon good cause shown shall any attorney or party to an action or anyone acting on their behalf examine or interview any juror. No juror who may consent to be interviewed shall disclose any information with respect to the following:

1. The specific vote of any juror other than the juror being interviewed;

2. The deliberation of the jury; or

3. For the purposes of obtaining evidence of improprieties in the jury's deliberations.

A district court has discretion to grant a party's request for post-trial juror interviews, and the decision will not be disturbed absent abuse of that discretion. *See United States v. Booker*, 334 F.3d 406, 416 (5th Cir. 2003). The admissibility of juror testimony is controlled by Rule 606(b) of the Federal Rules of Evidence, which provides:

(b) Inquiry into validity of verdict or indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. But a juror may testify about (1) whether extraneous prejudicial information was improperly brought to the jury's attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict onto the verdict form. A juror's affidavit or evidence of any statement by the juror may not be received on a matter about which the juror would be precluded from testifying.

This rule stems from the common-law rule prohibiting juror testimony except where there have been allegations of external influences upon the jury. *Tanner v. United States*, 483 U.S. 107, 117 (1987). Accordingly, the Supreme Court has held that juror testimony is appropriate in cases such as *Parker v. Gladden*, 385 U.S. 363, 365 (1966), where the bailiff made improper comments to the jury about the defendant, and *Remmer v. United States*, 347 U.S. 227, 228-30 (1954), where a juror was offered a bribe. The Court also ordered an evidentiary hearing in

7

*Williams v. Taylor*, 529 U.S. at 444, based on a juror misconduct claim in a § 2254 case. It is clear that this Court has the authority to allow Mr. Davis to inquire further into the record-bound indications of external influences on these jurors.

### III.   Death is Different.

The Sixth Amendment forbids a juror from being exposed to external influences on its deliberations and verdict. *Remmer*, 347 U.S. at 229.  The Supreme Court has held that external influences on a jury, including "private communication, contact, or tampering," are presumptively prejudicial. *Id.*  Beyond the Sixth Amendment, however, the Eighth Amendment, requires heightened reliability at *all stages* of a capital trial. S*ee*, *e.g.*, *Gardner v. Florida*, 430 U.S. 349, 357 (1977); *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976). "In capital proceedings generally, [the Supreme] Court has demanded that factfinding procedures aspire to a heightened standard of reliability. . . . This especial concern is a natural consequence of the knowledge that execution is the most irremediable and unfathomable of penalties; that death is different." *Ford v. Wainwright*, 477 U.S. 399, 411 (1986) (Marshall, J., plurality opinion). As Mr. Davis is under a death sentence, it is even more important that his underlying conviction is fair and reliable, and that this Court allows adequate fact-finding proceedings to determine whether his trial met this heightened standard of reliability.

### IV.   Juror Misconduct is Properly Raised in Post-Conviction Proceedings.

Contrary to the Government's assertions, the claims underlying the need for juror interviews in this case are properly raised in collateral proceedings and need not have been raised on direct appeal. Mr. Davis has raised both juror misconduct and ineffective assistant of counsel for failing to investigate into the apparent indications of extraneous influence upon these jurors. *See* Doc. No. 2340, at Claim 9 (pp. 108-22).

The Government's argument that an ineffective assistance of counsel claim must be raised on direct appeal has already been rejected by the Supreme Court in *Massaro v. United States*, 538 U.S. 500, 504-05 (2003). In fact, the Court found that it is "preferable" that such claims be brought under § 2255 than raised on direct appeal due to possible conflict of interest of counsel and also to the lack of factual development in a direct appeal. *Id.* at 505. The Court directed that when such a claim is raised in § 2255 proceedings, the district court should allow the defendant "a full opportunity to prove facts establishing ineffectiveness of counsel." *Id.* (quoting *United States v. Griffin*, 699 F.2d 1102, 1109 (11th Cir. 1983). Mr. Davis is asking for such an opportunity at this time.

Likewise, a claim of juror misconduct is also properly raised in post-conviction proceedings. The Fifth Circuit held in *Brown v. United States* that a federal prisoner does not waive a claim of juror misconduct in § 2255 proceedings by failing to raise it on direct appeal. 480 F.2d 1036, 1038 (5th Cir. 1973); *see also Ida v. United States*, 191 F.Supp.2d 426, 436 (S.D.N.Y.2002) (holding that a juror misconduct claim was properly raised in a § 2255 motion).

Recently, two federal courts have granted further factual development on similar claims in capital § 2255 proceedings, with one court ultimately granting relief. In *United States v. Sampson*, the First Circuit affirmed a district court's grant of relief after "[t]he district court's *meticulous factfinding* brought to light a litany of lies" told by one of the seated jurors during voir dire. 724 F.3d 150, 161 (1st Cir. 2013) (emphasis added). In *United States v. Fell*, juror interviews revealed that one of the seated jurors had driven to the scene of the crime during trial to view it for himself. No. 01-00012, 2013 WL 195332, *6 (D.Vt. May 10, 2013). Another juror admitted during an interview with counsel that he had learned facts about the death of the co-defendant from a television news report, which were not presented at trial. *Id.* at *6-7.

Additionally, juror interviews revealed that a U.S. Marshal had brought the murder weapon into the jury room to demonstrate that it was not loaded, which scared a female juror. *Id.* at *7. These facts brought forth in juror interviews led the court to deny the Government's motion for summary dismissal and order further inquiry into the jurors involved. *Id.* at *8. The case remains pending.

This Court, as the court that presided over voir dire and trial, is in the best position to develop the record and weigh the facts relevant to determine whether Mr. Davis has been deprived of his right to a fair and impartial jury. Accordingly, the Government's arguments that these claims should have been raised on direct appeal must be rejected.

**V.    It Would Violate Due Process for this Court to Deny Mr. Davis the Same Opportunity to Factually Develop a Cognizable Claim for Relief that State Prisoners Routinely Pursue.**

As set forth above, it is indisputable that juror misconduct and ineffective assistance of counsel are cognizable post-conviction claims of federal constitutional magnitude. Such claims cannot be properly resolved on the extant trial record because the very nature of the claim concerns matters that occurred outside the trial, which is precisely why such claims are better-suited for post-conviction proceedings, where a record appropriate to the claim can be developed. *See*, *e.g.*, *Williams v. Taylor*, 529 U.S. 420, 440-44 (2000) (remanding for evidentiary hearing on juror bias claim in § 2254 case). Other courts routinely permit post-conviction litigants to interview jurors in order to develop facts in support of post-conviction claims.[2] In

---

[2] *See Henderson v. State*, 60 So.3d 948 (Ala. App. 2008) (remanding for evidentiary hearing on juror bias claim based upon information obtained when defense counsel interviewed jurors after trial); *Wisehart v. Davis*, 408 F.3d 321 (7th Cir. 2006) (ordering evidentiary hearing based upon affidavit obtained by counsel from juror stating that he had learned extraneous information about the defendant). *See also Sterling v. Feldbaum*, 980 So.2d 596 (Fla. App. 2008) (finding good cause to conduct juror interviews in medical malpractice case); *Tripp v. State*, 874 So.2d 732 (Fla. App. 2004) (reversing district court's order denying juror interviews and remanding for juror interviews and an evidentiary hearing); *Carruthers v.*

fact, a Louisiana state habeas petitioner was granted relief just last month on grounds of juror bias and misconduct, due to facts developed during juror interviews. *See Allen v. Cain*, No. 09–0218, 2014 WL 573181 (W.D.La. Feb. 13, 2014). Had Mr. Davis been prosecuted in Louisiana state court, counsel would have had complete freedom to conduct juror interviews upon consent of the jurors and present those facts in post-conviction proceedings. Thus, he would have been able to vindicate his federal claims as a § 2254 petitioner, but not as a § 2255 petitioner, due to the disparity in Louisiana state and federal rules. It would constitute an equal protection violation for Mr. Davis to be denied the same opportunity to factually develop a cognizable claim for relief that both state and federal prisoners have been allowed to pursue, and on which courts have granted relief.

Additionally, with respect to federal prisoners in particular, Mr. Davis is at a disadvantage solely based upon the fact that his case was prosecuted in the Eastern District of Louisiana. In the District of Vermont, for example, the local rules do not prohibit juror interviews, which is how the movant in *Fell*, *supra*, was able to present facts in support of his juror misconduct claims. Had the same movant been prosecuted in federal court in Louisiana, he could potentially have been denied permission to interview the jurors, and meritorious, cognizable claims of juror misconduct would never have come to light. The factual development and adjudication of constitutional violations—especially in capital cases—cannot rest on something as arbitrary as the geographic area in which the case was tried. It would be supremely unfair for Mr. Davis in Louisiana to be prevented from discovering facts in support of his claims

---

*State*, 145 S.W.3d 85 (Tenn. Crim. App. 2004) (finding good cause to conduct juror interviews in capital murder case).

by investigation that was available to Mr. Fell in Vermont solely because the local rules differed on the matter of juror interviews.

## VI.    Conclusion.

Mr. Davis respectfully asks that this Court grant leave to interview the jurors from the 1996 trial in this matter. Counsel maintains that they will not question any jurors who do not consent to be interviewed, and will confine the inquiry into the evidence of extraneous contacts, influences, or tampering, and to evidence of juror bias which was not disclosed or inquired into at trial.

Respectfully submitted,

/s Sarah L. Ottinger____
Sarah L. Ottinger, La. Bar No. 24589
636 Baronne Street
New Orleans, LA 70113
(504) 529-5955
saraho@thejusticecenter.org

Rebecca L. Hudsmith, La. Bar No. 7052
Federal Public Defender for the
Middle and Western Districts of Louisiana
102 Versailles Blvd., Suite 816
Lafayette, LA 70501
(337) 262-6336
Rebecca_Hudsmith@fd.org

*Standby Counsel for Len Davis*

## CERTIFICATE OF SERVICE

I hereby certify that a that a true and correct copy of the foregoing document has been filed with the Clerk of the Court by using the CM/ECF System which will send a notice of electronic filing to all counsel of record on this 3rd day of March, 2014.

/s Sarah Ottinger_____
Sarah Ottinger