# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

## NO. 14-30516

---

### UNITED STATES OF AMERICA,
#### Plaintiff-Appellee,

versus

### LEN DAVIS,
#### Defendant-Appellant.

---

### Consolidated with 14-30552

### In re: LEN DAVIS,
#### Petitioner.

---

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

---

### GOVERNMENT'S MEMORANDUM BRIEF

The United States of America, by and through the undersigned Assistant United States Attorney, respectfully submits this Memorandum Brief.

### ISSUES PRESENTED

#### I.

Should this Court issue a writ of mandamus—the third in this case—to overturn the district court's attempt to deprive Davis's right to proceed *pro se* in

EXHIBIT
1

this Section 2255 proceeding and dictate the issues raised by Davis and his standby counsel?

## II.

Did the district court abuse its discretion by finding that Davis, a *pro se* litigant who has consistently asserted a desire to represent himself, "waived" his statutory right to represent himself under 28 U.S.C. § 1654 through his casual mention of "*Faretta*," which established a constitutional right of self-representation?

## III.

Should this Court, under its supervisory power, re-assign this matter to a different district judge, where the district court's insistence on dictating the issues before it and depriving Davis of his right to control his own litigation strategy raises the appearance that the court is no longer functioning as a neutral arbiter?

## <u>STATEMENT OF JURISDICTION</u>

Defendant-appellant Len Davis, whose post-conviction proceeding under 28 U.S.C. § 2255 is pending in the district court, filed an interlocutory appeal, docketed in this Court as No. 14-30516, following the district court's ruling regarding his ability to represent himself and determine what issues should be litigated. Davis also filed a petition for a writ of mandamus, docketed in this Court

as No. 14-30552. Davis filed both pleadings *pro se*. This Court consolidated the two cases and ordered that subsequent briefing address the issues raised in the mandamus petition.

## I.    Davis's Interlocutory Appeal.

This Court normally has jurisdiction only over final decisions. 28 U.S.C. § 1291. However, when considering interlocutory orders, "this Court still has jurisdiction under the collateral order doctrine." *Matter of Aucoin*, 35 F.3d 167, 170 (5th Cir. 1994). This doctrine allows appellate review for "interlocutory orders that 'finally determine claims of right separable from, and collateral to, rights asserted in the action, [which are] too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.'" *Id.* (citing *Cohen v. Beneficial Industrial Loan Corporation*, 337 U.S. 541, 546 (1949)). The interlocutory order must satisfy at least three conditions: (1) it must conclusively determine the disputed question; (2) it must resolve an important issue separately from the merits of the action; and (3) it must be effectively unreviewable on appeal following final judgment. *Id.* (citing *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 431 (1985)). Failure of any one of these conditions results in the failure of jurisdiction. *Id.* (citing *In re Delta Services*, 782 F.2d 1267, 1272 (5th Cir. 1986)).

The district court's order of April 9, 2013, finding that Davis waived whether and to what extent he had a right to self-represent under 28 U.S.C. § 1654 satisfies the three conditions. As a result, this Court has jurisdiction over Davis's interlocutory appeal.

First, the order conclusively determines the question of whether Davis could represent himself and whether he waived any such right. The district court's order specified, "He therefore has waived whether and to what extent Section 1654 independently confers on him a right self-representation." (ROA.6183.) As a result, the district court thereafter appointed standby counsel as Davis's counsel *nunc pro tunc. Id.*

Second, the issue of whether Davis has a right to represent himself and whether he waived such right is an important right separate from the underlying merits of his 28 U.S.C. § 2255 action. The right to self-represent is statutory and fundamental, but it is separate from the post-conviction merits.

Third, because Davis will not be allowed to have complete control over his post-conviction action, and because the district court has allowed his standby counsel to raise issues in the proceeding that Davis has expressly repudiated in violation of the principle of party presentation, the order effectively is unreviewable on appeal following final judgment. Further, there is no guarantee that the matter could be appealed upon final judgment. Should Davis's § 2255

4

motion be denied, he will need a certificate of appealability to bring the issue to this Court, something that is not granted as of right. Additionally, even if appeal were granted, the record before this Court would include evidence and arguments that Davis has rejected. The district court's decision, if left to stand, would allow the exact arguments that Davis does not want made on his behalf. Once in, neither he, nor the government, nor this Court would be able to undue the effects of their inclusion.

As a result, the district court's order satisfies the collateral-order doctrine, and this Court has jurisdiction over Davis's appeal.

## II. Davis's Petition For A Writ Of Mandamus.

As this Court has twice issued writs of mandamus to protect Davis's right of self-representation, it again has jurisdiction over Davis's petition for a writ of a mandamus seeking to exercise his right to represent himself and choose the issues he wishes to pursue in his post-conviction motion under the principle of party presentation and Davis's statutory right under 28 U.S.C. § 1654. This Court may issue the writ pursuant to the All Writs Act, which provides, "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).

5

## STATEMENT OF THE CASE[1]

This criminal action against Len Davis has been pending for nearly 20 years. United States District Judge Helen Ginger Berrigan has presided over the entire matter.

A former New Orleans Police officer, Davis was convicted of civil rights murder in violation of 18 U.S.C. §§ 241 and 242 and sentenced to death. *United States v. Causey*, 185 F.3d 407, 410-11 (5th Cir. 1999).[2] His civil rights convictions were affirmed on initial appeal, but his death sentence was reversed and the case remanded for a new sentencing. *Id*. at 423.[3]

Following the remand for a new sentencing, Davis made clear he wanted to represent himself at the penalty proceeding, but the district court rejected his request, finding that, while he knowingly and voluntarily invoked his self-representation right, that right did not extend to a capital sentencing. Even if it did,

---

[1] All references to the record on appeal will be abbreviated as "ROA.____" corresponding to the appropriate page number in the record.

[2] Davis was also convicted of witness tampering under 18 U.S.C. § 1512(a)(1), but this conviction was reversed. *Causey*, 185 F.3d 423.

[3] Davis's co-defendant, Paul Hardy, the triggerman in the civil rights murder, was also originally sentenced to death. On remand, the district court severed the defendants and, in 2010, after a hearing pursuant to *Atkins v. Virginia*, 536 U.S. 304 (2002), the court opined that Hardy was "mildly retarded," thus insulating him from the death penalty. *See United States v. Davis*, No. 94-381(E.D. La. Nov. 24, 2010) (ECF No. 2173).

the district court maintained, his *Faretta*[4] interests were outweighed by a "national interest" in seeing that the death penalty should not be imposed arbitrarily or capriciously. *United States v. Davis*, 150 F. Supp. 2d 918 (E.D. La. 2001).

Davis appealed the denial of his right to self-represent and, alternatively, sought a writ of mandamus to enforce it. This Court rejected the district court's finding that *Faretta* does not extend to capital proceedings, holding: "*Faretta* is clear. If Davis made a knowing and intelligent waiver of his right to counsel, he is entitled to represent himself. 'The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails.'" *United States v. Davis*, 2001 WL 34712238 at *3 (5th Cir. July 17, 2001) (quoting *Faretta*, 422 U.S. at 820). Unequivocally concluding that "Davis has a clear and indisputable right to mandamus relief and no adequate alternative to mandamus exists," the writ issued, ordering that Davis could appear *pro se*. *Id*.

The district court violated the mandamus immediately: while acknowledging that Davis could represent himself in his residual doubt defense, the district court ordered the appointment of a defense attorney, Laurie White, as "independent counsel" to represent not Davis, but the "public interest," and to present a traditional case in mitigation against Davis's wishes, effectively circumventing the

---

[4] *Faretta v. California*, 422 U.S. 806 (1975).

7

first mandamus. *United States v. Davis*, 180 F.Supp.2d 797 (E.D. La. 2001). In that same order, the district court signaled that it, too, would play an active role in the re-sentencing phase, examining witnesses and adducing mitigation evidence along with "independent counsel." *Id.*

That prompted Davis to file a motion for clarification of the previous *Faretta* order or for a second writ of mandamus to overturn the appointment of independent counsel. This Court agreed that the district court's appointment "completely eviscerates his *Faretta* right to represent himself *pro se*," and once more granted mandamus relief. *United States v. Davis*, 285 F.3d 378, 380 (5th Cir. 2002).

Shortly before Hurricane Katrina struck in the summer of 2005, a second jury recommended that Davis be sentenced to death. Davis's capital sentence and convictions were affirmed, *United States v. Davis*, 609 F.3d 663 (5th Cir. 2010), and became final on March 21, 2011, when the Supreme Court denied *certiorari*. *Davis v. United States*, 131 S.Ct. 1676 (2011). (ROA.5485.)

Anticipating the denial of *certiorari* by two weeks, Davis informed the district court on March 7, 2011, that he would "be proceeding '*pro se*' on any further appeals." (ROA.5479.) In response, the district court ordered that Davis could "proceed *pro se* during post-conviction proceedings." (ROA.5483.)

8

After the denial of *certiorari* made his sentence final, Davis reiterated his intent to represent himself during any habeas litigation. (ROA.5479.) He was transported from the penitentiary in Terre Haute, Indiana, to be present in court for a *Faretta* hearing on May 16, 2011. (ROA.5486-87.) The district court advised Davis in great detail of his rights under the Sixth Amendment to be represented by counsel, the nature of a post-conviction challenge, and the rules and laws generally governing petitions under 28 U.S.C. § 2255. (ROA.13372.)[5] The district court also elaborated upon the dangers and pitfalls of undertaking self-representation, particularly because Davis was incarcerated far from the courthouse. (ROA.13379-82.)

After the district court interrogated him to establish the voluntariness of his decision, Davis unequivocally stated that he would represent himself. (ROA.13382-83.) The district court found that Davis understood the consequences of proceeding without counsel and that he waived his right to counsel "voluntarily, knowingly, and intelligently." (ROA.5493-94; 13383.) Concomitantly, the district court appointed Dr. Donna Mancuso, M.D., a psychiatrist, to examine Davis, and

---

[5] The government takes no position in this matter on the applicability of *Faretta* in post-conviction proceedings. Whether or not the constitutional rule announced in *Faretta* applied, the purpose of the hearing was to ensure that Davis's election to proceed *pro se* was knowing, voluntary, and intelligent.

she thereafter found him competent to reach that decision. (ROA.5488; 13369.) (Doc. 2232 (under seal).)

After being informed that standby counsel were being appointed, Davis pressed the district court to establish their limited role, asking, "You're not saying that they have the ability to do anything on their own?" (ROA.13384.) The district court assured Davis that standby counsel would be "the legs to expedite the things you want and need in order to prepare your petition," but that "*you would be in charge of your representation.*" (ROA.13384.) (emphasis added.)

The district court elaborated, saying that it was "*not talking about forcing counsel on Mr. Davis,*" but was appointing standby counsel so they could obtain information or documents faster than Davis could, given Davis's incarceration. (ROA.13386.) (emphasis added.) Noting that a previous attempt to appoint independent counsel for Davis "to represent the public interest" was "slapped down" by this Court, the district court clarified that standby counsel were not Davis's attorneys because he was representing himself. (ROA.13388.) In response to Davis's direct question, the court agreed with him that they did not "have any power to file anything" without his permission. (ROA.13388-89.)

The *Faretta*-type hearing reinforced Davis's unrelenting desire to represent himself in the § 2255 proceedings. In fact, Davis stated that he did not want any visits by any lawyers; was "not interested in speaking to lawyers over the

10

telephone"; was "not interested in having visitations with lawyers, doing any correspondence with lawyers"; and that if he changed his mind about it, he would notify the court. (ROA.13388.)

But, on March 20, 2012, standby counsel, without Davis's permission, filed several motions on his behalf, including a motion to vacate convictions and sentence under 28 U.S.C. § 2255. (ROA.5498-5891.) This habeas petition listed 29 issues: 19 of them challenged aspects of Davis's underlying conviction, and these Davis accepted; other issues addressed his death sentence, while the remainder questioned his "competency" or suggested that he was "mentally ill," and Davis refused to consider any of these non-guilt-related issues. (ROA.6011, 6040.) Indeed, standby counsel's insinuation that Davis was deranged is contradicted by record evidence, since less than a year before, in connection with the May 16, 2011 *Faretta*-type hearing, Dr. Mancuso diagnosed Davis as competent, with no evidence of psychosis. (ROA.13369.) (As noted below, Dr. Ned P. Nasbaum, M.D., would make the same diagnosis in December 2012, making the fourth such finding of Davis's competency since his conviction (ROA.61548.))

Standby counsel also filed a "Motion to Vacate Grant of *Faretta* Relief," which sought to strip Davis of his right to self-represent. (ROA.5890.) That motion ignored Davis's interests, including his choice to proceed *pro se*, and the

district court's prior grant of *pro se* status.  The district court, however, later granted the motion. (ROA.6180.)

The district court convened a status conference on April 17, 2012, in which Davis participated by telephone. Referring to the 29 issues raised by standby counsel, Davis reiterated that "if I ever decided to go forward, it would only be for conviction issues." (ROA.13394.)  He also reminded the district court, "If you remember, even the Judge said it herself, it would be just like it was with Julian and Carol [referring to Davis's standby counsel during the capital re-sentencing], where they were standby counsel and they assisted me throughout, with my permission.  Any motions that were filed, anything that was done, we worked in concert, with my permission." (ROA.13396.)  (brackets added.)

Davis was emphatic:  "What I told them [present standby counsel] is that the only way I would be willing to allow the 2255 to stand is if the only thing that was in front of this Court would be conviction-related issues period.  Not any sentencing issues, not that the ones that you filed, not any future sentencing issues, without my permission, without my express permission.  Of course, that would redact not only the sentencing issues, but what I consider to be absurd incompetency issues." (ROA.13403.)  (brackets added.) Davis said that the only reason he clarified this was to *"show that I was the one who was lead.  But by no mistake should anyone believe that I will ever change my mind …"* (ROA.13407.)

12

(emphasis added.) The district court asked Davis to submit a letter specifically identifying what habeas issues he would adopt, and what issues he would reject. (ROA.13401.)

Accepting the district court's invitation, Davis enumerated 19 of the 29 claims included in the § 2255 motion that he wished to pursue, emphasizing that "any issues not mentioned in this filing are not to be adjudicated by this Court, nor to be responded to by the government; which would be in violation of Defendant's *pro se* 6th Amendment right as it relates to 2255 brief." (ROA.6011.) (underlining in original.) Davis adopted only those issues concerning the original guilty verdict. (ROA.6011.) He expressly repudiated the remaining issues that attacked his death sentence and that insinuated he was mentally ill. (ROA.6040.) Consistent with his position since 2001, Davis directed the district court "not to adjudicate sentencing aspects of these issues, only convictions aspects; no aspects that would reverse sentences only," and he repeated that request. (ROA.6011.)[6] He concluded by

---

[6] Throughout the document, Davis limited the issues he adopted to the conviction aspects only, repeatedly repudiating any adoption of any claim attacking his sentence or his mental state, e.g., "*[Claim 2. Note] Pro se* defendant will only allow this claim in relation to 1996 trial, not 2005 penalty trial"; "*[Claim 3. Note]* *Pro se* defendant will only allow this claim in relation to convictions, not simply sentencing of 1996 and 2005"; "*[Claim 8. Note]* 'Pro se' defendant will only allow this claim as it pertains to convictions not simply sentencing"; "*[Claim 9. Note]* 'Pro se' defendant will only allow this claim as it pertains to convictions not simply sentencing. On pages 12-126 starting at Section B. 2005 Trial: None of this is to be considered where it relates to 2005 Sentencing." (ROA.6011-15.) (underlining in original.) Davis made these types of notations throughout the document.

stating, "No claims approved by defendant in this motion should be viewed by this court nor the government as attacking defendant's death sentence. These claims attack convictions. In other words, if convictions remain in place, so does death sentence." (ROA.6020.)

On May 3, 2012, Davis filed a "Defendant's Response to Court's 'Order' Pertaining to Acceptance of 2255 Motion," where he repudiated the standby counsel's "Motion to Vacate *Faretta* Relief." He wrote: "Defendant does not accept 'Faretta' motion." (ROA.6040.) (underlining in original.) (ROA.6040.)

Following Davis's decision to adopt only conviction-related issues and reject issues connected with his mental health or his sentence, the district court ordered another psychiatrist, Dr. Nasbaum, to conduct a mental evaluation of Davis. (ROA.6158.) That examination would be the fourth one since Davis's conviction and the second one, counting Dr. Mancuso's, in two years.

Dr. Nasbaum examined Davis and filed his report on December 14, 2012. (Doc. 2314 (under seal).) As did Dr. Mancuso a year earlier, Dr. Nasbaum concluded that Davis was competent and, reaching the same independent conclusion as did Dr. Mancuso, further observed that his mental condition had not deteriorated during his incarceration. (ROA.6155.) Neither doctor found any evidence of psychosis in Davis. In a minute entry dated February 7, 2013, the district court adopted Dr. Nasbaum's opinion and ordered that any opposition to

standby counsel's "motion to vacate grant of *Faretta* relief" be filed by March 14, 2013. (ROA.6158.)

Reacting to standby counsel's motion to strip him of his *pro se* right, Davis filed on February 19, 2013, a "Motion of Defendant Opposing the Vacating of Defendant's Constitutional Right Under 6th Amendment to '*Pro Se*' Representation Made Clear under 'Faretta.'" (ROA.6159.) Davis reminded the district court that his right to self-representation had been twice vindicated by this Court; that he was disturbed by the fact that "this question is once again rearing it's (sic) 'ugly head'"; that he was "'sick and tired' of Supreme Court precedent applying to everyone in this country but him"; and, in an obvious reference to his self-representation rights in this § 2255 proceeding, "if any attempt is made to once again violate defendant's constitutional rights," he would "waive any further 2255 review." (ROA.6159-60.)

Nevertheless, contrary to Davis's clear and consistent position, on April 9, 2013, in a *nunc pro tunc* ruling, the district court vacated its previous orders and revoked Davis's *pro se* status and, with it, his right to control his own post-conviction strategy. (ROA.6180.) The district court ruled that, while Davis could

proceed on those claims that he adopted, he had no right of self-representation under *Faretta* or under 28 U.S.C. § 1654. (ROA.6180.)[7]

On April 11, 2013, conceding to Davis's opposition to the deprivation of his *pro se* right, standby counsel responded with a "motion to strike sentencing claims from §2255." (ROA.6186.) Standby counsel said they had consulted Davis by telephone and that he still repudiated consideration of any sentencing and derangement-related claims. Standby counsel acknowledged Davis was "adamant" that, unless only the issues he accepted were litigated, he would waive all further collateral proceedings. *Id.*

The government replied on May 7, 2013, with its motion for partial reconsideration of the order granting in part the motion to vacate the grant of *Faretta* relief. (ROA.6197.) The government did not seek reconsideration of the decision that allowed Davis to proceed *pro se* on the 19 claims he accepted. (ROA.6011.) A year later, the district court denied the motion to reconsider and stripped Davis of his self-determination in this litigation. (ROA.6612.)

---

[7] The government disagrees with the district court's conclusion that *Martinez v. Court of Appeal of Cal.*, 528 U.S. 152 (2000), "should largely control the outcome" in this 28 U.S.C. § 2255 proceeding. (See ROA.6181.) In *Martinez*, the Supreme Court affirmed the California Court of Appeal's decision denying Martinez's motion to represent himself on appeal and held that "neither the holding nor the reasoning in *Faretta* requires California to recognize a constitutional right to self-representation on direct appeal from a criminal conviction. Our holding is, of course, narrow." 528 U.S. at 163. *Martinez*, however, did not hold that federal prisoners bringing § 2255 motions do not have a right to represent themselves under 28 U.S.C. § 1654.

16

The district court accused Davis of "caus[ing] unnecessary confusion, serious procedural issues, and significant delay in the mere filing of the defendant's motion under 28 U.S.C. § 2255." (ROA.6612.) Claiming "concern[] with the tone of some of the defendant's more recent *pro se* filings," the district court asserted that "the decision regarding all aspects of this § 2255 motion *lies with the Court, not the defendant*, and that there will be no disposition of any claim or issue without an order from this Court." (ROA.6612.) (emphasis added.) (underlining in original.)

Davis then filed, in his own hand, a timely notice of interlocutory appeal. (ROA.6639.) He also moved for appointment of new counsel to assist him in his appeal (ROA.6643.) Davis cited his distrust of standby counsel, pointing to the conflict they created with their March 2012 "Motion to Vacate Grant of *Faretta* Relief." (ROA.6643.) The district court denied Davis's motion, on the basis that Davis already had available the standby counsel, so he did not need new counsel for the appeal. (ROA.6671; 6673.) Standby counsel, however, failed to submit Davis's brief and petition for a third mandamus, leaving Davis to write it himself.

## STANDARD OF REVIEW

Issuance of a writ of mandamus is "in larger part a matter of discretion with the court to which the petition is addressed." *Kerr v. United States District Court*, 426 U.S. 394, 403 (1976). "[A] judicial 'usurpation of power' will justify the

17

invocation of this extraordinary remedy." *Id.* (citation omitted). Mandamus is appropriate when the district court "has so clearly and indisputably abused its discretion as to compel prompt intervention by the appellate court." *In re Dresser Industries, Inc.*, 972 F.2d 540, 543 (5th Cir. 1992).

For purposes of Davis's interlocutory appeal, specifically whether Davis waived his statutory right to represent himself, this Court reviews questions of law and mixed questions of law and fact *de novo*. *Jones v. Cain*, 227 F.3d 228, 230 (5th Cir. 2000).

## SUMMARY OF THE ARGUMENT

The district court erred by usurping Len Davis's right to control his habeas litigation strategy when it allowed standby counsel to present habeas claims regarding his sentence and his competency, all of which Davis has repudiated, and declared that it would determine all aspects of Davis's § 2255 motion. The government agrees with Davis that a third writ of mandamus should issue, requiring the district court to honor the defendant's *pro se* right to self-represent and control his habeas proceedings.

Davis's right to control his own proceedings and frame the issues of his 28 U.S.C. § 2255 motion flows from the principle of party presentation. Davis has consistently sought to raise only issues relating to guilt and has expressly rejected issues relating to competency or his sentence. The district court violated this

18

principle when it decided, over Davis's objections, that it would address all issues presented in standby counsel's § 2255 motion, which included those that Davis rejected.

Davis's right to self-represent in this post-conviction proceeding is conferred by 28 U.S.C. § 1654. This right to personally conduct one's own case has been in effect since before the Sixth Amendment was proposed to the states. Davis should be able to rely on this statutory right, especially considering that the district court had initially found that Davis knowingly, voluntarily, and intelligently waived assistance of counsel.

The district court erred in finding that Davis waived his rights under 28 U.S.C. § 1654 by referring to *Faretta* in his pleadings. This finding is erroneous, especially considering the history of this case and Davis's recent statements and pleadings in which he expressly, repeatedly, and consistently evinced his desire to represent himself and determine what issues should be litigated. It is further erroneous given that *pro se* litigants' pleadings are routinely granted liberal construction.

Finally, this Court should reassign this matter to another district judge on remand. The district court's rulings, both in the sentencing proceedings and this post-conviction matter, have repeatedly attempted to curtail Davis's control of his case and allow standby counsel to raise issues that Davis has specifically rejected.

19

These decisions could cause an objective observer to question the district court's ability to act as an impartial and neutral arbiter. To avoid such an appearance, the matter should be reassigned on remand.

## LAW AND ARGUMENT

I. **The District Court Abused Its Discretion In Stripping Davis Of His Right To Represent Himself And Determine His Own Strategy In His Post-Conviction Proceedings.**

    A. **Davis, As The Party Who Brought The Habeas Proceeding, Has The Right To Frame The Issues Before The District Court.**

"In our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Greenlaw v. United States*, 554 U.S. 237, 243 (2008). The rule reflects that "'[o]ur adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief.'" *Id.* at 244 (citing *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring in part and concurring in judgment)).

Davis, who has proved to be a competent *pro se* litigant, is the party here, and he has specifically and repeatedly framed only guilt-related issues as those he desires to be litigated in this habeas proceeding. To that end, Davis has expressly

20

repudiated any issues raised by standby counsel relevant to his competency and his death sentence. Eventually, standby counsel conceded to Davis's wishes, moving to strike the claims Davis had repudiated.

In light of Davis's desires and the principle of party presentation, the district court erred in stating that "the decision regarding all aspects of this § 2255 motion lies with the Court, not the defendant, and that there will be no disposition of any claim or issue without and order from this Court." (ROA.6612-13.) (underlining in original). Just as erroneous was the district court's statement that "[i]n the interest of justice, the Court will consider all issues presented in the motion under 28 U.S.C. § 2255 by the defense, as supplemented and amended," (ROA.6614), which effectively forced into the proceedings issues that Davis had expressly repudiated.

The district court's decision violated the principle of party presentation. "[A] federal court does not have *carte blanche* to depart from the principle of party presentation basic to our adversary system." *Wood v. Milyard*, 132 S. Ct. 1826, 1833 (2012) (citing *Greenlaw*, 554 U.S. at 243-44). The decision is no less erroneous if it was made to correct some perceived defect or to ensure the presentation of certain issues regarding the imposition of the death penalty, as the district court had previously attempted during the penalty phase of Davis's trial. Such is not the place of the federal district court in our adversarial system "in which the parties are obliged to present facts and legal arguments before a neutral

21

and relatively passive decision-maker." *Erline Co. v. Johnson*, 440 F.3d 648, 654 (4th Cir. 2006). As the Supreme Court explained, "'[Courts] do not, or should not, sally forth each day looking for wrongs to right. We wait for cases to come to us, and when they do we normally decide only questions presented by the parties.'" *Greenlaw*, 554 U.S. at 244 (quoting *United States v. Samuels*, 808 F.2d 1298, 1301 (8th Cir. 1987) (R. Arnold, J., concurring in denial of reh'g en banc)). The district court is not in a position to raise claims that Davis has expressly repudiated, and its decision to allow such claims over Davis's objections was erroneous. *See Vaz Dos Reis v. Holder*, 606 F.3d 1, 4 (1st Cir. 2010) ("When a party disavows a particular theory of the case, it is not an appellate court's proper role to make the disavowed argument for him.").

Courts have occasionally approved departures from the principle of party presentation to protect a *pro se* litigant's rights. *Greenlaw*, 554 U.S. at 243-44 (citing *Castro v. United States*, 540 U.S. 375, 381-83 (2003)). Examples of such departures, or exceptions to the principle, include "the ability of courts to examine jurisdictional questions *sua sponte*, the justification of issue creation for exceptional issues on the merits, procedural rules and practices allowing for modification of the questions presented, and the use of amicus curiae." Amanda Frost, *The Limits of Advocacy*, 59 Duke L.J. 447, 461-62 (2009). This case, however, does not present such issues. Instead, this is a case in which the district

22

court found that Davis "voluntarily, knowingly, and intelligently" waived counsel, (ROA.5493-94, 13383); assured Davis that "[he] would be in charge of [his] representation," (ROA.13384); stated that standby counsel did not "have any power to file anything" without Davis's permission, (ROA.13388-89); but nonetheless stripped Davis of the exact authority it stated he had, and thereafter declared that the decision as to all matters regarding the § 2255 motion rested with the district court and not Davis, or even his standby counsel (who had ultimately acceded to Davis's instructions). (ROA.6612.)

It is not the district court's place to force upon Davis issues that he expressly rejected and to additionally limit his control over his own post-conviction strategy. As a result, this Court should reverse the district court's decision, grant mandamus, order dismissal of the claims raised by standby counsel that Davis has repudiated, and allow Davis to proceed *pro se* only on the issues he elects. *Cf. United States v. Hammer*, 226 F.3d 229, 237 (3d Cir. 2000) (granting capital defendant's *pro se* motion to dismiss appeal filed by amicus counsel and stating that "it does not appear that any other person has a legally-cognizable interest in these proceedings").

23

**B.** **Regardless Of Whether The Sixth Amendment Applies To The Post-Conviction Stage, Davis Has A Statutory Right To Self-Represent.**

Beyond the principle of party presentation, Davis has a statutory right to represent himself and frame the issues in this own post-conviction proceeding. 28 U.S.C. § 1654 permits federal litigants to manage and conduct their own cases, declaring, "In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."[8] As this Court has noted, "[A] habeas petitioner does have a statutory right to self representation." *Scott v. Wainwright*, 617 F.2d 99, 102 n.3 (5th Cir. 1980). Thus, whether or not the right of *pro se* representation on habeas review has a constitutional foundation, and even if *Faretta* does not apply beyond the trial stage,[9] the right to proceed *pro se*, especially in a quasi-civil post-conviction proceeding, *see United States v. Hayes*, 532 F.3d 349, 352 (5th Cir. 2008), is a "patently statutory right." *United States v. Dougherty*, 473 F.2d 1113, 1123 (D.C. Cir. 1972).

---

[8] This Court recognized this right in this case when it issued the first writ of mandamus to the district court, stating, "We begin by noting that Davis has a statutory right to represent himself pursuant to 28 U.S.C. § 1654 . . . ." *Davis*, 2001 WL 34712238 *1.

[9] The government takes no position on whether *Faretta* applies to post-conviction proceedings.

24

The Supreme Court has made clear that the right of self-representation has always been recognized in federal courts and that specific provision for the right was made in Section 35 of the Judiciary Act of 1739, Stat. 73, 92, now codified in § 1654. *Faretta*, 522 U.S. at 812-13. The substance of that provision, which was enacted by the First Congress and signed by President Washington the day before the Sixth Amendment was proposed to the states, has remained unchanged for more than two centuries.

Since the provision's enactment, federal law has always recognized the right of self-representation, and it follows that Davis was deprived of this guarantee as a result of the district court's decision, regardless of whether *Faretta* applies to post-conviction litigation. The provision does not preclude self-representation at any stage of a case. Congress could have chosen to write such restrictions into the law, but chose not to do so over its long existence. Additionally, neither the rules of this Court nor of the Eastern District of Louisiana prohibit Davis from appearing *pro se* at the habeas stage. Once the district court found that Davis was competent and knowingly, voluntarily, and intelligently waived his right to counsel, it did not have the power to force counsel upon him. *See Lee v. Alabama*, 406 F.2d 466, 469 (5th Cir. 1968).

Contradicting the district court's decision in this case, courts have routinely allowed *pro se* representation in habeas proceedings. *See, e.g., Rosario v. United*

25

*States*, 46 F.3d 1114 n.1 (1st Cir. 1995) ("The legal right to self representation in civil cases is *guaranteed* by 28 U.S.C. § 1654.") (emphasis added); *United Sates v. Soto*, 504 F.2d 1339, 1342 (3rd Cir. 1974) ("Although the courts of appeal disagree over whether the right to represent oneself is constitutionally guaranteed, '*there is no dispute* that it is a fundamental right'") (emphasis added.); *Hill v. United States*, 2014 WL 1613941 at *14 (D.S.C. Apr. 22, 2014) ("Under 28 U.S.C. § 1654, a defendant in federal court has *long been guaranteed* the right to self-representation.") (emphasis added.); *Johnson v. Patton*, 2014 WL 4377708, at *7 n.8 (10th Cir. Sept. 5, 2014) (noting that Johnson has statutory right under 28 U.S.C. § 1654 to proceed *pro se* in habeas proceeding); and *Anderson v. United States*, 948 F.2d 704, 705 (11th Cir. 1991) (Eleventh Circuit recognized the statutory right to proceed under § 1654 in a habeas proceeding, but the movant was not competent to make such a choice, in stark contrast to Len Davis, whose competence to do so has twice been vindicated by court-appointed mental health experts just in the past few years.) That Davis is under a sentence of death does not affect his ability to waive counsel and represent himself. Although, under 18 U.S.C. § 3599, "Congress clearly expects that petitioners under sentence of death will be represented by counsel in non-frivolous federal habeas proceedings . . . a petitioner may waive that statutory right." *Hunter v. Delo*, 62 F.3d 271, 276 (8th Cir. 1995).

Since the guilty verdict, Davis has consistently embraced certain core beliefs about his right to conduct his own litigation: it resides in him, the individual; it implicates the essential element of personal choice; and it cannot be overridden for supposed interests of social utility. Davis has remained adamant that he wants to control his own strategy, and he is equally steadfast in his wish that no lawyer or court force certain issues upon him. Davis is not being forced to self-represent in this proceeding. He is instead knowingly choosing to do so, as the district court already found. There is no reason to bar Davis, a competent and able *pro se* litigant, from controlling his own strategy. Davis should not be bound to issues raised by standby counsel that he has rejected and that are antagonistic to his strategy. Davis's litigation decisions demand deference, especially in light of 28 U.S.C. § 1654 and this Court's prior writs of mandamus.

### C. The District Court Erred In Finding That Davis, A *Pro Se* Litigant Whose Pleadings Are Afforded Liberal Construction, Waived Any Rights He Had Under § 1654 Because He Mentioned *Faretta*.

The district court erred in concluding that Davis has waived his statutory right to self-representation. The record demonstrates that Davis clearly, consistently, and unequivocally invoked at every juncture, over the course of a decade, his right and desire to self-representation, a right which this Court has twice vindicated.

27

In its ruling, the district court stripped Davis of his statutory self-representation right under 28 U.S.C. § 1654, finding that he "waived" the right by the wording in some of his *pro se* pleadings. Specifically, the district court stated that Davis "repeatedly characterized the right he was asserting as *Faretta's* constitutional right. He therefore has waived whether and to what extent Section 1654 independently confers on him a right to self-representation." (ROA.6183.)

The district court's conclusion is incorrect, and its assertion that Davis failed to expressly assert his self-representation right is refuted by the record. As the following non-exclusive record examples illustrate, Davis has "repeatedly" claimed in his *pro se* filings his desire to represent himself:

- March 7, 2011: "defendant will be proceeding *pro se* …" (ROA.5479); the court granted Davis "*pro se*" status (ROA.5482);

- April 23, 2012: Davis responds with his "list of 2255 claims that '*pro se*' defendant Len Davis will allow," with the salutation "Comes now '*pro se*' defendant Len Davis" (ROA.6011);

- May 3, 2012: Davis only mentioned "*Faretta* motion," referring to standby counsel's "Motion to Vacate Grant of Faretta Relief" (ROA.5954), in that he "does not accept '*Faretta*' motion" (ROA.6040);

- February 19, 2013: "Motion of Defendant Appealing the Vacating of Defendant's Constitutional Right Under 6th Amendment to '*pro se*' Representation Made Clear Under "Faretta" (sic)," "submitted by *pro se* defendant Len Davis" (ROA.6159);

- May 19, 2014: "Interlocutory Appeal to the Fifth Circuit Court of Appeals Pertaining to District Court's Denial Of Movant's Sixth

28

Amendment right to self-representation," in which Davis cited the *Faretta* decision (ROA.6639); and

- May 22, 2014: Davis notes "Sixth Amendment right's (sic) of movant." (ROA.6666.)

Further, contrary to the district court's finding, Davis rarely mentioned "*Faretta*." His references to "*Faretta*," in fact, are a scattered few. The district court and standby counsel, however, mentioned "*Faretta*" as synonym for self-representation far more often than did Davis. For example, in April 2011, the district court ordered the "*Faretta* hearing" (ROA.5486-87.) In response to those orders Davis requested that any "*Faretta* hearing" be conducted by video teleconference, obviously responding to the language in the district court's previous orders. (ROA.5490.) Likewise, on May 16, 2011, a minute entry documented the "*Faretta* hearing" (ROA.5493). Also, in March 2012, standby counsel filed their "Motion to Vacate Grant of *Faretta* Relief." (ROA.5890.)

Regardless of whether Davis mentioned *Faretta* in his pleadings, the district court's decision is incorrect, because it is not reasonable to assume that a *pro se* litigant's casual mention of *Faretta*, a case synonymous with the *pro se* right to self-represent and that was mentioned by both the district court and standby counsel, transforms into an express waiver of a *pro se* litigant's statutory right under § 1654. Such a conclusion is even more erroneous considering Davis's repeated statements expressing his desire to represent himself and control his

29

habeas case, as well as the procedural history of the entire case in which this Court has twice upheld Davis's desire to control his own case.

The district court's decision is further erroneous because it ignores the practice of construing *pro se* pleadings liberally and in favor of the self-representing movant. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). This Court has "frequently instructed district courts to determine the true nature of a pleading by its substance, not its label." *Armstrong v. Capshaw, Goss & Bowers, LLP*, 404 F.3d 933, 936 (5th Cir. 2005); *see also Edwards v. City of Houston*, 78 F.3d 983, 995 (5th Cir. 1996) (*en banc*) ("[W]e have oft stated that 'the relief sought, that to be granted, or within the power of the Court to grant, should be determined by substance, not a label.'") (*quoting Bros. Inc. v. W E Grace Mfg. Co.*, 320 F.2d 594, 606 (5th Cir. 1963)).

The district court's strict interpretation of Davis's *pro se* filings is also inconsistent with its previous acknowledgement of Davis's legal shortcomings. For example, in its May 27, 2012 order, the district court conceded it was "fully aware that the defendant is not a lawyer and that the defendant may not fully understand the legal substance . . ." (ROA.6672); *see also* ROA.6674 ("While again recognizing that the defendant is not a lawyer …"). Such a recognition contradicts the district court's reasons for finding that Davis waived his § 1654 rights simply by referring to *Faretta* in his *pro se* pleadings.

Regardless of any reference to *Faretta*, the substance of Davis's *pro se* pleadings evince Davis's clear and repeated intent to represent himself and control his own strategy at this post-conviction stage. A general reference to *Faretta* in any of his hand-written filings does not negate this fact, or waive his invocation, especially considering that the district court and standby counsel likewise referred to *Faretta* in discussing Davis's desires.

Moreover, the cases upon which the district court relied are not applicable. In *Brown v. United States*, 264 F.2d 363, 366 (D.C. Cir. 1959), the appellate court held that a defendant that fails to expressly assert his statutory right to conduct his own defense could not later successfully contend that the right was denied. However, the defendant in *Brown* "did not request the right to act for himself." *Id.* at 365. Contrary to *Brown*, Davis repeatedly demanded that he be permitted to represent himself. The only issue was his *pro se* terminology.

Further, the district court's reliance on four other cases as support for its conclusion that Davis waived his statutory rights because of his mentioning *Faretta* is misplaced. For example, the district court cited *South Dakota v. United States Dep't of Interior*, 665 F.3d 986, 991 (8th Cir. 2012), for the principle that "raising [a] constitutional argument but not similar statutory argument [is] insufficient to preserve [the] issue." (ROA.6183.) That case, however, raised a common appellate rule that issues raised for the first time in a reply brief are

31

deemed waived. *South Dakota*, 665 F.3d at 991 ("Because the State failed to assert this theory in its opening brief and has not cited any legal authority plainly demonstrating the existence of such a right, we deem the argument waived."). Application of this appellate rule was not the issue before the district court.

Likewise, in *Hasan v. East Washington State Univ.*, 485 F. App'x 169, 170 (9th Cir. 2012), the Ninth Circuit "decline[d] to consider Hasan's Eleventh Amendment waiver argument because it was not sufficiently raised until the case was on appeal." Davis, in contrast, repeatedly expressed his intent to represent himself and determine which issues to pursue in his own post-conviction matter in the district court rather than for the first time on appeal.

Additionally, in *Camp v. Gregory*, 67 F.3d 1286, 1299 (7th Cir. 1995), the Seventh Circuit deemed a procedural due process claim waived where "the record suggests that Camp never attempted to articulate a procedural due process theory below: neither the original nor the amended complaint explicitly mentions procedural due process . . . ." Here, in contrast, Davis repeatedly articulated his desire to represent himself and present his own theories.

Finally, in *Lewis v. Jacks*, 486 F.3d 1025, 1029-30 (8th Cir. 2007), the Eighth Circuit refused to consider an inmate's claim, made for the first time on appeal, that state law provisions afforded more protections that 42 U.S.C. § 1983.

Again, Davis has, for over a decade, persistently sought to represent himself in the district court and is not raising the issue for the first time on appeal.

None of these decisions suggests that Davis waived his *pro se* status and right to represent himself under 28 U.S.C. § 1654 or that the right can be stripped from him, against his will, while based on loose reference to a case that mirrored the issue cited by standby counsel and the district court.

## II. This Court Should Re-Assign This Case To Another District Court.

This Court should reassign Davis's case to a different district judge. "A federal court of appeals has the supervisory authority to reassign a case to a different trial judge on remand." *United States v. Winters*, 174 F.3d 478, 487 (5th Cir. 1999) (citing *Johnson v. Sawyer,* 120 F.3d 1307 (5th Cir.1997); 28 U.S.C. § 2106). Reassignment and disqualification do not mean that this Court lacks confidence in a district judge's ability to discharge its expected duties. Instead, to preserve the appearance that justice is done, reassignment or disqualification is occasionally necessary, and this case presents such a need.

Courts have identified two tests to determine whether reassignment is proper. The first asks: (1) whether the original judge would reasonably be expected on remand to have substantial difficulty disregarding previously expressed views or findings determined to be erroneous or based on evidence that must be rejected; (2) whether reassignment is advisable to preserve the appearance of justice; and (3)

33

whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness. *In re DaimlerChrysler Corp.*, 294 F.3d 697, 700-01 (5th Cir. 2002). The second, more lenient, test allows reassignment "when the facts might reasonable cause an objective observer to question [the judge's] impartiality." *Id.* at 701 (*quoting United States v. Microsoft Corp.*, 56 F.3d 1448, 1463 (D.C. Cir. 1995)). This Court has "'declined to decide which test [it] will use, and instead ha[s] employed both tests.'" *Latiolais v. Cravins*, 574 F. App'x 429, 436 (5th Cir. 2014) (citing *DaimlerChrysler Corp*, 294 F.3d at 700-01)).

Under either test, this Court should re-assign the case. Under the first test, it is reasonable that the district court would have substantial difficulty in putting out of its mind its findings, especially considering that this Court has previously issued two writs of mandamus ordering the district court not interfere with Davis's right of self-representation during the penalty phase of the trial. The district court's recent rulings in this post-conviction matter in which it has allowed, over Davis's express objections, standby counsel to raise issues that Davis has repudiated, lend further support to this conclusion. Reassignment would preserve the appearance of justice by allowing Davis to proceed with his case as he deems appropriate. Also, because the matter is in the initial stages of § 2255 proceedings, reassignment will not entail waste and duplication out of proportion.

Under the second test, reassignment is also proper. The district court's rulings regarding Davis's right to self-represent since the initial remand for re-sentencing have been contrary to two writs of mandamus and Davis's express wishes. Its recent ruling and statement that the decision regarding all aspects of this post-conviction proceeding lie with it and not Davis would reasonably cause an objective observer to, at best, question the district court's role as a neutral observer, and, at worst, conclude that the district court has become an advocate in this matter.

The district court's recent rulings, like its prior rulings that led to mandamus, have repeatedly frustrated Davis's ability to control his case and present it as he believes appropriate. By dictating, over Davis's strenuous objections which issues will be litigated, a neutral observer could objectively conclude that the district court is assuming the contradictory roles of judge and litigant and question whether the district court is acting as a neutral arbiter. *See United States v. Kennedy*, 682 F.3d 244, 259-60 (3d Cir. 2012) (decision ordering reassignment cites, *inter alia*, the district court's willingness to raise arguments on the defendant's behalf); *In re United States*, 398 F.3d 615, 618 (7th Cir. 2005) (courts must maintain the "separation between . . . the formulation and evaluation of positions in litigation"); *cf. American Airlines, Inc. v. Allied Pilots Ass'n*, 968 F.2d 523, 531 (5th Cir. 1992)

35

(reversing contempt proceeding where judge assumed "dual roles" as prosecutor and judge).

This habeas litigation began with Davis asserting his desire to self-represent, which the district court initially recognized in its order of March 17, 2011, and after the *Faretta*-type hearing of May 16, 2011. When Davis rejected issues that foreclosed any inquiry into his mental condition or which involved his sentence, the district court reversed itself, shunted Davis aside, and usurped his right to control this litigation. Re-assignment is necessary to allow Davis to present his case under the principle of party presentation, to pursue his statutory right of self-representation, and to ensure the appearance of impartiality, that justice is done, and that any further decisions are made by a truly neutral arbiter.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's decision, issue the writ of mandamus, order that all § 2255 claims repudiated and not raised by Davis be dismissed, and, on remand, assign the matter to another district judge.

Respectfully submitted,

KENNETH ALLEN POLITE, JR.
UNITED STATES ATTORNEY

/s/ *Michael E. McMahon*
MICHAEL E. McMAHON, Bar #10095
Assistant U.S. Attorney
U. S. Attorney's Office
650 Poydras Street, Suite 1600
New Orleans, LA 70130
Tel. (504) 680-3027

37

## CERTIFICATE OF SERVICE AND ECF COMPLIANCE

I hereby certify that on this 13th day of November, 2014, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to ECF-registered counsel of record. Additionally, I certify that a copy of the foregoing has been served upon *pro se* Defendant-Appellant Len Davis, Prisoner No. 24325-034, FCI Terre Haute, P. O. Box 33, Terre Haute, IN 47808-0033, by placement in the United States Mail, postage prepaid and properly addressed, this 14th day of October, 2014.

I further certify the foregoing document meets the required privacy redactions; that it is an exact copy of the paper document; and the document has been scanned with the most recent version of a commercial virus scanning program and is virus-free.

/s/ *Michael E. McMahon*
MICHAEL E. McMAHON

38