**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CASE NO. 2:94-cr-00381 |
| | * | |
| v. | * | |
| | * | SECTION "B" |
| LEN DAVIS | * | |
| | * | THIS IS A CAPITAL CASE |

## RESPONSE TO GOVERNMENT'S OPPOSITION TO AN EVIDENTIARY HEARING

The government has filed a broad opposition to hearings on any and all claims in Mr. Davis and Mr. Hardy's habeas petitions, without identifying reasons specific to any of the multifarious pending claims. Doc. 2437 ("Opposition"). Its Opposition should be dismissed for three reasons. First, the government misstates the standard for granting an evidentiary hearing in habeas cases under 28 U.S.C. § 2255, as opposed to § 2254. Second, the government's own response on the merits to Mr. Davis' § 2255 Motion reveals substantial factual questions and disputes which can only be resolved through an evidentiary hearing. Finally, this case presents a complex and extensive set of claims, as well as related litigation that must be conducted and which will inform the scope of a hearing.

### A.  The Standard for Granting a Hearing in a Capital § 2255 Case

In its Opposition, the government confuses the law governing proceedings under 28 U.S.C. §§ 2254 and 2255. *See* Doc. 2437, at 1-2. There is a fundamental difference, however, between habeas cases arising out of a state conviction under 28 U.S.C. § 2254, and those arising out of a federal conviction under 28 U.S.C. § 2255. Unlike a proceeding under § 2254, motions

brought under § 2255 encompass the petitioner's first—and only—round of collateral review. Section 2254 requires that the petitioner exhaust state remedies prior to filing a habeas petition in federal court, thus giving the state courts the first opportunity for factual development and fact-finding. Federal courts accord substantial deference to state-court factual findings and hold evidentiary hearings in limited circumstances. In proceedings under § 2255, in contrast, there has been no prior adjudication of claims which could not have been raised in appellate review, such as ineffective assistance of counsel.

Because of that critical distinction between proceedings under § 2254 and § 2255, the § 2255 statute requires that "the court *shall* . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto" unless "the motion and the files and records of the case *conclusively* show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b) (emphasis added). A conclusive showing is a high bar, which the government has not met in this case. *See United States v. Briggs*, 939 F.2d 222, 228 (5th Cir. 1991) ("Where . . . the allegations in the §2255 motion are not negated by the record, the district court must hold an evidentiary hearing"); *United States v. Auten*, 632 F.2d 478, 482 (5th Cir. 1980) (documents suggesting, but not proving, that government had failed to disclose all impeachment information about its witness were sufficient to require a hearing). If the movant's "specific and detailed factual assertions . . . cannot be said to be incredible," and, if true, would entitle him to relief, the function of 28 U.S.C. § 2255 can be served only by affording a hearing. *See Machibroda v. United States*, 368 U.S. 487, 495-96 (1962) (holding that "files and records" relate only to proceedings before the district court, not to "occurrences outside the courtroom").

The Supreme Court has emphasized that Congress enacted § 2255 "to streamline habeas corpus relief, not cut it back." *Boumdiene v. Bush*, 553.S. 723, 774 (2008). Congress granted

federal district courts broad powers to determine the issues and make findings of fact to determine whether relief should be granted. *Id.* at 777. Furthermore, the Rules Governing Section 2255 Proceedings provide for an evidentiary hearing when the standards in *Townsend v. Sain*, 372 U.S. 293 (1963)[1] are met. Rule 8(a) of the Rules Governing Section 2255 Proceedings. Although the Antiterrorism and Effective Death Penalty Act of 1996 modified the *Townsend* standards for cases arising out of state court, Congress made no parallel change to standards in federal cases under § 2255. Congress clearly intended to make a distinction between the broad right to a hearing and other fact-development in a § 2255 case, and the more limited right to a hearing in a § 2254 case.

The government has also asserted, in its Response to Petitioner's § 2255 Motion ("Response"), that relief under § 2255 is a "rare exception" and that Mr. Davis must clear a "high hurdle." Doc. 2369, at 1. On the contrary, Mr. Davis must prove his claims by a preponderance of evidence. *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980). Unless the record "conclusively show[s]" that he is entitled to no relief," Mr. Davis must be granted an evidentiary hearing to satisfy his burden of proving, by a preponderance, that he is entitled to relief. As the Fifth Circuit has explained,

> Dismissal of a complaint without a hearing is justified when assuming the factual allegations pleaded by the prisoner to be true (or finding them fully refuted by the record and files) it conclusively appears that he would not be entitled to relief. Conversely stated, where petitioner's allegations, if proven would entitle him to

---

[1] *Townsend* held that a federal evidentiary hearing was required if any of the following six factors are met: (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; and (6) for any reason it appears that the trier of fact did not afford the habeas applicant a full and fair hearing. *Townsend*, 372 U.S. at 313.

relief, he is entitled to an evidentiary hearing and an opportunity to prove the truth of the matters asserted.

*Powers v. United States*, 446 F.2d 22, 24 (5th Cir. 1971) (internal citation omitted). In other words, where a petitioner makes specific factual claims that are "not speculative, conclusory, plainly false, or contradicted by the record," he is entitled to an evidentiary hearing. *See United States v. Reed*, 719 F.3d 369, 374 (5th Cir. 2013). Mr. Davis' allegations, if proven, meet this standard, and his motion and the files and records of his case do not "conclusively show" that he is not entitled to relief.

### B. The Government's Response Highlights Factual Disputes which Require a Hearing

The Government acknowledges that factual disputes as to the § 2255 claims require an evidentiary hearing. However, the Government claims that no such factual disputes exist in this case. A review of the Government's *Response* and other pleadings in this case reveals this argument to be false. Mr. Davis' § 2255 Motion is factually detailed and supported by evidentiary documents. He alleges facts which, although contested by the government, if established would entitle him to relief. In response, the government broadly denies that any of Mr. Davis' claims have merit, and alleges opposing facts without providing any exhibits or documentation in support. Indeed, much of the Response lacks citation even to the record.

The Government's Response raises material factual disputes that cannot be resolved without taking evidence. Some of them are implicit, since the government offers no evidence to support its characterizations of various relevant events, actions, motivations, and other factual matters. Others are explicit, for example, the government repeatedly denies—without submitting any evidence—that Mr. Davis' trial counsel performed deficiently. The government formulates strategic reasons for trial counsel's omissions which cannot be credited absent a hearing at which

4

trial counsel testify as witnesses. *See*, *e.g.*, Doc. 2369 at 8. The pleadings raise material questions.

For example, what reasons, if any, did trial counsel have for not undertaking to investigate, research and prepare for the critical pre-authorization presentation made to the Department of Justice on the issue of whether the Attorney General should authorize the local U.S. Attorney's Office to seek the death penalty under Reconstruction-era legislation, 18 U.S.C. §§ 241 and 242, designed to protect the rights of newly emancipated slaves, for which the death penalty was a possible penalty as a result of the then-newly passed Federal Death Penalty Act of 1994 (FDPA)? The decision to authorize the death penalty was by no means a foregone conclusion since the Attorney General did not authorize the death penalty in almost three-fourths of death eligible cases between 1995 and 2000. U.S. Dept. of Justice, *The Federal Death Penalty System: A Statistical Survey (1988-2000)* (2000), at 7; *see also* Subcomm. On Fed. Death Penalty Cases, Comm. On Defender Servs., Judicial Conference of the United States, *Federal Death Pealty Cases: Recommendations Concerning the Cost and Quality of Defense Representation* (1998) ("Effective advocacy requires counsel to explore all of the issues that are likely to enter into the Attorney General's decision whether to authorize a federal death penalty prosecution").

Mr. Davis has alleged and the record supports that trial counsel did not challenge the Government's trial evidence of Sammie Williams' critical interpretation of the wiretap evidence to the effect that the wiretaps meant a murder was ordered. The pleadings raise material questions of fact: What reasons, if any, did trial counsel have for not undertaking to investigate, research, challenge preauthorization, litigate pretrial, submit evidence, including expert

testimony, and argument and a theory of defense challenging that interpretation, which was highly relevant to guilt and to the color of law element?

Mr. Davis has alleged and the record supports that trial counsel did not challenge the government's forensic evidence, including expert firearms testimony that a cartridge case, or casing reportedly found at the crime scene was shot from a firearm owned by Paul Hardy. In response to Mr. Davis' submission of an affidavit of an expert that the crime scene investigation in this case was inadequate, counsel for the Government provides his own pseudo-expert opinion that the crime scene "was as simple as it gets" and that a more thorough investigation would not have made any difference. Rec. Doc. 2369, at 21. The pleadings raise the material issues of why trial counsel did not investigate, research, challenge preauthorization, litigate pretrial, submit evidence, including expert testimony, and argument and a theory of defense challenging the forensic evidence where two eyewitnesses to the shooting of Kim Groves believed the shooter looked like Ms. Groves' abusive boyfriend and not Mr. Hardy, and where the quality of the crime scene investigation did not conform to local and national standards adversely impacted the government's claim that Mr. Hardy's gun was at the scene of the shooting?

Mr. Davis has alleged and the record supports that trial counsel made no effort to challenge the critical trial issue of "under color of law." What reasons, if any, did trial counsel have for not undertaking to investigate, research, challenge preauthorization, litigate pretrial, submit evidence or present argument and a theory of defense challenging the federal government's power to prosecute and seek the death penalty against Mr. Davis under 18 U.S.C. §§ 241 and 242 for alleged actions take under "color of law"? Although the government disparages the claim, the district court found the issue "troubling" and, even without the necessary trial level investigation, research, pretrial litigation and evidentiary presentation at

trial, one Fifth Circuit judge concluded that the "federal government failed to satisfy its burden of establishing a sufficient federal nexus" to support the convictions. *United States v. Causey*, 185 F.3d 407, 428 (1999) (DeMoss, J., dissenting).

Mr. Davis has alleged (in Claim 1 of the § 2255 Motion) and the record supports that the government knew of what it later characterized as ongoing violence in the lower Ninth Ward, yet did nothing to stop the violence because it was more concerned with bringing "Operation Shattered Shield" to fruition than it was about the lives of people in the Ninth Ward. This in turn created a conflict of interest, because the government had an interest in pinning full responsibility for the crimes on Mr. Davis, and minimizing its foreknowledge that crimes would be committed. Doc. 2340 at 34-46. The government has labeled all Mr. Davis' factual assertions in this regard "rubbish," and "gross, baseless accusations." Doc. 2346 at 2.[2]

Mr. Davis has alleged (in Claim 8(A) of the § 2255 Motion) in the alternative, and the record supports, that the government suppressed material exculpatory evidence in the form of its investigation finding that language it claimed indicated Mr. Davis' intent to commit murder "could be mistaken as routine." Doc. 2340 at 100. Indeed, Judge Berrigan already determined that the report of the investigation was material to the defense when she gave it to the defense following *in camera* review.[3]  Doc. 2340 at 101. The government contests the import of the report, stating that Mr. Davis "attribute[s] to the internal report a significance far beyond it's real worth."

---

[2] In its *Response*, the government cites its response to Mr. Davis' Motion for Discovery as the place in which it addresses Mr. Davis' "scabrous[]" accusations. Doc. 2369 at 3 (Mr. Davis "scabrously accuses the government of a 'conflict' in prosecuting Davis and Hardy...").

[3] Trial counsel obtained the exculpatory report *after* the first trial and its appeal were concluded.

Mr. Davis has alleged (in Claim 8(B) of the § 2255 Motion) and the record supports that the government concluded he was involved in the murder of Kim Groves the day after it occurred. Rec. Doc. 2340, at 101-02. The government vigorously contests this fact, asserting that it concluded Mr. Davis was involved in Groves' murder "a week later (which is the fact)." Rec. Doc. 2369 at 10. The discrepancy in dates is quite significant, both with respect to Mr. Davis' claim of the government's conflict of interest, and with respect to discrediting the government's case against Mr. Davis at trial.

Mr. Davis has alleged (in Claim 28 of the § 2255 Motion) and the record supports that trial counsel was ineffective in failing to file a motion to recuse the government from prosecuting Mr. Davis. Rec. Doc. 2340 at 273-74. The same facts supporting the conflict of interest support the ineffective-assistance-of-counsel claim. The government contests those facts.

Mr. Davis has alleged (in Claim 8(C) of the § 2255 Motion) and the record supports that—in addition to all the other suppressed evidence regarding Sammie Williams' plea deal— the government also suppressed evidence that Sammie Williams was not prosecuted for other serious crimes he committed in exchange for his cooperation: armed robbery, extortion, and multiple instances of insurance fraud. Rec. Doc. 2340 at 105-07.

Mr. Davis has alleged (in Claim 9 of the § 2255 Motion) juror misconduct and the improper effect on jurors of extraneous influences during Mr. Davis' guilt trial. Rec. Doc. 2340 at 108-19. Since the filing of the § 2255 Motion, Mr. Davis has interviewed the jurors in Mr. Davis' first trial, with the Court's permission. At an evidentiary hearing, Mr. Davis would present evidence from jurors and other witnesses establishing multiple violations of his constitutional rights to due process and a fair trial. The government contends no juror misconduct occurred. Rec. Doc. 2369 at 27.

Mr. Davis has alleged (in Claim 12) that new evidence establishes the government's pattern of systematic exclusion of black prospective jurors bolstering his claim that the government intentionally excluded black jurors at Mr. Davis' first trial. Rec. Doc. 2340 at 177-80.

Mr. Davis is not required to demonstrate conclusively that he would be entitled to relief in order to obtain a hearing. *See Smith v. United States*, 348 F.3d 545, 551 (6th Cir. 2003) (under § 2255, the movant's "burden for establishing [his] entitlement to an evidentiary hearing is relatively light") (citation omitted); *United States v. Rodrigues*, 347 F.3d 818, 824 (9th Cir. 2003) (burden is "fairly lenient"). Mr. Davis' burden is to allege facts that, if true, would entitle him to relief. He did so and supported those allegations with evidentiary documents and sworn declarations. The government offered no contrary evidence. These circumstances compel a hearing.

### C. There is a Substantial Amount of Litigation and Discovery Which Remains to be Conducted Prior to a Hearing

Section 2255 anticipates that the decision as to whether to grant a hearing will be made after consideration of all of the pleadings, files, and records before the court. 28 U.S.C. § 2255(b). In this case, Mr. Davis' counsel filed his § 2255 Motion in 2012, and an amendment in 2013. Prior to filing, Mr. Davis refused to assist in his defense and did not communicate with counsel. The government responded in 2014, and due to other collateral litigation Mr. Davis has not filed his Reply or moved for leave to supplement with newly discovered facts in support of his claims. These pleadings must be filed in advance of a hearing in order to allow Mr. Davis a full and fair opportunity to respond to the government and present the facts in support of his claims.

9

Mr. Davis also moved for discovery at the time of filing the § 2255 Motion. Doc. 2267. Discovery in § 2255 cases is broader than the discovery available to a § 2254 litigant. Rule 6 of the Rules Governing Section 2255 Proceedings. The government filed an opposition to any discovery in this case, ostensibly because it had already provided discovery to the defense pre-trial. Doc. 2346. In response, counsel for Mr. Davis asserted that after an exhaustive review of prior counsel's files, it was impossible to ascertain what discovery was previously provided in pre-trial litigation and therefore, whether it was contained in trial files. Doc. 2350. Mr. Davis therefore requested access to review all discovery previously provided to prior counsel, and then represented that counsel would determine whether any further discovery was necessary.

The District Court accordingly ordered "counsel promptly confer with each other to ensure that previously-provided discovery is available to current counsel." Doc. 2352. Counsel for Mr. Davis then attempted to contact counsel for the government to set up a time to review the previous discovery. However, counsel for the government disregarded these attempts. Now, years later, the government takes the position that the District Court ordered *prior defense counsel*—now witnesses in this case—to confer with current defense counsel. This position is disingenuous. Counsel for Mr. Davis represented that they had already thoroughly conferred with prior defense counsel, and, failing to come to an understanding of which documents were provided in discovery, asked to view the government's files. The District Court granted this request, and counsel tried to confer with opposing counsel to no avail.  At no time did the government respond to Mr. Davis' counsel's requests and state the position it now claims to profess. As of this time, the government has not responded to undersigned counsel's requests to access the materials previously provided to prior counsel. This review must be conducted before a hearing.

The government's Opposition does not offer any reason beyond its unsupported assertions to deny an evidentiary hearing. However, prior to this Court ruling definitively on the issue, Mr. Davis is entitled to be provided with or to inspect discovery previously provided by the government.

Respectfully submitted,

/s Sarah L. Ottinger___
Sarah L. Ottinger, La. Bar No. 24589
Attorney at Law
P.O. Box 19741
New Orleans, LA 70179
(504) 258-6537
sottinger1010@gmail.com

Rebecca L. Hudsmith, La. Bar No. 7052
Federal Public Defender for the
Middle and Western Districts of Louisiana
102 Versailles Blvd., Suite 816
Lafayette, LA 70501
(337) 262-6336
Rebecca_Hudsmith@fd.org

*Counsel for Len Davis*

## CERTIFICATE OF SERVICE

I hereby certify that a that a true and correct copy of the foregoing document has been filed with the Clerk of the Court by using the CM/ECF System which will send a notice of electronic filing to all counsel of record on this 11th day of August, 2017.

/s Sarah Ottinger_____
Sarah Ottinger