**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**UNITED STATES OF AMERICA**      *      **CRIMINAL NO. 94-381**

           **v.**          *      **SECTION: "B"**

**LEN DAVIS**        *
**PAUL HARDY**

                  *     *     *

**GOVERNMENT'S RESPONSE TO PAUL HARDY'S AND LEN DAVIS'S**
**REQUESTS FOR EVIDENTIARY HEARING (DOCS. 2462 and 2463)**

Even following the renewed round of discovery in this matter, neither Davis nor Hardy outlines any new facts to justify an evidentiary hearing. To the contrary, their latest memoranda (Docs. 2462 (Hardy) and 2463 (Davis)) repeat, albeit with a slight twist, the same arguments they raised before the discovery turnover a few months ago. Since the United States has already addressed these redundant claims in, especially, our opposition to Davis's petition regarding guilt-related issues (Doc. 2369); our opposition to an evidentiary hearing (Doc. 2437); and our opposition to conduct discovery (Doc. 2346), we rely on those prior pleadings to complement this response.

**Hardy's Claims Are Perfunctory**

But first a word on Hardy's submission: he merely enumerates possible issues, with no further elaboration or argument. His stark, generalized conclusions abjectly lack any specificity on any point. Hardy's exiguous list of claims is not worthy of response, since he presents no argument or factual dispute to which a response can be made. Accordingly, this opposition will focus on Davis's arguments, as specious as they may be.

**Prefatory Note**

The Court could grant an evidentiary hearing only if the petitioners establish facts that, if true, prove a miscarriage of justice occurred by their convictions, meaning that their trial produced an unreliable result, one in which the public could have no confidence. Davis and Hardy, not the government, bear the burden of proving disputed facts. And, since petitioners frame their issues under the rubric of ineffective assistance of counsel (to evade application of the law of the case doctrine), they must show that any alleged deficiency by trial counsel prejudiced their defense. In light of the overwhelming evidence of guilt against the petitioners, they do not, indeed cannot, prove prejudice.

Len Davis's motion for an evidentiary hearing presents four issues, the first two of which revolve, in one way or the other, around the already-foreclosed (as law of the case) "color of law" element: (1) various charges of ineffective assistance of counsel: at the pre-death-penalty-authorization stage by not challenging his prosecution under, as he puts it, a Reconstruction-Era civil rights statute and by failing to conduct a pre-trial "investigation" into "color of law"; by not cross-examining Davis's partner Sammie Williams "in an effort to challenge the Government's forensic evidence" and by not investigating and challenging the prosecution as an unconstitutional Equal Protection Clause violation, as racially discriminatory, and as contrary to the "language and intent" of 18 U.S.C. §§ 241 and 242 (the criminal civil rights statutes); (2) *Brady/Giglio* allegations that unredacted FBI 302s Davis obtained in the renewed discovery could have been used to "cross Mr. Williams on the factual basis for the Fifth Circuit's fact-intensive conclusion that Mr. Davis did act under color of law"; (3) alleged juror misconduct; and (4) the supposed "conflict of interest" under which the prosecution labored.

**Davis's Conclusory Allegations Do Not Justify A Hearing**

In a bit of rhetorical sleight-of-hand, Davis opens his argument, steering the Court on the wrong course, by insinuating that the burden rests on the government to justify denial of an evidentiary hearing; he further suggests, incorrectly, that *any* (Davis's word) factual dispute automatically triggers an evidentiary hearing. He writes with no authority to back him: "A conclusive showing is a high bar, which the government has not met in this case." (Doc. 2463 at 1.) To the contrary, the government is not bound to disprove Davis's assertion that every single fact, however trivial or immaterial, is developed in the record. He instead has the burden to establish grounds for relief under § 2255, including entitlement to an evidentiary hearing. *Cody v. United States*, 249 F.3d 47, 54 (1st Cir. 2001) (quoting *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993)).

An evidentiary hearing is not necessary if the 2255 motion is inadequate on its face or if, even though facially adequate, "is conclusively refuted as to the alleged facts by the files and records of the case." *McGill*, 11 F.3d at 226: "In other words, a '§2255 motion may be denied without a hearing as to those allegations which, if accepted as true, entitle the movement to no relief, or which need not be accepted as true because they state conclusions instead of facts, contradict the record, or are "inherently incredible."'" *See United States v. Cervantes*, 132 F.3d 1106, 1111 (5th Cir. 1998) (petitioner was not entitled to an evidentiary hearing because he did not meet his burden of proof under section 2255). Davis states conclusions, not facts, and, in general, his allegations are inherently incredible.

Case law overwhelmingly refutes Davis's claim to an evidentiary hearing, especially since his reasons in support are both conclusory and foreclosed by the law of the case. A brief survey of federal appellate decisions over the years rams this point home: A hearing is not required on

claims based on unsupported generalizations, *United States v. Guerra*, 588 F.2d 519, 521 (5th Cir. 1979), or on claims that have been decided on direct appeal. *United States v. McCollom*, 664 F.2d 56, 59 (5th Cir. 1981). Again, where Davis has furnished only vague conclusions in support of his claims, no evidentiary hearing is necessary. *United States v. Demik*, 489 F.3d 644, 646-47 (5th Cir. 2007) (conclusory allegations of ineffective assistance were insufficient to warrant an evidentiary hearing); *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006) (conclusions devoid of specific factual support do not require an evidentiary hearing).

This Court, in fact, embraced that principle in its Order and Reasons in *United States v. Vinnett,* 2016 WL 705205 (February 22, 2016), recognizing that evidentiary hearings are not granted as a matter of course, but are held only when the defendant alleges sufficient facts which, if proven, would justify relief. *Id.* at *3. When the facts and record of a case make manifest that lack of merit in a §2255 claim, the Court is not required to hold an evidentiary hearing. *Id.*

Petitioner Vinnett's petition alleged no disputed material facts, just as Davis's own fails to do. She simply made unsupported allegations about her trial counsel's performance, prompting the Court to decide that such "conclusory allegations and legal misstatements" did not demonstrate the need for an evidentiary hearing. Ms. Vinnett, paralleling Davis's argument, accused her counsel of failing to challenge her brother's allegedly false testimony, thus prejudicing her defense. This Court asserted that "[c]onclusional allegations [of deficient performance] are insufficient for purposes of the two-prong *Strickland* test.… In this instance, Petitioner relies on baseless and conclusory statements so that her §2255 Motion entirely fails to support her assertion of ineffective assistance of counsel." 2016 WL 705205 at *4. More importantly, Ms. Vinnett provided "no explanation of as to how counsel's failure to object to her brother's said testimony impacted her

4

sentencing.    Petitioner has thus failed to prove that her trial counsel's allegedly deficient performance prejudiced her defense at trial." *Id.*  The same conclusion applies to Davis's petition. His issues remain uninformed by his receipt of the Court-ordered discovery, and Davis only puts a spin on the same arguments, again mostly centered on the "color of law" issue, that were foreclosed from further review under the law of the case doctrine.

**Davis's Overarching "Color of Law" Argument is Foreclosed by the Law of the Case Doctrine**

The government reiterates the Supreme Court's long-standing emphasis that a "collateral challenge may not do service for an appeal." *United States v. Frady,* 456 U.S. 152, 165 (1982). After a conviction and exhaustion of the appellate right, the Court is "entitled to presume [the defendant] stands fairly and finally convicted." *Id.* at 164.  "[I]ssues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 motions." *United States v. Kalish,* 780 F.2d 506, 508 (5th Cir. 1986).

To expand on this point, in language aptly descriptive of this case, the Supreme Court observed:  "Our trial and appellate procedures are not so unreliable that we may not afford their completed operation any binding effect beyond the next in a series of endless post-conviction collateral attacks.  To the contrary, a final judgment commands respect." *Frady,* 456 U.S. at 164-65.

Davis, however, has given no respect to his final judgment of conviction.  His request for an evidentiary hearing on issues already decided by the Fifth Circuit, especially "color of law," is but the latest in his "series of endless attacks" against which *Frady* forewarned, that has stretched this litigation out for nearly 25 years.  He makes out no constitutional issue; his allegations are conclusory, non-specific, and foreclosed.

"Color of law" was vigorously explored on appeal, and the Fifth Circuit's affirmance in *United States v. Causey,* 185 F.3d 407 (5th Cir. 1999), foreclosed further review of the issue. But Davis's persistent refusal to recognize the court's ruling on that element compels recitation from the opinion:

> The jury heard evidence that Davis misused or abused his official authority in planning, carrying out and covering up the murder. On October 13, 1994, Davis, along with his police partner Sammie Williams, who testified for the Government, began their shift around 2:30 p.m. During the shift, Davis paged Hardy and [co-defendant] Causey, discussed with them his plan to have Groves killed, met with them in the police station, then took them in his police car to show them the area that Groves frequented. The jury heard Davis's voice on tape telling Williams, "I could get 'P' to come do that 'hoe' now. And then we handle the thirty [police jargon for homicide]" Williams testified that the statement meant that Davis would get Hardy would (sic) kill Groves, then Davis and Williams would respond to the murder scene and "handle" any evidence that might link Hardy to the crime. Later in the shift, while patrolling in the police car, Davis spotted Groves and paged Hardy to give him Groves's location. Hardy killed Groves shortly after Davis went off duty and Davis used his police radio to confirm the hit with the police officer at the murder scene. We conclude that this evidence is sufficient to support a finding he misused or abused his official power to access the police station, the police car, and police radio to plan, execute, and cover up the murder. The evidence of a nexus between the abuse and the crime is likewise sufficient. Davis's status as a police officer put him in the unique position to "handle the thirty" and thus offer protection to Hardy from the consequences of the murder. The motive for the crime arose from a complaint lodged by Groves against Davis in his official capacity, it was facilitated by the ability of Davis to case the area in his police car without arousing suspicion and to offer assurance of police protection to his accomplices. Finally, there is ample evidence that Hardy and Causey jointly engaged with Davis in these prohibited actions. Therefore, the Appellants' challenges to the sufficiency of the evidence on the "color of law" element fail.

*Causey,* 185 F.3d 416 (brackets added.)

The decision in *Causey* constitutes law of the case for purposes of Davis's § 2255 action. *United States v. Troutman*, 16 F.3d 1215, 1994 WL 57398 at \*4 (5th Cir. 1994) (unpublished) ("Our prior finding in Troutman's direct appeal constitutes 'law of the case' and forecloses Troutman's current [§ 2255] challenge based on the same claim.") (*quoting United States v. McCollum,* 664 F.2d 56, 59 (5th Cir. 1981). Accordingly, the Court may not consider Davis's

"color of law" argument, in any of its guises. *Kalish,* 780 F.2d at 508. And, the law of the case doctrine applies even when the issue "need not have been explicitly decided; the doctrine also applies to those issues decided by 'necessary implication.'" *In re Felt,* 255 F.3d 220, 225 (5th Cir. 2001).

**Davis's Ineffective Assistance of Counsel Accusation Is A Dodge Around Application of Law of the Case**

Davis tries to dodge the prerequisite for habeas relief by re-casting his argument under the rubric of ineffective assistance of counsel, an issue that normally is not raised on direct appeal. But, in Davis's hands, ineffective assistance is a catch-all device to camouflage his attempt to relitigate already-decided issues. For example, counsel was "ineffective" by: not arguing the "color of law" element to the Attorney General at the pre-authorization stage; not litigating "color of law" during pre-trial motion practice (ignoring that the issue was aggressively argued on direct appeal, leading to a dissent in Davis's favor); and not "impeaching" Sammie Williams enough on "color of law" during his cross-examination. His argument regarding ineffective assistance is weak; such an accusation against trial counsel, obligatory in habeas actions, has become such a commonplace as to render it meaningless in all but the most outrageous situations, and this is not one of them. Despite Davis's talismanic incantation of ineffective assistance, his argument is all about "color of law," pure and simple.

Ineffective assistance of counsel accusations are reviewed under the familiar *Strickland* standard: "Whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To succeed on such a claim, Davis must first show that his counsel's performance fell below an objective standard of reasonableness. *Id.* at 688. The reasonableness of counsel's challenged conduct must be judged "on the facts of the particular case,

viewed as of the time of counsel's conduct" and the Court "must strongly presume that counsel has exercised reasonable professional conduct." *United States v. Samples*, 897 F.2d 193, 196 (5th Cir. 1990).

Davis identifies nary a concrete instance that, if it were proved, or performed by counsel at trial, would have changed the trial's outcome. Instead, his memorandum is riddled with vague, unsupported conclusions that fall short of defining the specifics that must be adduced to support the prejudice prong of the *Strickland* standard. For instance, he speculates, of course in hindsight, echoing trial counsel Doskey's affidavit, that he "would have" used unspecified portions of FBI 302s to impeach Sammie Williams on the "color of law" element. His argument is woefully deficient because it lacks specificity: he never explains *how* Doskey "would have" done so.

Next, Davis must show that he was prejudiced by counsel's ineffective assistance. The prejudice prong, however, is more than just an outcome-determinative test; it requires Davis to demonstrate that the result of the proceeding was fundamentally unfair or unreliable. "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993); *Goodwin v. Johnson*, 132 F.3d 162, 174 (5th Cir. 1998). The focus is on the attorney's impact on the adversarial process; the constitutional standards may be met irrespective of an accused's evaluation. *United States v. Cronic*, 466 U.S. 648 (1984).

Davis must prove both prongs and there is no reason for the Court to approach the *Strickland* analysis in any particular order, or even address both prongs if he makes an insufficient showing on one. *Strickland*, 466 U.S. at 697. In light of the overwhelming evidence against Davis, he cannot show that the trial outcome would have been different. This opposition, accordingly,

8

will focus on his failure to describe how he could not have been prejudiced by counsels' supposed shortcomings.

*Armstead v. Scott*, 37 F.3d 202 (5th Cir. 1994), reaffirmed the requirement that Davis must affirmatively prove prejudice; a mere allegation is not sufficient. This assessment, in turn, will depend in part on a prediction of what the outcome of the trial might have been. *See Hill v. Lockhart*, 474 U.S. 52, 56-58 (1985). Accordingly, an error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the result. *Strickland*, 466 U.S. at 691. Any deficiencies in counsel's performance must be prejudicial to the defense in order to make out ineffective assistance under the Constitution. *Id.* at 692.

Prejudice must also be viewed in context; a failure to obtain and present evidence is not ineffective assistance of counsel where the evidence of guilt is so strong that "there is no reasonable probability that production of the [disputed evidence] would have affected the outcome of [the] trial." *See generally Burton v. United States*, 237 F.3d 490, 494 (5th Cir. 2000).

There was substantial evidence establishing Davis's guilt beyond a reasonable doubt, eliminating the reasonable probability that the outcome of his trial would have been different had counsel fruitlessly pursued the "color of law" angle the way Davis suggests in his motion. *See Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004). Any prejudicial effect from an alleged failure to litigate "color of law" during the pre-authorization stage or at trial is slight, while the evidence of Davis's guilt is overwhelming. A defendant is entitled to a fair trial, not a perfect one. *Lutwak v. United States*, 344 U.S. 604, 619 (1953).

The Fifth Circuit's opinions affirming Davis's and Hardy's conviction (*Causey*, 185 F.3d 407) and Davis's capital sentence (*Davis*, 609 F.3d 663), repeatedly emphasized the strength of the government's case:

- "ample evidence" was adduced to prove Davis and his co-defendants jointly engaged in the "prohibited actions" that described the color of law element.  185 F.3d at 416;

- [regarding the prosecutor's closing argument] "any error…does not require reversal due to the overwhelming evidence of Davis's guilt and the negligible prejudicial affect (sic) of the remarks in the context of this case." *Id.* at 418;

- "The facts of this case are chilling.  Davis and Hardy deserve the death penalty for their part in the premeditated murder of Kim Groves.  *Id.* at 428 (DeMoss, J., dissenting);

- "Moreover, there was an amazing volume of evidence documenting the grisly details of the Davis/Hardy relationship and their brutal and mercenary crimes…"*Id.* at 433 (De Moss, J. dissenting);

- "…defendants…Davis and Hardy, against whom the government offered an impressive quantity of evidence…" *Id*.;

- [Sammie Williams's denial of any promises] "could not have affected the jury's judgment, or change the outcome of the trial, in light of the overwhelming evidence against Davis." 609 F.3d at 696.

Unable to accept that the Fifth Circuit disposed of the "color of law" issue in *Causey*, Davis tries to find another way around it.  In a deft attempt at spin, he argues that counsel should have more rigorously challenged "color of law" at trial, instead of on appeal – as if that tactic would have made any difference.  The timing of the challenge on the issue is irrelevant.  And, crucial to the present analysis, Davis never explains with specificity how trial counsel's cross-examination would have magically negated the ample evidence of "color of law" the Fifth Circuit recognized. He is unable to explain how any examination of government witnesses could have altered the objective facts that described "color of law" because to have done so would have been an impossible task.  Could any cross-examination of Sammie Williams have denied that Davis was

10

an active-duty cop?  Or that he used police assets to locate Kim Groves and later confirm with the responding officer that she was, in fact, dead?  Or that the motive for the murder was the brutality complaint lodged by Kim Groves against Davis and his partner?  Or that the brutality incident occurred when Davis and Williams were on duty, in uniform, and patrolling in a marked police car?  The answers to all these queries are a resounding no.  Davis's facile twist on his ineffective assistance argument cannot evade the law of the case.  The facts are the facts and no amount of alleged deficient trial performance alters that reality.

Defying the Fifth Circuit's determination that no further impeaching of Sammie Williams would have overcome the prosecution's ample evidence, Davis now argues that trial counsel should have done *more*.  He does not maintain, however, that Williams was not impeached; indeed, he cannot because the adequacy of William's cross-examination was assessed on direct appeal.  Instead, once again, standby counsel throw out vague speculations, never specifying what more impeachment should have been adduced or *how* this speculative tactic would have changed the trial's outcome.

Davis's generalized allegation that Williams was not impeached enough has been tried, and failed, in other contexts.  *See, e.g., United States* v. *Webster*, 392 F.3 787, 794 (5th Cir. 2004): Petitioner Webster sought a certificate of appealability after the district court denied his habeas petition, categorizing his ineffective assistance claim as "one of degree." *Id*. at 793. Webster never alleged that counsel utterly failed to present evidence of mental retardation and child abuse, but not *enough* of such evidence.  In language that applies with equal force to standby counsels' assertion here, the court held that "although more of the same or similar evidence could have been furnished, counsel were not constitutionally ineffective for failing to present more of the same." *Id.* While Davis may have desired, in hindsight, more cross-examination, the substantial evidence

11

of his guilt eliminates any reasonable probability the outcome of the trial would have differed. *See Butcher* v. *United States*, 368 F. 3d 1290, 1293 (11th Cir. 2004); *Smith* v. *United States*, 2014 WL 1576186 * 2 (N.D. Tex. 2014).

Davis also accuses Curklin Atkins, of not challenging "color of law" during the pre-authorization stage; in a similar vein, looking back through the distorting prism of hindsight, Davis argues that his trial counsel "would have" used FBI 302s to undermine Sammie William's "credibility" and also to attack "color of law" by way of impeachment.

The problem with those amorphous conclusions, however, remains unresolved: never does either Davis or Hardy explain how, exactly, their second-guessing would have changed the outcome of the trial. They do not identify what information about "color of law" could have been presented to the Attorney General that would have dissuaded her from death penalty authorization; Davis never enumerates with specificity what information trial counsel Doskey could have extracted from Williams that would have negated the "color of law" element. In other words, the arguments comprise only rank speculation, devoid of supporting facts; they fail to meet the criteria to justify an evidentiary hearing. Such unsupported assertions fall far short of the mark.

The strength of the government's evidence makes it impossible for Davis and Hardy to reconcile their empty speculations, their "woulda, coulda, shoulda" guesses about counsels' alleged shortcomings.

Davis might have had an argument, but only if his conclusory intimations could have proven the following: that Davis was not an active-duty police officer; that Kim Groves did not witness the beating of the teenager that involved Davis and Sammie Williams, while they were in uniform, on duty, and patrolling in a marked unit; that Ms. Groves did not report the incident to the NOPD's Internal Affairs Division; that Ms. Grove's report did not anger Davis; that Davis told

12

his partner that when Paul Hardy "did that whore" (killed Ms. Groves) he would "handle the thirty" (cover-up the murder); that Davis did not put Hardy and his crew in his police car to locate Ms. Groves in the Ninth Ward; that Davis, still on duty in his police unit (in effect hiding in plain sight), located Ms. Groves and called Hardy to describe her clothing; and that he did not use his police radio, over police channels, to confirm the hit.

But no amount of cross-examination of Williams or any other unspecified "investigation" could have or would have disproven any of these facts, meaning none of the evidence that proved the "color of law" element could have been negated. And only if those facts could have been disproven but for counsel's allegedly deficient performance could Davis establish the prejudice that would have undermined confidence in the verdict. But he is unable to do so; his conclusory allegations stop at that point and go no further into the realm of proof. All the facts needed to dispose of Davis's petition are contained in the record of the case. No evidentiary hearing is needed; there are no additional facts to be developed.

**The Jury's Deliberations Were Not Infected By Outside Influences**

Davis's contention that there was jury misconduct is wholly without merit. He has failed to show that external influences were brought to bear on the jury's deliberative process. In fact, the jury never encountered any such outside abuse that would necessitate an evidentiary hearing. Davis points to no intrusion from a lawyer, newspaper, references book, experiment, transcript, report or nonjuror that infected the deliberations.

The general rule is that no inquiry is allowed into the jury's process of arriving at a verdict. *Tanner* v. *United States*, 483 U.S. 107 (1987). The Supreme Court's warning reflects a well-established common law prohibition on post-verdict inquiry into jury deliberations and the use of juror testimony to impeach a verdict. Federal Rule of Evidence 606(b) codifies the "near-universal

13

and firmly established common law rule" that "flatly prohibited the admission of juror testimony to impeach a verdict." *Tanner*, 483 U.S. at 117.

The predecessor judge, nonetheless, ignored those prohibitions, and the government's objection, and allowed Davis's investigators to interview jurors. A few of the jurors agreed to talk and their submissions, which Davis attached as exhibits, hardly describe, by any stretch, any improper influences on the deliberations. Indeed, none of those statements even touches on the deliberations. Instead, the jurors mentioned that one of their colleagues may have "dozed off" from time to time during the month-long trial, and they also reported some trivial inconveniences that attended their sequestration, which, ironically, focused on the marshals' efforts to keep the jury secure and to guarantee that no outside influences breached that sequestration. There was no jury misconduct here.

**Davis's Conflict of Interest Claim Is A Fantasy**

In language that resonates in reaction to Davis's "conflict of interest" accusation, the historian Daniel J. Boorstin, in "The Image: A Guide to Pseudo-Events in America" (1961), observed: "We risk being the first people in history to have been able to make their illusions so vivid, so persuasive, so 'realistic' that they can live in them."

Davis's promiscuous devotion to the untrue is emblematic of the sort of magical thinking, anything-goes relativism, and belief in fanciful explanation that has infected today's social and political discourse (as in "fake news" or what Stephen Colbert calls "truthiness"). His odious theory that the government allowed Davis and Hardy to murder Kim Groves to further Operation Shattered Shield, and then prosecuted the defendants to "compensate" for that failure of duty defies response; but the government, in fact, addressed that custom-made reality in Document 2369, at 3-12, (at least to the extent a response was possible), so it will not be repeated here. Suffice it to

14

say that Davis alleges nothing new in his latest pleading and, more to the point, still fails to establish any fact to support his delusional conspiracism.  Responding to it is akin to proving a negative.  Since Davis's theory is imaginary, there can be no facts to develop.

Davis's "conflict of interest" fantasy becomes even more incredible because his argument alleges false facts that have morphed, subtly, into different versions as time has passed.  A notable example is the irrelevant, and incorrect claim in his petition that the authorities realized Davis murdered Kim Graves almost immediately, the day after it happened. (*See* Doc. 2265 at 103.) Discovery, however, has forced standby counsel to back off that assertion: Joseph Hebert's affidavit, in fact, corroborates the correct sequence of events, just as the United States described in its response to the guilt-related issues (Doc. 2369 at 3-12):  the authorities merely *suspected* that Davis may have had a hand in the murder because of the timing of Kim Graves's complaint against Davis vis-à-vis her killing, then triggering a review of the wiretap that took days, not hours. Davis's latest memorandum now acknowledges the police's mere suspicion in the immediate aftermath, a retreat from his original assertion.  This observation is made not to dignify Davis's fantasies, but only to underscore the spurious premises that underlay his habeas petition.

**Conclusion**

Davis's and Hardy's latest filings are but their latest foray in the "endless series of attacks" designed to extend this litigation for as long as they can.  It is now time for justice in this matter, long delayed, to run its course.  No new facts have been identified that justify an evidentiary hearing; the record is complete and need not be expanded, nor have the petitioners convinced the

Court that more evidence needs to be developed.  The Court should deny the evidentiary hearing

and also deny their §2255 petitions.

Respectfully submitted,

DUANE A. EVANS
UNITED STATES ATTORNEY


*/s/ Michael E. McMahon*
MICHAEL E. MCMAHON
Assistant United States Attorney
Louisiana Bar Roll Number 10095
650 Poydras Street, Suite 1600
New Orleans, Louisiana 70130
Telephone: (504) 680-3027


## CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2018, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all defense counsel of record, and by mailing the same to non-CM/ECF participant, Len Davis, #24325-034, FCC Terre Haute, U.S. Penitentiary, P.O. Box 33, Terre Haute, IN 47808-0033, properly addressed and postage prepaid.

s/Michael E. McMahon
MICHAEL E. McMAHON
Assistant United States Attorney

16