**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL ACTION** |
| **VERSUS** | * | **NO. 94-381** |
| **LEN DAVIS** | * | **SECTION "B"** |

**MEMORANDUM IN SUPPORT OF
PETITIONER'S MOTION TO ALTER OR AMEND JUDGMENT
DENYING THE PETITION FOR WRIT OF HABEAS CORPUS
WITHOUT A HEARING**

NOW INTO COURT, through undersigned counsel, comes the petitioner, LEN DAVIS, who moves this Court, pursuant to Federal Rules of Civil Procedure Rule 59(e), to alter or amend its judgment denying his petition for a writ of habeas corpus without an evidentiary hearing. In support, petitioner submits the following memorandum.

**I. Introduction**

On March 20, 2012, petitioner Davis filed a motion under 28 U.S.C. § 2255 for relief from his 1996 convictions for conspiracy against rights under color of law pursuant to 18 U.S.C. § 241, and deprivation of rights under color of law pursuant to 18 U.S.C. § 242, for which he received sentences of death. Rec. Doc. 2265. *See also* Rec. Doc. 2340 (corrected 2255 motion) and Rec. Doc. 2341 (amended 2255 motion). The motion alleged a number of claims challenging Davis' 1996 conviction on federal constitutional grounds, including claims of the violation of his rights to due process and a fair trial under the Fifth, Sixth and Eighth Amendments due to a conflict of interest of the federal prosecutors prosecuting the case (Claim 1), *Brady* violations (Claim 8), race discrimination (Claims 4, 12 and 20), and juror misconduct (Claim 9); and claims of ineffective assistance of trial counsel at the guilt phase trial in violation of the Fifth, Sixth and Eighth Amendments (Claims 2, 3, 9, 10, 11 and 22-29).

On June 13, 2017, this Court ordered Davis to file an updated witness and exhibit list if he seeks an evidentiary hearing on pending claims.  Rec. Doc. 2430.  Davis filed the evidentiary hearing witness and exhibit list on June 27, 2017.  Rec. Doc. 2434.  Additionally, on December 20, 2017, Davis filed a memorandum in support of granting an evidentiary hearing on his claims concerning: ineffective assistance of counsel in the 1996 trial, as well as *Brady/Giglio* violations, juror bias, and the Government's conflict of interest in connection with the 1996 trial.  Rec. Doc. 2463.  Attached to this motion were the affidavit of 1996 trial counsel Dwight Doskey, declarations of jurors in the 1996 trial, and Sammie Williams unredacted 302's provided by the Government for the first time in 2017.

On March 22, 2018, this Court issued its Order and Reasons denying petitioner's request for an evidentiary hearing and ordering that petitioner's claims, and all other pending motions, filed in connection with his motion filed pursuant to 28 U.S.C. § 2255, be dismissed.  Doc. No. 2466.  In denying relief on all claims of ineffective assistance of trial counsel at the 1996 trial, this Court concluded that Davis' allegations of ineffectiveness "are based on contentions that are not supported by the law or the evidence" and are "mere conclusions" about his lawyer's performance and not enough to "give rise to a credible assertion of a deficiency" and also fail to demonstrate prejudice.  Rec. Doc. 2466, pp. 11-12.

Petitioner now moves to alter or amend the judgment denying the habeas petition in order to allow for an evidentiary hearing.

## II.    This Court's Ruling Denying Petitioner's Federal Constitutional Claim of a Conflict of Interest Without A Hearing Constitutes Manifest Error.

This Court denied Claim I of the Section 2255 Motion without an evidentiary hearing on the grounds that it has "no evidentiary basis and [is] merely Davis' conclusions and speculation."

2

Davis alleged in Claim I that the Department of Justice and U.S. Attorney labored under a conflict of interest in prosecuting Davis in federal court. Rec. Doc. 2340 at 34-46. The facts agreed upon by the government establish the need for an evidentiary hearing: they do not "*conclusively* show that the prisoner is entitled to *no* relief." 28 U.S.C. § 2255(b) (emphasis added); *United States v. Martinez*, 181 F.3d 627, 628 (5th Cir. 1999); *United States v. Rivas-Lopez*, 678 F.3d 353, 358 (5th Cir. 2012) ("A district court must hold an evidentiary hearing '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'")

According to the government, Paul Hardy murdered at least two people while the FBI listened in. Rec. Doc. 2369 at 3-4. According to the government, the monitor listening to wiretaps did not understand the import of conversations about the murders. *Id*. at 7. It must be true then, under the government's version of events, that the case agent who reviewed the wiretaps on a daily basis also missed the import of the conversations. *See* Rec. Doc. 212 at 12-14 (agent reviewed tapes each day). According to the government, it only learned of what it claimed was Hardy and Davis' connection to the murders almost three weeks after Carlos Adams was murdered and a week after Kim Groves was murdered. Rec. Doc. 2369 at 10. Even then, after reaching its understanding that Hardy and Davis were responsible for the murders of innocent citizens, the government continued allowing Hardy and Davis to roam the streets while it enlarged the pool of NOPD officers pulled into Operation Shattered Shield and collected enough evidence to indict Davis and Hardy. *Id*. at 11.

Taking all the government's assertions as true, the FBI's work on Operation Shattered Shield was woefully inadequate, if not flat-out incompetent, and therefore worthy of protecting from outside scrutiny. Again, per the government, any street-smart agent or cop could have

explained the import of the calls. Rec. Doc. 2369 at 9. Furthermore, one of the chief concerns in FBI undercover operations is the safety of innocent individuals. Exhibit A, *Attorney General's Guidelines on FBI Undercover Operations*, *Revised 11/13/92* (available at https://vault.fbi.gov/FBI%20Undercover%20Operations%20/FBI%20Undercover%20Operations %20Part%201%20of%201 (last visited 4/18/18)) ("Undercover Guidelines").

In general, "[t]he risk of personal injury to individuals" must be weighed against any benefits of the operation. Undercover Guidelines, § IV(A)(1). In an operation such as Shattered Shield, where the undercover work pertains to corruption of public officials, the work of the FBI must be pre-approved at several levels. *Id*. § IV(C)(2)(b); § IV(B)(1) (Special Agent in Charge); § IV(F)(2)(b) (Local United States Attorney); § IV(C) (FBI Headquarters); § IV(D) (consensus approval by Undercover Review Committee, consisting of FBI employees designated by the Director and DOJ Criminal Division attorneys designated by the Assistant Attorney General). The Undercover Review Committee must consider the risk of harm specifically arising from the public corruption that is the subject of the undercover operation. *Id*. §IV(D)(3).

An undercover operation that exceeds six months, as Operation Shattered Shield did, or that has a "change in focus," as Operation Shattered Shield must have had following intercepted conversations it concluded pertained to murders, must be re-authorized by the Special Review Committee. *Id*. §§ IV(G)(1) and (3). When authorization is extended, the Special Review Committee must again weigh success of the operation against "[t]he extent to which continuation of the investigation may cause injury...to innocent parties." *Id*. §§ G(6)(b) and (d).  In addition, where a "sensitive circumstance" that was not anticipated occurs in the course of an undercover operation, including a "significant risk of violence or physical injury to individuals," *id*. § IV(C)(2)(m), "[t]he FBI shall consult with the United States Attorney, or Assistant Attorney

4

General, and with DOJ members of the Undercover Review Committee on whether to modify, suspend, or terminate the investigation related to such issues." *Id*. § VI(D).[1]

Clearly the Undercover Guidelines demonstrate the requirement that an undercover operation, of public official corruption, should not be continued when there is a threat to the safety of innocent persons arising out of the public official corruption. The FBI's claimed belated detection of the threat to safety, and its refusal to end Operation Shattered Shield immediately to protect the safety of innocent persons, do not constitute unfounded "conclusions and speculation" on Davis' part. It cannot be said that the record before this court conclusively establishes that Davis is not entitled to relief. This Court should have granted an evidentiary hearing.

### III.  This Court's Ruling Denying Petitioner's Federal Constitutional Claims of Ineffective Assistance of Counsel at his 1996 Trial Without A Hearing Constitutes Manifest Error As A Matter Of Law And Fact

In connection with his federal constitutional claim of ineffective assistance of trial counsel, Davis alleged in his Section 2255 motion that trial counsel was deficient in failing to challenge at any point in connection with the 1996 trial the federal jurisdictional requirement that his actions were taken under "color of law," a prerequisite for the federal government's power to prosecute under 18 U.S.C. §§ 241 and 242.  Rec. Doc. 2340 at 135-141, 147-156.  Among many deficiencies of counsel in this regard, Davis alleged that trial counsel "failed to argue and present evidence that the dispute with Ms. Groves was, in fact, personal and that any motivation that

---

[1] Clearly there is a significant paper trail pertaining to the DOJ's questionable judgment in continuing an undercover operation despite the significant threat to the safety of innocent people. Yet the government represented in its opposition to discovery that Davis' request for operational plans, for example, Rec. Doc. 2267-1 at 11, was "satisfied 13 years ago." Rec. Doc. 2346 at 4.  To date Davis has received 2 unidentified pages pertaining to Operation Shattered Shield  Rec. Doc. 2265-1 at 76-77, and those two pages were not provided to the defense prior to Mr. Davis' 1996 trial.

Davis might have had to act on the evening of October 13, 1994, "arose as the result of a personal grudge" rather than as the result of the IAD complaint filed earlier by Ms. Groves.

In the Dwight Doskey affidavit filed in the record in support of Davis' claims of ineffective assistance of 1996 trial counsel and the request for an evidentiary hearing on these claims, Mr. Doskey confirms that there was no consideration by counsel of challenging the "color of law" element necessary to support the federal death penalty prosecution of Davis prior to trial and there was no strategic reason of counsel for failing to do so. Affidavit of Dwight Doskey, Rec. Doc. 2463-1 at 3. Mr. Doskey also confirms that he did not conduct an investigation prior to trial into the "color of law" element of the Government's case and, thus, was not aware that Ms. Groves personally knew Davis prior to her IAD complaint, information that he would have used to counter the Government's theory that the motive for the crime arose from a complaint lodged by Groves against Davis in his official capacity, as opposed to some personal motive. Affidavit of Dwight Doskey, Rec. Doc. 2463-1at 3-4. Mr. Doskey confirmed that he did not have any strategic reason for failing to investigate this critical element of the Government's case.

Mr. Doskey's affidavit establishes critical deficiencies in trial counsel's performance due to his failure to investigate and challenge this critical element of the Government's case and power to prosecute Davis and goes beyond a "mere allegation" of deficiency. *See also* Affidavit of Bruce Johnston (attached as Exhibit B), confirming that he did investigate the color of law element at the request of habeas counsel and learned that witnesses confirmed the prior long-standing personal relationship between Ms. Groves and Davis and how contentious it had been for years. Likewise, the Doskey affidavit establishes beyond "mere allegation" trial counsel's deficiencies with regard to challenges to the prosecution's forensic evidence at trial.

6

With regard to the prejudice resulting from trial counsel's deficient performance, the affidavits of Mr. Doskey and Mr. Johnston provide "evidence or facts that demonstrate prejudice," Rec. Doc. 2466 at 11, as required by *Strickland v. Washington*, 466 U.S. 668 (1984), and its progeny.  Had trial counsel investigated the issue of "color of law," they would have found evidence of a very personal motivation both for Ms. Groves' pursuing the IAD complaint against Davis (instead of Sammie Williams, who admittedly was at fault), and for Davis' reaction to that complaint and also seeing Ms. Groves earlier in the day on October 13, 1994, in the vehicle next to his at a red light pointing accusingly at him.  This evidence dramatically alters the picture painted by the Government of an angry policemen seeking revenge on an unknown citizen filing a legitimate IAD complaint against him, and supports that, but for trial counsel's deficiencies in the regard, there is a reasonable probability that the result of the trial or the result of the appeal would have been different.

It cannot be said that the record before this Court conclusively establishes that Davis is not entitled to relief on his claims of ineffective assistance of counsel.  This Court should have granted an evidentiary hearing.

## IV.  Conclusion

WHEREFORE, for all of the foregoing reasons, as well as for all the reasons set forth in his Section 2255 Motion and all related pleadings, including his Memorandum in Support of Granting Evidentiary Hearing, petitioner LEN DAVIS respectfully prays that the Court alter and amend its judgment to order an evidentiary hearing and grant him federal habeas relief.

Respectfully submitted,

/s/ Sarah L. Ottinger
Sarah L. Ottinger, La. Bar No. 24589
2563 Bayou Road, 2nd Floor
New Orleans, LA 70119
(504) 258-6537
sottinger1010@gmail.com

/s/ Rebecca L. Hudsmith
Federal Public Defender for the Middle and
Western Districts of Louisiana
102 Versailles Blvd., Suite 816
Lafayette, LA 70506
(337) 262-6336
Rebecca_Hudsmith@fd.org

**COUNSEL FOR LEN DAVIS**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been filed

with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic

filing to all counsel of record on this 19th day of April, 2018.

/s/ Sarah L. Ottinger
Sarah L. Ottinger