**U.S. Department of Justice**

Federal Bureau of Investigation

# Undercover and Sensitive Operations Unit

*Attorney General's Guidelines on FBI Undercover Operations*

*Revised 11/13/92*



*Investigative Support Section*

Criminal Investigative Division

## ATTORNEY GENERAL'S GUIDELINES ON
## FEDERAL BUREAU OF INVESTIGATION
## UNDERCOVER OPERATIONS

The following Guidelines on the use of undercover activities and operations by the Federal Bureau of Investigation (FBI) are issued under the authority of the Attorney General provided in Title 28, United States Code, Sections 509, 510, and 533. They apply to all investigations conducted by the FBI, except those conducted pursuant to its foreign counterintelligence and foreign intelligence responsibilities.

I.   INTRODUCTION

II.  DEFINITIONS

III. GENERAL AUTHORITY

IV.  AUTHORIZATION OF UNDERCOVER OPERATIONS

   A.  General Approval Standards

   B.  Undercover Operations Which May be Authorized by the Special Agent in Charge (SAC)

   C.  Operations Which Must be Approved at FBIHQ

   D.  Criminal Undercover Operations Review Committee

   E.  Approval by the Director, Deputy Director, or Designated Assistant Director

   F.  Application/Notification to FBIHQ

   G.  Duration of Authorization

   H.  Participation in Otherwise Illegal Activity by Undercover Employees

   I.  Emergency Authorization

V.   PROTECTING INNOCENT PARTIES AGAINST ENTRAPMENT

   A.  Entrapment

   B.  Authorization Requirements

   C.  Exception

VI.  MONITORING AND CONTROL OF UNDERCOVER OPERATIONS

   A.  Preparation of Undercover Employees, Informants, and Cooperating Witnesses

   B.  Review of Conduct

   C.  Continuing Consultation with the Appropriate Federal Prosecutor

   D.  Serious Legal, Ethical, Prosecutive, or Departmental Policy Questions, and Previously Unforeseen Sensitive Circumstances

   E.  Annual Report of the Undercover Review Committee

   F.  Deposit of Proceeds; Liquidation of Proprietaries

VII. RESERVATION

## I. INTRODUCTION

The use of the undercover technique, including proprietary business entities, is essential to the detection, prevention, and prosecution of white collar crimes, public corruption, terrorism, organized crime, offenses involving controlled substances, and other priority areas of investigation. However, these techniques inherently involve an element of deception and may require cooperation with persons whose motivation and conduct are open to question, and so should be carefully considered and monitored.

## II. DEFINITIONS

A. **"Undercover Activities"** means any investigative activity involving the use of an assumed name or cover identity by an employee of the FBI or another Federal, state, or local law enforcement organization working with the FBI.

B. **"Undercover Operation"** means an investigation involving a series of related undercover activities over a period of time by an undercover employee. For purposes of these Guidelines, a "series of related undercover activities" generally consists of more than three separate contacts by an undercover employee with the individual(s) under investigation. However, undercover activity involving sensitive or fiscal circumstances constitutes an undercover operation regardless of the number of contacts involved.

C. **"Undercover Employee"** means any employee of the FBI, or employee of a Federal, state, or local law enforcement agency working under the direction and control of the FBI in a particular investigation, whose relationship with the FBI is concealed from third parties in the course of an investigative operation by the maintenance of a cover or alias identity.

D. **"Proprietary"** means a sole proprietorship, partnership, corporation, or other business entity operated on a commercial basis, which is owned, controlled, or operated wholly or in part on behalf of the FBI, and whose relationship with the FBI is concealed from third parties.

E. **"Appropriate Federal Prosecutor"** means a United States Attorney or Section Chief in the Criminal Division of the Department of Justice (DOJ).

3

## III. GENERAL AUTHORITY

The FBI may use undercover activities and conduct undercover operations, pursuant to these Guidelines, that are appropriate to carry out its law enforcement responsibilities. These guidelines do not apply to investigations utilizing confidential informants, cooperating witnesses or cooperating subjects, unless the investigation also utilizes an undercover employee. The FBI, through the development of internal policy, may choose to apply these Guidelines to certain confidential informant, cooperating witness, and cooperating subject operations by referring such matters to the Undercover Review Committee pursuant to Section IV, Paragraph (D)(6).

Under this authority, the FBI may participate in joint undercover activities with other law enforcement agencies and may operate a proprietary to the extent necessary to maintain an operation's cover or effectiveness. All joint undercover operations are to be conducted pursuant to these Guidelines.

## IV. AUTHORIZATION OF UNDERCOVER OPERATIONS

**A.   General Approval Standards:**  Any official considering approval or authorization of a proposed undercover application shall weigh the risks and benefits of the operation, giving careful consideration to the following factors:

(1)   The risk of personal injury to individuals, property damage, financial loss to persons or businesses, damage to reputation, or other harm to persons;

(2)   The risk of civil liability or other loss to the Government;

(3)   The risk of invasion of privacy or interference with privileged or confidential relationships;

(4)   The risk that individuals engaged in undercover operations may become involved in illegal conduct restricted in paragraph IV.H. below; and

(5)   The suitability of Government participation in the type of activity that is expected to occur during the operation.

**B.   Undercover Operations Which May be Authorized by the Special Agent in Charge (SAC)**

(1)   The establishment, extension, or renewal of all undercover operations to be supervised by a given field office must be approved by the SAC.   If the undercover operation does not involve any of the factors listed in paragraph IV.C. below, this approval shall constitute

4

authorization for the operation.  Approval requires a written determination, stating supporting facts and circumstances, that:

(a)  Initiation of investigative activity **regarding the alleged criminal** conduct or criminal enterprise is warranted under any applicable **departmental guidelines;**

(b)  The proposed undercover operation appears to be an effective means of obtaining evidence or necessary information.  This finding should include a statement of what prior investigation **has been conducted and what chance the operation has of obtaining evidence or necessary information** concerning the alleged criminal conduct or criminal enterprise;

(c)  The undercover operation will be conducted with minimal intrusion consistent with the need to collect the evidence or information in a timely and effective manner;

(d)  Approval for the use of any informant or confidential source has been obtained as required by the Attorney General's Guidelines on Use of Informants and Confidential Sources;

(e)  Any foreseeable participation by an undercover employee in illegal activity that can be approved by the SAC on his or her own authority is justified by the factors noted in paragraph H;

(f)  If there is no present expectation of the occurrence of any of the sensitive or fiscal circumstances listed in paragraph C, a statement to that effect.

(2)  Undercover operations may be authorized pursuant to this subsection for up to six months and continued upon renewal for an additional six-month period, for a total of no more than one year.  Undercover operations initiated pursuant to this subsection may not involve the expenditure of more than $40,000 ($100,000 in drug cases of which a maximum of $40,000 is for operational expenses), or such other amount that is set from time to time by the Director, without approval from FBI Headquarters (FBIHQ).

(3)  The SAC may delegate the responsibility to authorize the establishment, extension, or renewal of undercover operations to designated Assistant Special Agents in Charge.  The delegation of this responsibility by the SAC should be in writing and

5

maintained in the appropriate field office.  However, all undercover operations which must be authorized at FBIHQ must be approved by the SAC.

(4)   A copy of all written approvals described in (1) above shall be forwarded promptly to FBIHQ.

## C.   Operations Which Must be Approved at FBIHQ

### (1)   Fiscal Circumstances

In all undercover operations involving the fiscal circumstances set out below, the SAC shall submit an application to FBIHQ in accordance with paragraph IV.F. below.  A recommendation for authorization may be forwarded directly to the Director or designated Assistant Director or, in operations involving only fiscal circumstances letters (a)-(c), to the designated Deputy Assistant Director for final review and authorization, provided that the approval levels conform to all applicable laws.

Applications for approval of undercover operations referred to FBIHQ only because of fiscal circumstances need not be considered or approved by the Undercover Review Committee.

For purpose of these Guidelines, an undercover operation involves fiscal circumstances if there is a reasonable expectation that the undercover operation will --

(a)   Require the purchase or lease of property, equipment, buildings, or facilities; the alteration of buildings or facilities; a contract for construction or alteration of buildings or facilities; or prepayment of more than one month's rent;

NOTE:  The purchase, rental, or lease of property using an assumed name or cover identity to facilitate a physical or technical surveillance is not an undercover operation for purposes of these Guidelines.  However, since the expenditure of appropriated funds is involved, approval must be obtained from FBIHQ in conformance with applicable laws.

(b)   Require the deposit of appropriated funds or proceeds generated by the undercover operation into banks or other financial institutions;

(c)   Use the proceeds generated by the undercover operation to offset necessary and reasonable expenses of the operation;

6

(d)   Require a reimbursement or compensation agreement with cooperating individuals or entities for services or losses incurred by them in aid of the operation (any reimbursement agreement entered into with third parties must be reviewed by the FBI's Legal Counsel Division); or

(e)   Exceed the limitations on duration or commitment of resources established by the Director for operations initiated at the field office level.

## (2)   Sensitive Circumstances

In all undercover operations involving any sensitive circumstances listed below, the SAC shall submit an application to FBIHQ in accordance with paragraph F below.  The application shall be reviewed by appropriate supervisory personnel at FBIHQ and, if favorably recommended, sent to the Undercover Review Committee for consideration.  The application shall then be forwarded to the Director or a designated Assistant Director, who may approve or disapprove the application.

For purposes of these Guidelines, sensitive circumstances are involved if there is a reasonable expectation that the undercover operation will involve--

(a)   an investigation of possible criminal conduct by any elected or appointed official, or political candidate, for a judicial-, legislative-, management-, or executive-level position of trust in a Federal, state, or local governmental entity or political subdivision thereof;

(b)   an investigation of any public official at the Federal, state, or local level in any matter involving systemic corruption of any governmental function;

(c)   an investigation of possible criminal conduct by any foreign official or government, religious organization, political organization, or the news media;

NOTE:   There are some circumstances involving officials in judicial, legislative, management, or executive-level positions which may logically be considered nonsensitive.  In such instances, the Section Chief, White-Collar Crimes Section, FBIHQ, who is a member of the Criminal Undercover Operations Review Committee and has a national perspective on matters involving public

7

officials, must be consulted for a determination as to whether the undercover operation should be presented to the Undercover Review Committee.

   (d)  Engaging in activity having a significant effect on or constituting a significant intrusion into the legitimate operation of a Federal, state, or local governmental entity;

   (e)  Establishing, acquiring, or using a proprietary;

   (f)  Providing goods or services which are essential to the commission of a crime, which goods and services are reasonably unavailable to a subject of the investigation except from the Government;

   (g)  Activity that is proscribed by Federal, state, or local law as a felony or that is otherwise a serious crime -- but not including the purchase of stolen or contraband goods; the delivery or sale by the Government of stolen property whose ownership cannot be determined; the controlled delivery of drugs which will not enter commerce; the payments of bribes which are not included in the other sensitive circumstances; or the making of false representations to third parties in concealment of personal identity or the true ownership of a proprietary (this exemption does not include any statement under oath or the penalties of perjury).  (See Paragraph H below);

NOTE:  Some of the above activities, including the controlled delivery of drugs and bribe payments, are subject to specific review and approval procedures. These matters must be coordinated with FBIHQ.

   (h)  A significant risk that a person participating in an undercover operation will be arrested or will supply falsely sworn testimony or false documentation in any legal or administrative proceeding (See paragraph H below);

   (i)  Attendance at a meeting or participation in communications between any individual and his or her lawyer;

   (j)  A significant risk that a third party will enter into a professional or confidential relationship with a person participating in an undercover operation who is acting as an attorney, physician, clergyman, or member of the news media;

8

(k)  A request to an attorney, physician, member of the clergy, or other person for information that would ordinarily be privileged or to a member of the news media concerning an individual with whom the news person is known to have a professional or confidential relationship;

(l)  Participation in the activities of a group under investigation as part of a Domestic Security Investigation or recruiting a person from within such a group as an informant;

(m)  A significant risk of violence or physical injury to individuals or a significant risk of financial loss;

(n)  Activities which could result in significant claims against the United States arising in tort, contract, or for compensation for the "taking" of property;

(o)  Untrue representations by a person participating in the undercover operation concerning the activities or involvement of any third person without that individual's knowledge or consent.

## D.  Criminal Undercover Operations Review Committee (Undercover Review Committee)

(1)  The Undercover Review Committee shall consist of appropriate employees of the FBI designated by the Director and Criminal Division attorneys designated by the Assistant Attorney General in charge of the Criminal Division, DOJ, to be chaired by a designee of the Director.

(2)  When an application from an SAC for approval of an undercover operation involving sensitive circumstances specified in paragraph C(2) is received by FBIHQ, upon recommendation by the FBIHQ substantive section, the Committee members will meet to review the application. Criminal Division members of the Committee may consult with appropriate FBI personnel, senior DOJ officials, and the United States Attorney as deemed appropriate. The Committee shall submit the application to the Director or designated Assistant Director with a recommendation for approval or disapproval of the request and any recommended changes or amendments to the proposal.

(3)  In addition to the considerations contained in IV.A. above, the Committee shall also examine the application to determine whether adequate measures have

9



been taken to minimize the incidence of sensitive circumstances and reduce the risks of harm and intrusion that are created by such circumstances. If the Committee recommends approval of an undercover operation, the recommendation shall include a brief written statement explaining why the operation merits approval in light of the anticipated occurrence of sensitive circumstances.

(4)   The Committee shall recommend approval of an undercover operation only upon reaching a consensus, provided that:

(a)   If one or more of the designees of the Assistant Attorney General in charge of the Criminal Division does not join in a recommendation for approval of a proposed operation because of legal, ethical, prosecutive, or departmental policy considerations, the designee shall promptly advise the Assistant Attorney General and no further action shall be taken on the proposal until the designated Assistant Director has had an opportunity to consult with the Assistant Attorney General; and

(b)   If, upon consultation, the Assistant Attorney General disagrees with a decision by the designated Assistant Director to approve the proposed operation, no further action shall be taken on the proposal without the approval of the Deputy Attorney General or the Attorney General.

(5)   The Committee should consult the Legal Counsel Division of the FBI and the Office of Legal Counsel or other appropriate division or office at DOJ about any significant unsettled legal questions concerning authority for, or the conduct of, a proposed undercover operation.

(6)   The Director, Assistant Attorney General, or other official designated by them may refer any sensitive investigative matter, including informant, cooperating witness, and cooperating subject operations, to the Undercover Review Committee for advice, recommendation or comment, regardless of whether an undercover operation is involved.

(7)   The United States Attorney, Special Agent in Charge or any member of their staffs, may attend the Criminal Undercover Operations Review Committee in order to advocate for the approval of an undercover operation.

(8)   If the Special Agent in Charge and the United States Attorney jointly disagree with any stipulation

10

set by the Criminal Undercover Operations Review Committee regarding the approval of an undercover operation, they may consult with the chairman of the Criminal Undercover Operations Review Committee who may schedule a meeting of the committee to reconsider the issue in question.

(9)  At any time during the undercover operation the Special Agent in Charge can appeal any Headquarters decision directly to the Assistant Director.  Likewise, the United States Attorney can appeal directly to the Assistant Attorney General, Criminal Division, or the Deputy Attorney General as appropriate.

E.  **Approval by the Director, Deputy Director, Associate Deputy Director-Investigations, or Designated Assistant Director**

A designated Assistant Director may approve an undercover operation considered by the Undercover Review Committee, unless the investigation involves sensitive circumstances (l) or (m). Except pursuant to the limited circumstances described in Section I below, only the Director, Deputy Director, or Associate Deputy Director-Investigations may approve a proposed operation if a reasonable expectation exists that:

(1)  The undercover operation will be used to participate in the activities of a group under investigation as part of a Domestic Security Investigation or to recruit a person from within such a group as an informant or confidential source (Sensitive Circumstance (l));

(2)  There may be a significant risk of violence or personal injury to individuals or a significant risk of financial loss (Sensitive Circumstance (m)).

F.  **Application/Notification to FBIHQ**

(1)  Application to FBIHQ must be made for any undercover operation requiring FBIHQ approval.  Each application shall include:

(a)  The written SAC approval described in B(1) above;

(b)  A description of the proposed operation and the particular cover to be employed; any informants or other cooperating persons who will assist in the operation, including background information, arrest record, and plea agreements; the particular offense or criminal enterprise under investigation; and any individuals known to be involved;

11

(c)   A statement of the period of time for which the operation would be maintained;

(d)   A description of how the requirements concerning any inducements to be offered as discussed in Section V.B. below have been met; and

(e)   A statement of proposed expenses.

(2)   Applications for approval of undercover operations involving sensitive circumstances listed in paragraph C(2) shall also include the following information:

(a)   A statement of which circumstances are reasonably expected to occur, what the facts are likely to be, and why the undercover operation merits approval in light of the circumstances, including:

(i)   For undercover operations involving sensitive circumstance (g), a statement why the participation in otherwise illegal activity is justified under the requirements of paragraph H below, and a letter from the appropriate Federal prosecutor pursuant to paragraph F(2)(b);

(ii)   For undercover operations involving sensitive circumstance (l), a statement why the infiltration or recruitment is necessary and a description of procedures to minimize any acquisition, retention, and dissemination of information that does not relate to the matter under investigation or to other authorized investigative activity.

(b)   A letter from the appropriate Federal prosecutor indicating that he or she has reviewed the proposed operation, including the sensitive circumstances reasonably expected to occur, agrees with the proposal and its legality, and will prosecute any meritorious case that has developed. The letter should include a finding that the proposed investigation would be an appropriate use of the undercover technique and that the potential prosecutive benefits outweigh any direct costs or risks of other harm.

(3)   An application for the extension or renewal of an undercover operation should describe the results obtained from the operation or explain any failure to obtain significant results and, where sensitive circumstances are involved, should include a letter from the appropriate Federal prosecutor favoring the extension or renewal of authority.

12

## G. **Duration of Authorization**

(1)   An undercover operation approved by FBIHQ may not continue longer than is necessary to achieve the objectives specified in the authorization, nor in any event longer than six months, without new authorization to proceed, except pursuant to subparagraph (3) below.

(2)   If there is significant change in either the direction or objectives of an undercover operation approved by FBIHQ, the operation must be reviewed by the Undercover Review Committee to determine whether a new authorization is necessary.

(3)   An undercover operation which requires review by the Undercover Review Committee may be initiated or extended on an interim basis by the designated Assistant Director in the event of exigent circumstances, for a period not to exceed 30 days.   In the case of an initial authorization, budget enhancement, or change in focus, the interim authority must be ratified by the Undercover Review Committee at its next scheduled meeting.

(4)   An undercover operation initially authorized by the SAC must be reauthorized by a designated Assistant Director, pursuant to paragraphs IV.C-F, if it lasts longer than 12 months or involves the expenditure of more than $40,000 ($100,000 in drug cases of which a maximum of $40,000 is for operational expenses), or such other amount that is set from time to time by the Director.   No undercover operation approved at the field office level may continue for more than one year without obtaining approval at FBIHQ.

(5)   An undercover operation approved by an SAC is deemed to commence on the date approved, not on the date covert activity is begun.

(6)   Among the factors to be considered in a determination by any approving official of whether an undercover operation should be renewed or extended are:

(a)   The extent to which the operation has produced the results anticipated when it was established;

(b)   The potential for future success beyond that initially targeted;

(c)   The extent to which the investigation can continue without exposing the undercover operation; and

13

(d)  The extent to which continuation of the investigation may cause injury, financial or otherwise, to innocent parties.

## H. Participation in Otherwise Illegal Activity by Undercover Employees

Except when authorized pursuant to these Guidelines, no undercover employee shall engage in any activity that would constitute a violation of Federal, state, or local law if engaged in by a private person acting without authorization.  For purposes of these Guidelines, such activity is referred to as otherwise illegal activity.

(1)  Justification:  No official shall recommend or approve participation by an undercover employee in otherwise illegal activity unless the participation is justified:

(a) to obtain information or evidence necessary for the success of the investigation and not reasonably available without participation in the otherwise illegal activity;

(b) to establish or maintain credibility of a cover identity; or

(c) to prevent death or serious bodily injury.

(2)  Minimization: The FBI shall take reasonable steps to minimize the participation of an undercover employee in any otherwise illegal activity.

(3)  Prohibitions:  An undercover employee shall not

(a) participate in any act of violence except in self-defense;

(b) initiate or instigate any plan to commit criminal acts except in accordance with Part V (Avoidance of Entrapment) below, or

(c) participate in conduct which would constitute unlawful investigative techniques (e.g., illegal wiretapping, illegal mail openings, breaking and entering, or trespass amounting to an illegal search).

(4)  Self-Defense:  Nothing in these Guidelines prohibits an undercover employee from taking reasonable measures of self-defense in an emergency to protect his or her own life or the lives of others against wrongful force.  Such measures shall be reported to the appropriate Federal prosecutor and FBIHQ, who shall

14

inform the Assistant Attorney General for the Criminal Division as soon as possible.

(5)   Authorization:

(a) **The SAC must approve all undercover operations and activities,** including those which contemplate participation in otherwise illegal activity.  This approval shall constitute authorization of:

(i)   otherwise illegal activity which is a misdemeanor or similar minor crime under Federal, state, or local law;

(ii)   consensual monitoring, even if a crime under local law;

(iii)   the purchase of stolen or contraband goods;

(iv)   the delivery or sale of stolen property which cannot be traced to the rightful owner;

(v)   the controlled delivery of drugs which will not enter commerce;

(vi)   the payment of bribes which is not included in the sensitive circumstances;

(vii)   the making of false representations to third parties in concealment of personal identity or the true ownership of a proprietary (but not any statement under oath or the penalties of perjury, which must be authorized pursuant to subparagraph (b) below).

(b) Participation in otherwise illegal activity which is a felony or its equivalent under Federal, state, or local law requires additional authorization by the Assistant Director after review by the Undercover Review Committee.  See Section IV(E).

(c) Participation in otherwise illegal activity which involves a significant risk of violence or physical injury requires authorization by the Director or Deputy Director after review by the Undercover Review Committee.  See Section IV(E).

(d) If an undercover employee believes it to be necessary and appropriate under the standards set out in subparagraph H(1) above, to participate in otherwise illegal activity that was not foreseen

15

or anticipated, every effort should be made to consult with the SAC, who shall seek emergency interim authority from the designated Assistant Director, and review by the Undercover Review Committee if possible, or, if necessary, may provide emergency authorization under paragraph I below. If consultation is impossible, and the undercover employee concludes that there is an immediate and grave threat to life, physical safety, or property, the undercover employee may participate in the otherwise illegal activity, so long as he does not take part in and makes every effort to prevent any act of violence. A report to the SAC shall be made as soon as possible, who shall submit a written report to FBIHQ, which shall promptly inform the Undercover Review Committee. A decision by an undercover employee to participate in otherwise illegal activity under this subsection may be retroactively authorized if appropriate.

(e) If an undercover operation results in violence in the course of criminal activity, and an undercover employee, informant, or cooperating witness has participated in any manner in the criminal activity, the SAC shall immediately inform the appropriate Federal prosecutor and FBIHQ, which shall inform the Assistant Attorney General in charge of the Criminal Division as soon as possible.

## I. Emergency Authorization

(1) In situations which require the prior written authorization of the SAC, the SAC may orally approve an undercover operation when he or she determines that a significant and unanticipated investigative opportunity would be lost were the time taken to prepare a written authorization. The required written authorization, with the justification for the oral approval included, shall be prepared promptly and forwarded to FBIHQ.

(2) Emergency interim authorization procedures are in place within FBIHQ that provide for expeditious review and authorization of a proposed undercover operation. See G.(3). If the SAC concludes that an emergency situation exists which makes even this expedited procedure too lengthy, in the following situations, the SAC may authorize the undercover operation:

(a) In situations which would otherwise require approval by the designated Assistant Director, the SAC may approve an undercover operation when he or she determines that without immediate initiation,

16

extension, or renewal of an operation, life, property, or personal safety of individuals would be placed in serious danger.

(b)   In situations which would otherwise require approval by the Director or Deputy Director, the SAC may approve an undercover operation when he or she determines that the initiation, extension, or renewal of an operation is imperative to protect life or prevent serious injury.

Before providing authorization in these situations, the SAC shall attempt to consult with the appropriate Federal prosecutor and with a designated Assistant Director.

(3)   The power to provide emergency authorizations under subparagraph (2) may not be delegated pursuant to IV.B(3).

(4)   In situations arising under subparagraph (2), a written application for approval must be submitted to FBIHQ within 48 hours after the operation has been initiated, extended, or renewed, together with the initial finding and a written description of the emergency situation.   As soon as it is notified of an emergency authorization, FBIHQ shall notify the DOJ members of the Undercover Review Committee.   If the subsequent written application for approval is denied, a full report of all activity undertaken during the course of the operation must be submitted to the Director, who shall inform the Deputy Attorney General.

## V.   PROTECTING INNOCENT PARTIES AGAINST ENTRAPMENT

### A.   Entrapment

Entrapment must be scrupulously avoided.   Entrapment occurs when the Government implants in the mind of a person who is not otherwise disposed to commit the offense the disposition to commit the offense and then induces the commission of that offense in order to prosecute.

### B.   Authorization Requirements

In addition to the legal prohibition on entrapment, additional restrictions limit FBI undercover activity to ensure, insofar as it is possible, that entrapment issues do not adversely affect criminal prosecutions. As a result, no undercover activity involving an inducement to an individual to engage in crime shall be authorized unless the approving official is satisfied that --

17

(1)   The illegal nature of the activity is reasonably clear to potential subjects; and

(2)   The nature of any inducement offered is justifiable in view of the character of the illegal transaction in which the individual is invited to engage; and

(3)   There is a reasonable expectation that offering the inducement will reveal illegal activities; and

(4)   One of the two following limitations is met:

> (i) There is reasonable indication that the subject is engaging, has engaged, or is likely to engage in the illegal activity proposed or in similar illegal conduct; or,
>
> (ii) The opportunity for illegal activity has been structured so that there is reason to believe that any persons drawn to the opportunity, or brought to it, are predisposed to engage in the contemplated illegal conduct.

## C.   Exception

The alternative requirements of subparagraph B(4), while not required by law, are imposed to ensure that the Government does not offer inducements to engage in crime to persons who are not predisposed to do so. These standards can be waived only by the Director upon a written finding that the activities are necessary to protect life or prevent other serious harm.

## VI.   MONITORING AND CONTROL OF UNDERCOVER OPERATIONS

### A.   Preparation of Undercover Employees, Informants, and Cooperating Witnesses

(1)   Prior to the investigation, the SAC or a designated Supervisory Special Agent shall review with each undercover employee the conduct that the undercover employee is expected to undertake and other conduct that may be necessary during the investigation. The SAC or Agent shall discuss with each undercover employee any of the sensitive or fiscal circumstances specified in paragraphs IV.C(1) or (2) that are reasonably likely to occur.

(2)   Each undercover employee shall be instructed that he or she shall not participate in any act of violence; initiate or instigate any plan to commit criminal acts;

18

use unlawful investigative techniques to obtain information or evidence; or engage in any conduct that would violate restrictions on investigative techniques or FBI conduct contained in the Attorney General's Guidelines or departmental policy; and that, except in an emergency situation as set out in paragraph IV.H.(5)(d), he or she shall not participate in any illegal activity for which authorization has not been obtained under these Guidelines. The undercover employee shall be instructed in the law of entrapment. When an undercover employee learns that persons under investigation intend to commit a violent crime, he or she shall try to discourage the violence.

## B.    Review of Conduct

From time to time, during the course of the undercover operation, the SAC shall review the conduct of the undercover employee(s) and others participating in the undercover operation, including any proposed or reasonable foreseeable conduct for the remainder of the investigation. Any findings of impermissible conduct shall be discussed with the individual, promptly reported to the designated Assistant Director and the members of the Undercover Review Committee, and a determination shall be made as to whether the individual should continue his or her participation in the investigation.

## C.    Continuing Consultation with the Appropriate Federal Prosecutor

Upon initiating and throughout the course of any undercover operation, the SAC or a designated Supervisory Special Agent shall consult on a continuing basis with the appropriate Federal prosecutor, particularly with respect to the propriety of the operation and the legal sufficiency and quality of evidence that is being produced by the activity.

## D.    Serious Legal, Ethical, Prosecutive, or Departmental Policy Questions, and Previously Unforeseen Sensitive Circumstances

(1)  The SAC shall consult with the chairman of the Criminal Undercover Operations Review Committee, FBIHQ whenever a serious legal, ethical, prosecutive, or departmental policy question arises in any undercover operation or if sensitive circumstances occur that were not anticipated. The FBI shall consult with the United States Attorney, or Assistant Attorney General, or their representative, and with DOJ members of the Undercover Review Committee on whether to modify,

19



suspend, or terminate the investigation related to such issues.

(2)   When unforeseen sensitive circumstances arise, the SAC shall submit a written application to FBIHQ for authorization of an undercover operation previously approved at the field office level, or amend the existing application to FBIHQ pursuant to paragraph IV.F.

**E.   Annual Report of the Undercover Review Committee**

(1)   The Undercover Review Committee shall retain a file of all applications for approval of undercover operations submitted to it, together with a written record of the Committee's action on the application and any ultimate disposition by the approving official. The FBI shall also prepare a short summary of each undercover operation recommended for approval by the Committee.  These records and summaries shall be available for inspection by a designee of the Associate or Deputy Attorney General as appropriate and of the Assistant Attorney General in charge of the Criminal Division.

(2)   On an annual basis, the Committee shall submit to the Director, the Attorney General, the Associate or Deputy Attorney General, and the Assistant Attorney General in charge of the Criminal Division a written report summarizing:

> (a) the types of undercover operations approved and disapproved together with the reasons for disapproval;
>
> (b) the major issues addressed by the Committee in reviewing applications and how they were resolved; and
>
> (c) any significant modifications to the operations recommended by the Committee.

**F.   Deposit of Proceeds; Liquidation of Proprietaries**

As soon as the proceeds from any undercover operation are no longer necessary for the conduct of the activity, the remaining proceeds shall be deposited in the Treasury of the United States as miscellaneous receipts.

Whenever a proprietary with a net value over the amount specified by the Department of Justice Appropriation Authorization Act or other applicable laws is to be liquidated, sold, or otherwise disposed of, the FBI

20

shall report the circumstances to the Attorney General and the Comptroller General. The proceeds of the liquidation, sale, or the disposition, after obligations are met, shall be deposited in the Treasury of the United States as miscellaneous receipts.

## VII. RESERVATION

These Guidelines are set forth solely for the purpose of internal DOJ guidance. They are not intended to, do not, and may not be relied upon to create any rights, substantive or procedural, enforceable by law by any party in any matter, civil or criminal, nor do they place any limitations on otherwise lawful investigative or litigative prerogatives of the Department of Justice.

21